Kevin M. McDonough
**LATHAM & WATKINS LLP**
885 Third Avenue
New York, NY 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: kevin.mcdonough@lw.com

Peter A. Wald (*pro hac vice*)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: peter.wald@lw.com

Christopher S. Turner (*pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: christopher.turner@lw.com

*Attorneys for Defendants Navient Corporation, John F. Remondi, Somsak Chivavibul, and Christian M. Lown*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE NAVIENT CORPORATION SECURITIES LITIGATION | Case No. 1:17-cv-08373-RBK-AMD<br>_____<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Motion Day: August 5, 2019 |

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................1

I.    BACKGROUND AND PROCEDURAL HISTORY ....................................3

     A.    Navient's Business ......................................................................3

     B.    The CFPB and State AG Complaints...........................................4

     C.    Initial Complaint and First Amended Complaint..........................6

     D.    Federal Student Aid Review .......................................................7

     E.    Second Amended Complaint........................................................9

II.   THE SECOND AMENDED COMPLAINT FAILS TO PLEAD
     SCIENTER .............................................................................................9

     A.    The "Must Have Known" Allegations Are Insufficient As
          A Matter Of Law.......................................................................11

          1.    Complaints Filed Against Navient In Other Cases
               Do Not Establish A Strong Inference Of Scienter..................12

          2.    So-Called "Evidence" From Government
               Litigation Does Not Support An Inference of
               Scienter..............................................................................14

          3.    Confidential Witness Allegations Do Not Support
               An Inference of Scienter ......................................................17

               a.    Plaintiff Has Not Alleged Facts Showing
                    The CWs To Be Knowledgeable Or
                    Credible........................................................................17

               b.    The "Facts" Attributed To CWs Do Not
                    Support An Inference Of Scienter .................................19

           4.    The "Core Operations" Doctrine Does Not Support
                An Inference Of Scienter ......................................................22

     B.    The "FSA Review" Allegations Are Insufficient As A
          Matter Of Law..........................................................................24

     C.    The "Motive" Allegations Are Insufficient As A Matter
          Of Law.....................................................................................27

III.  THE SECOND AMENDED COMPLAINT FAILS TO PLEAD
     MATERIAL FALSITY ..........................................................................30

A.  Plaintiff Fails To Allege Material Misrepresentations Regarding Navient's Forbearance Practices ......................................30

B.  Plaintiff Fails To Allege Any Further Duty To Disclose For Many Objectively True Statements ...............................33

IV.  THE SECOND AMENDED COMPLAINT FAILS TO PLEAD LOSS CAUSATION ..................................................................35

A.  The PA AG's Complaint Did Not Reveal Any New Information ..................................................................36

B.  The FSA Report Is Not A Corrective Disclosure ............................37

C.  Navient Disclosed The Risks Of A PA AG Lawsuit And Publication Of Review Results ........................................39

CONCLUSION .........................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Aetna, Inc. Sec. Litig.*,
  617 F.3d 272 (3d Cir. 2010) ..................................................................9

*In re Amarin Corp. PLC Sec. Litig.*,
  2015 WL 3954190 (D.N.J. June 29, 2015)........................................28

*In re Anadigics, Inc. Sec. Litig.*,
  2011 WL 4594845 (D.N.J. Sept. 30, 2011), *aff'd*, 438 F. App'x
  742 (3d Cir. 2012).................................................................................22

*In re Biogen Inc. Sec. Litig.*,
  857 F.3d 34 (1st Cir. 2017)................................................................19

*Buck v. Hampton Twp. Sch. Dist.*,
  452 F.3d 256 (3d Cir. 2006) ....................................................5, 7, 37

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) .............................................5, 16, 33

*CALPERS v. Chubb Corp.*,
  2002 WL 33934282 (D.N.J. June 26, 2002).....................................27

*CALPERS v. Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2004) .............................................18, 19, 32

*City of Roseville Emps. Ret. Sys. v. Horizon Lines, Inc.*,
  713 F. Supp. 2d 378 (D. Del. 2010)..................................................33

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
  928 F. Supp. 2d 705 (S.D.N.Y. 2013) ..............................................34

*DelRio-Mocci v. Connolly Props. Inc.*,
  2009 WL 2989537 (D.N.J. Sept. 16, 2009), *aff'd*, 672 F.3d 241 (3d
  Cir. 2012) ..............................................................................................40

*In re Deutsche Bank AG Sec. Litig.*,
2017 WL 4049253 (S.D.N.Y. June 28, 2017) ...................................................13

*In re Dig. Island Sec. Litig.*,
357 F.3d 322 (3d Cir. 2004) .......................................................................10, 28

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)...........................................................................................35

*Gaer v. Educ. Mgmt. Corp.*,
2011 WL 7277447 (W.D. Pa. Aug. 30, 2011), *adopted*, 2011 WL
7277578 (Sept. 29, 2011)...................................................................................31

*GSC Partners CDO Fund v. Washington*,
368 F.3d 228 (3d Cir. 2004) .......................................................................12, 24

*In re Heartland Payment Sys., Inc. Sec. Litig.*,
2009 WL 4798148 (D.N.J. Dec. 7, 2009)..........................................................23

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*, WL 4469143 (D.N.J. July
22, 2015) ............................................................................................................21

*Institut. Inv'rs Grp. v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009) ......................................................................*passim*

*In re ITT Educ. Servs., Inc. Sec. Litig.*,
34 F. Supp. 3d 298 (S.D.N.Y. 2014) .................................................................14

*Klein v. Autek Corp.*,
147 F. App'x 270 (3d Cir. 2005) .................................................................11, 12

*Lewis v. Chrysler Corp.*,
949 F.2d 644 (3d Cir. 1991) ..............................................................................14

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014) .............................................................................38

*Lord Abbett Affiliated Fund, Inc. et al. v. Navient Corp. et al.*,
2019 WL 351260 (D. Del. Jan. 29, 2019) .........................................................13

*Lovallo v. Pacira Pharms., Inc.*,
2015 WL 7300492 (D.N.J. Nov. 18, 2015) .......................................................18

*Majer v. Sonex Research, Inc.*,
    541 F. Supp. 2d 693 (E.D. Pa. 2008) ................................................................... 36

*Martin v. GNC Holdings Inc.*,
    2017 WL 3974002 (W.D. Pa. Sept. 8, 2017), *aff'd*, 757 F. App'x
    151 (3d Cir. 2018) ............................................................................................ 19, 21

*In re Merck & Co. Sec. Litig.*,
    432 F.3d 261 (3d Cir. 2005) ................................................................................ 36

*Meyer v. Greene*,
    710 F.3d 1189 (11th Cir. 2013) .......................................................................... 39

*Monk v. Johnson & Johnson*,
    2011 WL 6339824 (D.N.J. Dec. 19, 2011) ................................................... 29, 34

*Nat'l Junior Baseball League v. PharmaNet Dev. Grp., Inc.*,
    720 F. Supp. 2d 517 (D.N.J. 2010) ................................................ 19, 28, 29, 36

*Nolte v. Capital One Fin. Corp.*,
    390 F.3d 311 (4th Cir. 2004) .............................................................................. 13

*In re Omnicom Grp., Inc. Sec. Litig.*,
    597 F.3d 501 (2d Cir. 2010) ................................................................................ 38

*Oran v. Stafford*,
    226 F.3d 275 (3d Cir. 2000) ................................................................................ 34

*In re Par Pharms. Sec. Litig.*,
    2008 WL 2559362 (D.N.J. June 24, 2008) .................................................... 23, 24

*In re PDI Sec. Litig.*,
    2006 WL 3350461 (D.N.J. Nov. 16, 2006) ....................................................... 29

*Percoco v. Deckers Outdoor Corp.*,
    2013 WL 3584370 (D. Del. July 8, 2013) ......................................................... 22

*In re Party City Sec. Litig.*,
    147 F. Supp. 2d 282 (D.N.J. 2001) .................................................................... 40

*Rahman v. Kid Brands, Inc.*,
    2012 WL 762311 (D.N.J. Mar. 8, 2012) ........................................................... 28

*Rahman v. Kid Brands, Inc.*,
  736 F.3d 237 (3d Cir. 2013) ...............................................................22

*Richman v. Goldman Sachs Grp., Inc.*,
  868 F. Supp. 2d 261 (S.D.N.Y. 2012) ..............................................35

*Sapssov v. Health Mgmt. Assocs., Inc.*,
  608 F. App'x 855 (11th Cir. 2015) ....................................................38

*In re Synchronoss Sec. Litig.*,
  705 F. Supp. 2d 367 (D.N.J. 2010) ....................................................40

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)......................................................................9, 29

*Watterson v. Page*,
  987 F.2d 1 (1st Cir. 1993)......................................................................5

*Williams v. Globus Med. Inc.*,
  869 F.3d 235 (3d Cir. 2017) ...............................................................39

*Winer Family Tr. v. Queen*,
  503 F.3d 319 (3d Cir. 2007) ...............................................................27

## STATUTES

15 U.S.C. § 78j(b) ..................................................................................40

15 U.S.C. § 78t(a) ..................................................................................40

15 U.S.C. § 78u-4(b)(2) .........................................................................10

## RULES

Fed. R. Civ. P. 9(b) ..................................................................................1

Fed. R. Civ. P. 12(b)(6)............................................................................1

Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), Defendants Navient Corporation ("Navient" or the "Company") and John F. Remondi, Somsak Chivavibul, and Christian M. Lown (collectively "Individual Defendants," and with Navient, "Defendants"), respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the Second Amended Complaint (D.I. 33, "SAC").

## PRELIMINARY STATEMENT

The SAC is Plaintiff's third attempt to plead a claim of securities fraud.  In his second attempt, the 2018 First Amended Complaint (D.I. 17, "FAC"), Plaintiff asserted that a consumer protection action filed by the Pennsylvania Attorney General ("PA AG") in October 2017—which was nearly identical to a complaint filed by the Consumer Financial Protection Bureau ("CFPB") in January 2017 ("CFPB Action")—newly revealed to the market that Navient had been fraudulently steering borrowers into forbearance.  Defendants moved to dismiss the FAC, arguing that Plaintiff had failed to allege (1) facts showing that the purported forbearance scheme actually existed, (2) facts supporting a strong inference that Navient or the Individual Defendants knew about any such scheme, and (3) facts showing that the challenged statements caused his loss.

Before this Court could rule on Defendants' motion to dismiss, Plaintiff sought to amend the FAC and secure a third bite at the apple.  The allegations Plaintiff added to the SAC—a review of Navient's loan servicing operations

1

conducted by the U.S. Department of Education's ("ED") Office of Federal Student Aid ("FSA") ("FSA Report"), and summaries of discovery from the CFPB Action—do not cure the FAC's fatal flaws.  The SAC, like the FAC, fails to meet the high pleading burden set by the Private Securities Litigation Reform Act of 1995 ("PSLRA") in order to establish a claim of securities fraud.

**Scienter.**  The SAC fails to allege facts giving rise to a strong inference that Defendants intended to defraud the market.  To plead scienter, plaintiffs typically cite documents or confidential witness testimony showing that defendants knew, or were severely reckless in not knowing that the challenged statements were false when made.  Here, Plaintiff cites no such evidence.  Plaintiff does not source any allegations to anyone who interacted with senior management—let alone, with any Individual Defendant.  *See infra* Parts II.A, II.B.  Nor does Plaintiff allege stock sales by any Defendant, or any other facts suggesting a motive for Defendants fraudulently to prop up the price of Navient securities.  *See infra* Part II.C.  Instead, the SAC asserts that Defendants "would have known" their challenged statements were false when made—a tactic that is wholly insufficient to plead scienter as a matter of law.

**Falsity.**  The SAC challenges statements regarding Navient's loan servicing practices, asserting that they were false when made because they did not disclose a company-wide scheme to steer borrowers into forbearance.  None of these

statements is actionable, however, because Plaintiff fails to plead with particularity facts showing that a systemic forbearance-steering scheme actually existed at Navient—which is necessary in order to render the challenged statements materially false or misleading. *See infra* Part III.

**Loss Causation.** Finally, the SAC fails to plead facts showing that Navient's alleged misrepresentations caused Plaintiff's claimed loss. As before, Plaintiff contends that Navient's misconduct was partially revealed on October 5, 2017, when the PA AG filed suit against Navient. Now, however, he also contends that it was fully revealed on November 20, 2018, when an article about the FSA Report was published. But the PA AG's complaint merely restated allegations made by the CFPB *ten months earlier*; it did not reveal any new, corrective information regarding Navient's loan servicing practices. And the FSA Report—which did not conclude that Navient steered borrowers into forbearance—was no more corrective. *See infra* Part IV.

Plaintiff has now had three bites at the apple, and has not cured these pleading defects; the SAC should be dismissed with prejudice.

## I.    BACKGROUND AND PROCEDURAL HISTORY

### A.    Navient's Business

Navient, a leading provider of asset management and business processing solutions, was formed in 2014 when it was spun off from Sallie Mae. Ex. 1 at 4, 45;

SAC ¶¶ 21, 32.[1]  Though it did not originate student loans during the Class Period, Navient holds significant portfolios of Federal Family Education Loan Program ("FFELP") loans and Private Education Loans ("PELs").  Ex. 1 at 4-7.  Navient also acts as a servicer for its own loans and for loans owned by ED, banks, credit unions, and others, and provides asset recovery services and business processing solutions for various public and private entities.  *Id.* at 4-5.  Navient's operating results are driven by various factors, including net interest from its student loan portfolios; revenues and expenses from its servicing business; gains and losses on loan sales and debt purchases; and its provision for loan losses (the periodic expense of maintaining the Company's allowance for loan losses ("allowance" or "ALL")).  *Id.* at 34.

## B.    The CFPB and State AG Complaints

On January 18, 2017, the CFPB and the Attorneys General ("AG") of Illinois and Washington filed lawsuits against Navient alleging violations of various federal and state consumer protection laws.  SAC ¶ 59.  Navient promptly disclosed these lawsuits to the market in a press release filed with the Securities and Exchange Commission along with the Company's Form 8-K.[2] Ex. 2 at 2 & Ex. 99.1.

---

[1] Defendants respectfully submit herewith a Declaration of Sian B. Jones in support, exhibits to which are designated "Ex.__."

[2] During the class period, Navient also disclosed various subpoenas and civil investigative demands from other entities, including state attorneys general.

On October 5, 2017, the PA AG filed a lawsuit against Navient and one of its subsidiaries in the United States District Court for the Middle District of Pennsylvania.  SAC ¶ 121.[3]  The PA AG alleged that Navient improperly steered borrowers into forbearance (Ex. 3 ¶¶ 94-130), just as the CFPB (and Illinois and Washington AGs) had alleged back in January 2017 (Ex. 4 ¶¶ 26-54).   These allegations are identical not only in substance but in form; as shown in Appendix A, the PA AG's complaint directly cribbed its allegations from the CFPB Action.

The only "new" information is a series of anecdotes from Pennsylvania consumers that purport to humanize—but do not substantively alter—the CFPB's allegations.  And the PA AG's complaint's allegations (like those in the CFPB's complaint) all address Navient's loan servicing conduct between 2010 and 2015— which predates the Class Period, and every single Navient statement challenged in

---

[3] The CFPB and PA AG's complaints are described at length, and incorporated by reference in the SAC.  *See, e.g.*, SAC ¶¶ 60-61, 123; *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim….'").  "[T]he primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated '[w]here plaintiff has actual notice … and has relied upon those documents in framing the complaint.'"  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993)) (permitting consideration of defendant's annual report on a motion to dismiss though the report was "not explicitly refer[red] to or cite[d]" by plaintiffs, but where complaint contained "unambiguous reference[s]" to information contained in the report).

this case.  Ex. 3 ¶¶ 94-172.[4]  Navient promptly disclosed the PA AG's lawsuit in a press release.

### C.    Initial Complaint and First Amended Complaint

On October 16, 2017, Eli Pope filed a securities class action arising out of statements made by or about Navient.  This Court consolidated his action with other, related actions on February 2, 2018, appointed Jesse Wayne Pritchard and Jason Montblanc as Lead Plaintiff, and approved the selection of Levi & Korsinsky, LLP as Lead Counsel.  D.I. 11.  Mr. Pritchard filed the FAC against Navient and the Individual Defendants on April 3, 2018, purporting to represent a putative class of all persons who acquired Navient securities during the Class Period.  D.I. 17.

Defendants moved to dismiss the FAC with prejudice on June 4, 2018.  D.I. 24.  In their motion, Defendants detailed the FAC's deficiencies, including (a) its insufficient attempt to allege liability on the basis of corporate puffery statements, (b) its failure to plead with particularity facts sufficient to show a Company-wide forbearance scheme, as necessary to render any challenged statement materially

---

[4] Plaintiff generally asserts that "since at least July 2011, despite publicly assuring borrowers that it will help them identify and enroll in an appropriate, affordable repayment plan, Defendants have routinely disregarded that commitment and instead steered borrowers experiencing long-term financial hardship into forbearance."  SAC ¶ 123; Ex. 3 at ¶ 109.  However, there are no alleged facts (particularized or otherwise) establishing that the PA AG's allegations on which Plaintiff relies—which, in turn, rest on alleged forbearance practices and statistics from the pre-Class Period timeframe of 2010 to 2015—extend to the present alleged Class Period.  *See, e.g.*, Ex. 3 at ¶¶ 94–172.

false or misleading when made, (c) its failure to set forth particularized facts giving rise to a strong inference of scienter, and (d) its inability to allege a corrective disclosure, as necessary to plead loss causation. *See generally* D.I. 24-1. Plaintiff filed his opposition to Defendants' motion on August 3, 2018. D.I. 25. Defendants filed a reply on September 17, 2018, providing additional detail supporting the grounds for dismissal. D.I. 26. As of September 17, 2018, the motion to dismiss was fully briefed and submitted to this Court.

### D.    Federal Student Aid Review

On November 20, 2018, the Associated Press ("AP") published a story ("AP Article") about a review of Navient's loan servicing operations conducted by FSA—including a link to the FSA Report, which it had received from the office of Senator Elizabeth Warren.[5] SAC ¶¶ 182-85; Ex. 5. The report, dated May 18, 2017, included the results of a site visit on March 20–24, 2017, which was conducted with the stated objective of "assess[ing] whether the use of forbearance by Navient [customer service representatives] met the standards outlined in federal regulations, contractual requirements, and implemented Change Requests." Ex. 6 at 10.

On November 20, 2018, in response to the AP Article, ED released a statement clarifying that the document disseminated by the AP was an internal

---

[5] The FSA Report is described at length, and incorporated by reference in the SAC. *See, e.g.*, SAC ¶¶ 92-95; *see also Buck*, 452 F.3d at 260, *supra* note 3.

review, not an audit, and stating that:

> In response to FSA's preliminary conclusions, Navient provided detailed information about each of the calls at issue. Based on FSA's review of Navient's responses and FSA's independent review of Navient's overall performance, ***FSA has concluded that Navient is substantially in compliance with its obligations.***

Ex. 7 at 1 (emphasis added).[6]  ED went on to write that ***"[n]othing in the report indicates forbearances were applied inappropriately***... [and] a subsequent review of the borrower-level data provided by Navient... confirmed that in most cases forbearances were used as intended to resolve short-term issues related to delinquency consistent with the borrower's circumstances."  Ex. 7 at 1 (emphasis added).[7]  Plaintiff omits ED's clarification from his December 2018 notice of intent to seek leave to amend, D.I. 28; his motion for leave to amend, D.I. 29; and the SAC itself, D.I. 33.  He can ignore it no longer.

---

[6] Though Plaintiff does not mention ED's response to the AP Article in the SAC, it is incorporated by reference, as it is inextricably linked with the AP Article.  *See supra* note 3.  Alternatively, Defendants respectfully submit, concurrent herewith, a Motion For Judicial Notice requesting that notice be taken of ED's publicly-issued November 20, 2018 statement clarifying its findings.  (D.I. 36-12)

[7] Indeed, there are many appropriate reasons for borrowers to enroll in forbearance, including when customers are coming out of a grace period or facing financial hardship that prevents them from making timely payments.  Ex. 1 at 69.  Navient consistently disclosed that "[f]orbearance may also be granted to customers who are delinquent in their payments" and that "[i]n these circumstances, the forbearance cures the delinquency and the customer is returned to a current repayment status," and that "[i]n more limited instances, delinquent customers will also be granted additional forbearance time."  *Id.*

### E.    Second Amended Complaint

On December 19, 2018—more than three months following the completion of briefing on Defendants' motion to dismiss the FAC—Plaintiff submitted a letter to the Court giving notice that he intended to seek leave to amend his complaint "in order to include newly discovered evidence."  D.I. 28.  On January 18, 2019, Plaintiff filed that motion, seeking leave to include new allegations regarding the FSA Report disseminated on November 20, 2018, and to extend the purported class period through that date.  D.I. 29.  On February 5, 2019, Defendants responded, declining to oppose the motion but advising that Plaintiff will have had two opportunities to remedy the pleading defects Defendants detailed in their first motion to dismiss.  On March 11, 2019, the court granted Plaintiff's motion to amend and denied Defendants' first motion to dismiss as moot.  D.I. 32.  On March 18, 2019, Plaintiff filed the SAC, D.I. 33, which differed noticeably from the proposed SAC appended to Plaintiff's motion for leave to amend, *compare* D.I. 29-2 *with* D.I. 33.

## II.    THE SECOND AMENDED COMPLAINT FAILS TO PLEAD SCIENTER

"Federal securities fraud litigation is governed by the [PSLRA,] which Congress enacted '[a]s a check against abusive litigation by private parties....'" *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 277 (3d Cir. 2010).  In the PSLRA, Congress set an "'[e]xacting' pleading standard for scienter" in securities fraud cases.  *Institut. Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009) (quoting *Tellabs, Inc.*

*v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007)); 15 U.S.C. § 78u-4(b)(2). Any plaintiff alleging a fraudulent misrepresentation or omission must "'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Avaya*, 564 F.3d at 253. A strong inference of scienter requires allegations of "'a knowing or reckless state of mind,'" and the plaintiff must allege particular facts demonstrating that *each* defendant "'inten[ded] to deceive, manipulate, or defraud.'" *Id.* at 252. The misrepresentation must have been "so recklessly made that the culpability attaching to such reckless conduct closely approaches that which attaches to conscious deception." *In re Dig. Island Sec. Litig.*, 357 F.3d 322, 332 (3d Cir. 2004).

Plaintiff asserts that Defendants made statements they knew were false and misleading because they knew about a concealed company-wide scheme to steer borrowers into forbearance. SAC ¶¶ 2-8, 191. As discussed in Part III *infra*, Plaintiff has not alleged facts showing that such a scheme existed. Furthermore, even if he had, Plaintiff has failed to plead facts supporting a strong inference that any Defendant was aware of (or recklessly disregarded) its existence.

Plaintiff's allegations—separately and taken as a whole—do not support a strong inference of scienter. First, in support of his claim that Defendants "must have known" about the alleged scheme, Plaintiff recycles allegations from third-party complaints, untested summaries from other matters, and confidential witness

("CW") statements that, even taken as true, do not support the inference that Defendants were aware of systematic efforts to steer borrowers into forbearance. *See infra* Part II.A.  Second, perhaps recognizing the futility of his "must have known" allegations, Plaintiff adds content from the FSA Report—**which did not find evidence of a systematic forbearance-steering scheme at Navient, much less any Defendant's knowledge of such a scheme**.  *See infra* Part II.B.  Third, Plaintiff makes motive allegations that are common to all loan servicers and their executives—and that cannot sustain a strong inference of scienter as a matter of law. *See infra* II.C.

### A.    The "Must Have Known" Allegations Are Insufficient As A Matter Of Law

Plaintiff asserts that "Navient's formal compensation plans and its practices for handing [borrower] calls... would not have existed without the Individual Defendants' approval," SAC ¶ 184, and claims that, "[g]iven the pervasiveness of improper loan-servicing activities at Navient, it is highly implausible that Navient's senior executives did not know" about (or recklessly disregarded) them when making the challenged statements, *id.* ¶ 191.   Yet in support of these broad assertions, Plaintiff does not cite any emails, or witnesses who interacted with Defendants, or any evidence at all (*e.g.,* "particularized facts") giving rise to a strong inference of scienter—the lynchpin of a viable securities fraud claim.  *Klein v. Autek Corp.*, 147 F. App'x 270, 277 (3d Cir. 2005) (dismissing claims that "ma[de] no

11

more than blanket assertions" that the defendants "'knew' that the representations were untrue, without any corroborating factual support explaining how and why the [d]efendants knew the statements to be false").

Lacking such evidence, Plaintiff proclaims that Defendants must have known about the alleged forbearance scheme in light of allegations contained in untested complaints filed by the CFPB and State AGs (SAC ¶ 186), discovery he purports to have obtained from the CFPB Action (*id*. ¶ 185), the statements of CWs who had no interactions with any Defendant (*id*.), and his assertion that "the forbearance scheme amounted to an integral part of the company's core operations," (*id*. ¶ 188).  Though these allegations and purported "evidence" run for pages in the SAC, they do not, individually or in sum, support Plaintiff's conclusion that Navient improperly schemed to steer borrowers into forbearance, or establish a strong inference that the Defendants knew about (or recklessly ignored) this alleged scheme.  *See*, *e.g.*, *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 239 (3d Cir. 2004) ("Of course, it is not enough for plaintiffs to merely allege that defendants 'knew' their statements were fraudulent or that defendants 'must have known' their statements were false.").

### 1.   Complaints Filed Against Navient In Other Cases Do Not Establish A Strong Inference Of Scienter

Plaintiff imports allegations "detailed in the various CFPB and State [AG] complaints" as the primary support for his claim that Navient was engaged in "improper loan servicing practices [that] were not the sporadic actions of rogue

employees, but rather highly systematized." SAC ¶ 186. Yet Plaintiff cannot use *allegations* from the CFPB and AG complaints—which no court has adopted, and which he has made no effort to investigate and confirm—to meet his pleading burden.[8] *See, e.g.*, *Nolte v. Capital One Fin. Corp.*, 390 F.3d 311, 317 n.* (4th Cir. 2004) ("Although the filing of a[]…complaint against [a defendant] is indisputable, the facts alleged therein are not. A court cannot take notice of (and so assume the truth of) mere allegations that [a company] or its management made false statements or omissions during the class period."). This is particularly true where, as here, Plaintiff has detailed no effort to investigate these allegations. And, in any event, the allegations Plaintiff cribs from these complaints say nothing about the knowledge of any Defendant. *See* SAC ¶¶ 60-61.

At most, Plaintiff argues that Defendants were aware of, and publicly denied the allegations contained in, these third-party complaints. *Id.* ¶¶ 62-63, 130, 152. Yet "'citation to a number of lawsuits and government investigations... provides no evidence of scienter.'" *In re Deutsche Bank AG Sec. Litig.*, 2017 WL 4049253, at

---

[8] Nor can Plaintiff rely on the holding in *Lord Abbett Affiliated Fund, Inc. et al. v. Navient Corp. et al.*, 2019 WL 351260 (D. Del. Jan. 29, 2019), to revive his deficient pleadings. The allegations in *Lord Abbett* related to an entirely different class period—one that notably ended over a year before the CFPB and AG complaints purportedly notified Defendants of Navient's alleged servicing problems—and ostensibly relied upon different confidential witnesses. The many, material distinctions between *Lord Abbett* and the case at bar prevent application of its holdings to the pleadings at issue here.

*8 (S.D.N.Y. June 28, 2017); *see also In re ITT Educ. Servs., Inc. Sec. Litig.*, 34 F. Supp. 3d 298, 309 (S.D.N.Y. 2014) (deeming third-party actions "not tremendously probative").  Nor do allegations that Defendants denied such complaints.  *See Lewis v. Chrysler Corp.*, 949 F.2d 644, 652 (3d Cir. 1991) ("'[T]he general rule [is] that the federal securities laws do not impose a duty upon parties to publicly admit to the culpability of their actions.'").  Plaintiff's banal allegations from and about third-party complaints reveal nothing about Defendants' state of mind as a matter of law, and cannot support a strong inference of scienter.

### 2.    So-Called "Evidence" From Government Litigation Does Not Support An Inference of Scienter

Plaintiff seeks to bolster his claims regarding Navient's forbearance policies and practices with cherry-picked testimony from a single Navient employee, and unsourced summaries of consumer interviews that he alleges were produced during discovery in the CFPB and State AG Actions.  SAC ¶¶ 67-73.  Yet taken as true, these allegations do not support the conclusions Plaintiff attempts to draw from them.  First, Plaintiff argues that "Patricia Peterson's hearing testimony confirms that [use of scripts that prohibited employees from offering income-driven repayment ("IDR") plans before offering forbearance] was a company-sanctioned practice and procedure."  *Id.* ¶ 185.  Yet the statements he cites—that certain forbearance requests could be made over the phone in ways that certain IDR requests could not (*id.* ¶¶ 6, 67)—do not support this assertion.  Ms. Peterson's cited

testimony does not address scripts or corporate practice and, even taken as true, does not support Plaintiff's inference that Defendants knew about any alleged Company-wide forbearance-steering scheme.[9]

Plaintiff next argues that purported summaries of CFPB interviews with Navient borrowers support his allegation that forbearance steering "was implemented and enforced by Navient management." SAC ¶¶ 70, 185. Not so. In the Third Circuit, when allegations are made on information and belief, the pleadings "must also describe the sources of information with particularity." *Avaya*, 564 F.3d at 253. Plaintiff must provide *both* "the who, what, when, where and how of the sources" themselves, *and* "the who, what, when, where and how of the information those sources convey." *Id.* The SAC's brief summaries of CFPB interviews with unnamed customers do neither. First, Plaintiff provides no facts about the provenance of these summaries or the borrowers described, except obliquely to assert that they came from investigations by the CFPB, State AGs, and/or other civil

---

[9] Plaintiff also alleges, without citation, that "Navient instructed customer service representatives to use 'flow charts' when interacting with borrowers," and that these "flow charts prioritized forbearance even when other options were more appropriate." *Id.* ¶ 68. He provides no detail regarding these charts, and therefore no particularized facts establishing that the alleged forbearance scheme *was known to senior management*. Accordingly, he fails to plead the necessary facts with particularity, as required by the PSLRA. *Avaya*, 564 F.3d at 253 (outlining the particularity standard when pleading on the basis of counsel's investigation or information and belief).

plaintiffs.  SAC ¶ 70.  Second, a majority of the summaries refer to calls and interactions with Navient that occurred *prior to the class period*, *see*, *e.g.*, *id.* ¶ 70(c) (referencing communications "in or about 2011 and 2012"), and provide no information about events occurring in 2017 and 2018.[10]

Even if Plaintiff had alleged the detail required by *Avaya* to consider these summaries credible, the summaries themselves do not demonstrate that any of these borrowers were improperly steered into forbearance.  For some, Plaintiff does not allege that any option other than forbearance actually was available.  *See*, *e.g.*, SAC ¶ 70(n).[11]  For others, Plaintiff does not allege that forbearance was even offered. *See*, *e.g.*, SAC ¶ 70(m) (explaining that the Navient representative advised "Borrower 13" there were no alternative options for repaying a Stafford loan).  And still others were provided different options—undermining any inference that a uniform policy or scheme to steer borrowers into forbearance existed.  *See*, *e.g.*, *id.*

---

[10] Notably, evidence from the same source (the CFPB's lawsuit against Navient), incorporated by reference in paragraph 70 of the SAC, *In re Burlington Coat Factory*, 114 F.3d at 1426 (permitting consideration of defendant's annual report on a motion to dismiss where complaint contained "unambiguous reference[s]" to information contained in the report because "[p]laintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them"), belies these summaries—further undermining the reliability of these confidential sources.  *See infra* notes 11 and 12.

[11] Additional evidence from the same source has shown that this borrower was "also informed about the availability of IDR but [was] ultimately determined to be ineligible under ED rules."  Ex. 8 at D.I. 161, p. 8; *id.* at D.I. 163-21, p.*29.

16

¶ 70(f) (alleging that "Borrower 6" was offered forbearance after other options were exhausted).[12] And, of course, these borrower summaries do not provide *any* information from which one could draw *any* conclusions about *any* Defendant's knowledge of the Company's alleged practices.

### 3.   Confidential Witness Allegations Do Not Support An Inference of Scienter

Plaintiff next asserts that the allegations and "evidence" he cribbed from regulatory actions are "verified" by two CWs.  SAC ¶¶ 2, 7, 75-76, 185.  They are not.  In the Third Circuit, plaintiffs seeking to plead scienter using CWs must allege facts *about* the CWs showing that they are knowledgeable and credible about the relevant facts, and facts *from* the CWs showing that the challenged statements were false or misleading.[13]  *Id.* at 263.  The SAC fails on both fronts.

### a.   Plaintiff Has Not Alleged Facts Showing The CWs To Be Knowledgeable Or Credible

Courts consider "the 'detail provided by the confidential sources, the sources' basis of knowledge, [and] the reliability of the sources'" when assessing their

---

[12] Additional evidence from the same source has shown that this borrower was repeatedly offered IDR by Navient representatives, but refused to engage further with them, instead referring to representatives on at least ten calls as "b\*\*ch," "d\*\*\*\*ss," and other profanities.  Ex. 8 at D.I. 161, pp. 13-14; *see*, *e.g.*, *id.* at D.I. 163-64, p. 230:6–10; *id.* at D.I. 163-67, p. \*40 (lines 2–9).

[13] Where, as here, plaintiffs do not allege with particularity documentary evidence (such as internal memoranda) in support of their claims, heightened importance is placed on the ability of confidential sources to supply the requisite factual particularity necessary to sustain claims of securities fraud.  *Avaya*, 564 F.3d at 261.

allegations. *Id.* (quoting *CALPERS v. Chubb Corp.*, 394 F.3d 126, 147 (3d Cir. 2004)). Where those details are lacking, the court "must discount them steeply." *Id.*

Plaintiff relies on two CWs to allege a forbearance "scheme" during the Class Period. *See* SAC ¶¶ 75-76, 85-86. Yet these CWs—two low-level former employees who worked in collections in Indiana and Pennsylvania, one of whom was terminated prior to the start of the Class Period—cannot credibly speak to any alleged Company-wide forbearance-steering scheme. *See id.* ¶¶ 76, 85-86. The details supplied by CW1 relate to his employment *prior to the Class Period*[14] (SAC ¶ 76), and CW2's account contains few details regarding the mechanics of any alleged scheme—or how managers actually communicated to him or other personnel that they should steer customers into forbearance (*id*. ¶¶ 86-91).

Plaintiff also relies on his CWs to contend that Navient's compensation scheme encouraged employees to steer borrowers into forbearance. *See id*. ¶¶ 76-

---

[14] This defect is particularly important here, as Plaintiff alleges that Navient's loan servicing practices did not change during the Class Period. Regulators cited these pre-Class Period practices in public complaints—upon which Plaintiff relies (*id.* at ¶¶ 59-60, 122-23)—thus establishing that "truth was on the market" during the Class Period, when Plaintiff alleges false and misleading statements were being made by Navient. *See Chubb*, 394 F.3d at 156 (affirming dismissal of complaint alleging that company had falsely claimed the success of premium rate initiative because "[d]efendants fully disclosed before and throughout the Class Period that the initiative was expected to and was indeed causing the loss of profitable business"); *Lovallo v. Pacira Pharms., Inc.*, 2015 WL 7300492, at *9- 11 (D.N.J. Nov. 18, 2015) (holding that defendants' product label and other public disclosures revealed to the market the truth regarding purportedly concealed risks).

91, 184.   Yet these CWs—who did not hold any managerial or leadership positions—cannot credibly speak to the *existence* of Company-wide compensation plans at Navient, let alone their impact on the alleged forbearance-steering scheme. *See, e.g.*, *Chubb*, 394 F.3d at 152 (rejecting "attempt to substantiate claims of accounting fraud by reference" to employees in non-accounting functions).

Nor are the CWs alleged to have had *any contact with any* Individual Defendant or other Navient executive.   Accordingly, their allegations regarding senior management's knowledge of forbearance, compensation, or any other issue carry no weight.   *Martin v. GNC Holdings Inc.*, 2017 WL 3974002, at *17 (W.D. Pa. Sept. 8, 2017) (rejecting CW allegations where "none... indicate that they ever communicated directly with any of the Individual Defendants concerning" the subject of the alleged misrepresentations), *aff'd*, 757 F. App'x 151 (3d Cir. 2018).[15]

b.   **The "Facts" Attributed To CWs Do Not Support An Inference Of Scienter**

Even if the CWs could credibly speak to a Company-wide scheme or to

---

[15] *See also Nat'l Junior Baseball League v. PharmaNet Dev. Grp., Inc.*, 720 F. Supp. 2d 517, 555 (D.N.J. 2010) (discounting CW allegations because "not one witness claims to have met, emailed with, spoken to, or otherwise heard or read anything by, either of the Individual Defendants…[that] would sufficiently raise a strong inference of scienter that Individual Defendants knew their public statements and disclosures were false"); *In re Biogen Inc. Sec. Litig.*, 857 F.3d 34, 43 (1st Cir. 2017) ("[C]onfidential witness statements are 'not described with sufficient particularity,' to give rise to a strong inference of scienter as to senior management if none of the witnesses were senior managers and they had little contact with such managers.").

management's knowledge of such a scheme, they simply do not do so here.  Plaintiff avers that Navient used scripts and limits on customer service call times systemically to facilitate forbearance-steering, SAC ¶¶ 80-81, 185, yet the CWs' general, inconsistent accounts do not provide any particularized support for this assertion.

As to scripts, Plaintiff cites CW2 as saying that "Navient's script hid the risk and made [forbearance] sound attractive and penalty-free" but provides no details supporting these conclusions, *id.* ¶ 87—and then goes on to say that, if a borrower asked for forbearance, "the forbearance script pops up and I tell them the rules," *id.* ¶ 90.  CW1 references a "'hierarchy' script" but provides few details other than to claim that it instructed staff to "steer borrowers to the graduated repayment plan" if the borrower did not get a forbearance, *id.* ¶ 78, and that he did not follow the script anyway—undermining the assertion that any scripts created uniform behavior among Navient representatives.  *Id.* ¶ 79.[16]  As to time limits on calls, CW1 (who worked in Muncie, Indiana *prior* to the Class Period's start) described an incentive and enforcement system that allegedly pressured employees to keep calls under a 4-minute target and/or a monthly average, SAC ¶ 80.  By contrast, CW2 (who worked in Wilkes-Barre, Pennsylvania for a portion of the Class Period) cited longer time targets of 7-10 minutes and suggested management incentives related to factors other

---

[16] The FSA report found that the efficacy of call center representatives varied over time, and in relation to training.  *See infra* Part II.B; *see also* Ex. 6 at 3-4.

than call times, *id.* ¶ 89.  In short, Plaintiff rests his theory of liability on the existence of a Company-wide scheme, yet the two CW accounts provided describe the use of different scripts and call time restrictions, thereby undermining the very basis for Plaintiffs' theory.[17]

Furthermore, even if the CW allegations sufficiently described the alleged Company-wide scheme—and they do not—they cannot support a strong inference that any Defendant knew about or recklessly disregarded the existence of such a scheme when making any of the challenged statements.  *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, WL 4469143, at *19-20 (D.N.J. July 22, 2015) ("[S]atisfaction of [the *Avaya*] criteria does not necessarily mean that the confidential witness allegations give rise to a strong inference of scienter.").  Indeed, neither CW claims to have had *any* contact with *any* Individual Defendant or other Navient executive at *any* time.  *See* SAC ¶¶ 76-91, 185.  Nor do CW1's oblique references to "management," *id.* ¶¶ 78, 80, 82, and CW2's attribution of certain instructions to "Navient," *id.* ¶¶ 87, 91, provide the requisite detail linking these CWs to anyone whose knowledge or actions can be imputed to any Defendant.  *See Martin*, 757 F. App'x at 155 (upholding dismissal on grounds including that "confidential witnesses provide [no] specific facts about [executive defendants] learning of the potentially

---

[17] Plaintiff has never even attempted to reconcile his forbearance-steering allegations with the large volume of Navient borrowers who are in IDR plans.  Ex. 1 at 5.

tainted products prior to making the actionable statements"); *In re Anadigics, Inc. Sec. Litig.*, 2011 WL 4594845, at \*32 (D.N.J. Sept. 30, 2011) (dismissing absent any "reference to particular dates on which material information was discovered and allegedly conveyed to management that would permit the Court to infer a strong inference of scienter on the part of Defendants at the time the allegedly false and misleading statements were made"), *aff'd*, 438 F. App'x 742 (3d Cir. 2012).

### 4.    The "Core Operations" Doctrine Does Not Support An Inference Of Scienter

Having failed to allege particularized facts supporting the inference that Defendants knew about or recklessly disregarded any alleged Company-wide forbearance-steering scheme, Plaintiff turns to the law and attempts to plead scienter under the narrow "core operations" doctrine.  SAC ¶¶ 188-91.  This too fails.  In the Third Circuit, in order to plead scienter under the core operations doctrine plaintiffs must allege facts showing either that "'it would be "absurd" to suggest that [Defendants were] without knowledge'" of the challenged statements' falsity, *Percoco v. Deckers Outdoor Corp.*, 2013 WL 3584370, at \*5 (D. Del. July 8, 2013), or that "specific information conveyed to" Defendants showed those statements to be false when made, *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 246-47 (3d Cir. 2013).  Here, Plaintiff's SAC does neither.

First, Plaintiff does not allege any facts suggesting it would be "absurd" to conclude that Defendants were unaware their statements were false when made, but

instead trots out tired generalities that fall far short of this high bar.  Plaintiff baldly asserts that the alleged forbearance "scheme" had such an impact on Navient's finances that it must have been "an integral part of the company's core operations." SAC ¶ 188.  Yet Plaintiff alleges no facts establishing the existence of any such scheme, *see infra* Part III—let alone facts establishing the extent to which the alleged scheme affected Navient's finances.  Plaintiff further asserts, without support, that "Individual Defendants oversaw all material aspects of Navient's day-to-day operations and, therefore, would have been aware of the forbearance scheme." SAC ¶ 188.  This assertion, too, is incapable of sustaining an inference of scienter—let alone a "cogent and compelling" one.  *See In re Heartland Payment Sys., Inc. Sec. Litig.*, 2009 WL 4798148, at *7 (D.N.J. Dec. 7, 2009) (rejecting assumption "that a corporate officer is familiar with certain facts just because these facts are important to the company's business[]"); *In re Par Pharms. Sec. Litig.*, 2008 WL 2559362, at *10 (D.N.J. June 24, 2008) ("[T]he generalization that [defendant] participated in the management of the company and was privy to sensitive information because of his high-level position…is not enough standing on its own[.]").

Second, Plaintiff offers no facts at all—let alone particularized facts— showing that specific information conveyed to any Defendant contradicted one or more of that Defendant's challenged statements.  Nor can he.  The CFPB and State AGs complaints contain untested allegations, and Defendants' awareness of these

23

complaints does not mean that Defendants possessed specific information contradicting their challenged statements. *See supra* Part II.A.1. Moreover, neither low-level CW had any contact with or access to any of the Individual Defendants, *see supra* Part II.A.3, and Plaintiff fails to allege facts showing that any Individual Defendant was aware of the FSA Report before November 2018, or that the report demonstrated the falsity of any Defendant's statements, *see infra* Part II.B. Here too, Plaintiff rests on "must have known" allegations, which fail as a matter of law to sustain an actionable inference of scienter. *GSC Partners*, 368 F.3d at 239.

## B. The "FSA Review" Allegations Are Insufficient As A Matter Of Law

Perhaps recognizing that his other allegations fail to support a strong inference of scienter, Plaintiff's SAC newly asserts that the FSA Report "corroborate[s]" his prior allegations, SAC ¶ 92, and evidences Defendants' knowledge of a forbearance-steering scheme at Navient, *id.* ¶¶ 203-06. ED, however, flatly denies the existence of systemic servicing failures at Navient, and the FSA Report undermines any inference that any Defendant knew of or recklessly disregarded such problems.

*First*, the draft FSA Report[18]—provided to Senator Warren at her request, SAC ¶ 168—contains no conclusions at all and does not find that Navient representatives improperly and systematically steered borrowers into forbearance.

---

[18] ED has clarified that, contrary to Plaintiff's allegations (*see, e.g.*, SAC ¶ 8), FSA conducted an internal review, not an audit. Ex. 7 at 1.

*See generally* Ex. 6.  Indeed, and importantly, ED concluded just the opposite.  On November 20, 2018, ED released a statement that it "did not conclude that Navient was improperly steering borrowers into forbearance," or make "any findings of non-compliance with contractual requirements."  Ex. 7 at 1-2.  This dispositive statement by ED is conspicuously absent from Plaintiff's lengthy account of the FSA Report.

Nor does the FSA Report's data indicate that Navient's borrowers were being steered into forbearance at all—either generally, or during the Class Period.  *First*, after reviewing a sample set of calls lasting five minutes or less (which should be rife with representatives steamrolling borrowers into forbearance, if Plaintiff's theory held water, SAC ¶ 173), FSA observed that "it was not clear whether Navient had sufficiently discussed options with the borrower" in less than 10 percent of the calls.  Ex. 7 at 1.  Accordingly, ED ultimately concluded that "Navient's overall use of forbearance was consistent with that of other servicers."  *Id*. at 2.[19]

*Second*, the vast majority of the calls reviewed predate 2017—and thus neither reflect, nor are alleged to reflect, Navient's conduct during the Class Period.  Ex. 6 at 10 (noting that Navient provided inbound calls from January 2014 through March 2017, from which FSA "randomly selected 700 phone calls. … 100 from 2017," and outbound calls from March 2015 through March 2017).

---

[19] ED further found that "Navient [] had among the highest take-up rates for income-driven repayment plans, as well as longer than average call durations in comparison to all servicers."  *Id*.

*Third*, FSA determined that "Navient [representatives] have varying degrees of skill when navigating calls," and that agents trained more recently (*i.e.*, closer in time to 2017) were more effective. *Id.* at 4; *see also id.* at 3 (linking higher success rates in recent calls to improvements in staff retention and training). In other words, (a) Navient's representatives did not operate in a uniform manner, and (b) variations in their degrees of skill and training—and not corporate promotion of a systematic forbearance-steering scheme—accounted for any instances of improper servicing.

*Fourth*, forbearances are appropriate for many borrowers, *see supra* note 7, and FSA acknowledged that Navient was not required to discuss multiple payment options with borrowers, Ex. 6 at 2. In short, viewed in full, the FSA Report data and ED's conclusions do not support—indeed, forcefully rebut—Plaintiff's theory regarding an alleged Company-wide forbearance-steering scheme.

Furthermore, and critically, Plaintiff pleads no facts supporting a strong inference that any Defendant knew of (or recklessly ignored) the FSA Report, or the results of ED's review. Instead, Plaintiff asserts that, because responses from the Company were included in the draft report dated May 18, 2017, the Defendants were "on notice that [ED] took issue with many of Navient's practices" and knew the substance of the Report's observations, SAC ¶¶ 179-83. Yet Plaintiff alleges no facts showing who within Navient was apprised of the FSA Report (and when), and more importantly, no facts showing that anyone within Navient viewed FSA's

conclusions as taking "issue with [any] of Navient's practices."[20]  SAC ¶ 180.  As
noted, the FSA Report, which confirms the view of Navient's regulator that
Navient's servicing practices were proper, only buttresses the inference against
scienter.  *Winer Family Tr. v. Queen*, 503 F.3d 319, 328 (3d Cir. 2007) ("A
complaint will survive a motion to dismiss 'only if a reasonable person would deem
the inference of scienter cogent and at least as compelling as any opposing inference
one could draw from the facts alleged.'").

### C.   The "Motive" Allegations Are Insufficient As A Matter Of Law

Plaintiff also fails to allege any particularized facts showing a cognizable
motive for any defendant to defraud Navient investors.[21]  *Id.* at 278 ("[M]otives that
are generally possessed by most corporate directors and officers do not suffice;
instead, plaintiffs must assert a concrete and personal benefit to the individual
defendants…").  Plaintiff asserts that Defendants were motivated by a desire to

---

[20] Furthermore, the only evidence that any Individual Defendant knew of the Report
before its AP publication is Senator Warren's email to Mr. Remondi on November
13, 2018—one week before the publication and at the Class Period's very end.  *Id.*
¶¶ 168-70.  Plaintiff cannot impute knowledge of the FSA Report and its contents to
the Individual Defendants as of May 2017, in the absence of particularized facts
establishing such knowledge.  *See CALPERS v. Chubb Corp.,* 2002 WL 33934282,
at *21 (D.N.J. June 26, 2002) (finding that "allegations do not … demonstrate
scienter" where "plaintiffs do not allege that … the memorandum w[as] ever passed
along to any of the individual defendants").

[21] Even if Plaintiff had alleged facts showing motive—and he has not—"'motive and
opportunity' may no longer serve as an independent route to scienter."  *Avaya*, 564
F.3d at 277.

lower costs and increase profits (SAC ¶¶ 192-94), report greater income (*id.* ¶ 196), and generate positive publicity (*id.* ¶ 201), and that such motivation evidences Defendants' scienter.  But all of these are general motives shared by all corporations and their officers— which courts consistently refuse to credit as evidencing scienter. *See, e.g.*, *Avaya*, 564 F.3d at 279 ("Corporate officers always have an incentive to improve the lot of their companies, but this is not, absent unusual circumstances, a motive to commit fraud.").[22]

Plaintiff alleges, at most, a single motive common to the Individual Defendants: increased compensation under Navient's Management Incentive Plan ("MIP").  *See* SAC ¶ 200.  However, even this "motive"—which Plaintiff himself alleges was "aligned with Navient's business objectives" (*id.* ¶ 199)—is common to all corporate officers and is insufficient as a matter of law to support an inference of scienter.  *See, e.g.*, *Dig. Island*, 357 F.3d at 331 ("'[A]n allegation that defendants were motivated by a desire to maintain or increase executive compensation is insufficient because such a desire can be imputed to all corporate officers.'"); *In re Amarin Corp. PLC Sec. Litig.*, 2015 WL 3954190, at *11 (D.N.J. June 29, 2015) (performance bonuses show only "a generic corporate motive to continue [a

---

[22] *See also, e.g.*, *Rahman v. Kid Brands, Inc.*, 2012 WL 762311, at *23 (D.N.J. Mar. 8, 2012) (assertions that defendants sought "the most profitable results for their company" were insufficient to support inference of scienter); *PharmaNet*, 720 F. Supp. 2d at 551-52 (giving reassurance to investors, analysts, and clients is a general corporate motive not indicative of scienter).

company's] success, which is insufficiently supportive of scienter").

Further, even if a personal compensation motive was sufficient to establish scienter (it is not), Plaintiff fails to plead with particularity any facts showing how any Individual Defendant would have benefitted from the specific statements that Plaintiff challenges.[23]  *See PharmaNet*, 720 F. Supp. 2d at 549 ("[I]n establishing motive and opportunity, a plaintiff should 'demonstrate a logical connection between the alleged fraud and motive in order to establish a reasonable inference of fraud[.]'").  Indeed, the Individual Defendants *increased* their stock holdings during the Class Period, powerfully establishing "an inference against scienter."  *Monk v. Johnson & Johnson*, 2011 WL 6339824, at *12 n.12 (D.N.J. Dec. 19, 2011); *cf. In re PDI Sec. Litig.*, 2006 WL 3350461, at *16 (D.N.J. Nov. 16, 2006) ("This Court fails to perceive what possible *concrete and personal* benefits [d]efendants were trying to obtain by fraudulently inflating PDI's stock price if [d]efendants were not selling their shares.").  The SAC's allegations strongly support an inference *against* securities fraud, and dismissal with prejudice is warranted.  *Tellabs*, 551 U.S. at 324

---

[23] Plaintiff asserts that by "overusing forbearances," Navient was able "to report artificially…high net income and EPS[,]" and that compensation under Individual Defendants' *2016* MIP—*outside of the Class Period*—was determined in part by EPS.  SAC ¶¶ 196-200.  Plaintiff makes no allegations regarding any MIP for 2017, nor does he allege that the 2016 MIP was the same as the 2017 MIP or carried over into 2017.  It is simply nonsense to suggest that Individual Defendants made misrepresentations in 2017 in order artificially to increase their (already decided and paid) compensation for *2016*.

(requiring dismissal unless inference of scienter is "at least as compelling as any opposing inference one could draw from the facts alleged").

## III.   THE SECOND AMENDED COMPLAINT FAILS TO PLEAD MATERIAL FALSITY

The PSLRA requires plaintiffs to plead with particularity actionable misrepresentations—*i.e.*, facts showing "who, what, when, where and how: the first paragraph of any newspaper story." *Avaya*, 564 F.3d at 253.  The SAC fails to meet this standard.  Plaintiff asserts that Navient's statements were false or misleading because they concealed a Company-wide scheme improperly to steer borrowers into forbearance, and did not disclose that the FSA had conducted a review of Navient's call center operations and sent a report to the Company.  Yet Plaintiff does not allege particularized facts demonstrating the existence of such a scheme—as he must, in order to plead with particularity that Navient's challenged statements were false when made.  *See infra* III.A.  Further, Plaintiff has not pled facts showing that Navient had any duty to disclose FSA's review or its report.  *See infra* III.B.

### A.   Plaintiff Fails To Allege Material Misrepresentations Regarding Navient's Forbearance Practices

Plaintiff alleges that Navient orchestrated a scheme to steer borrowers into forbearance and that the existence of this scheme rendered a litany of Navient's public statements false or misleading.  The statements that Plaintiff challenges fall into three categories: (1) denials and critiques of the allegations made by the CFPB

and State AGs, *see* SAC ¶¶ 98-100, 102, 129, 131, 138, 151, 153, 154, 161; (2) general statements regarding forbearance and Navient's forbearance policies, *see id.* ¶¶ 105, 112, 117, 134, 141, 146, 157, 164; and (3) statements regarding Navient's efforts to educate borrowers about different loan statuses, *see id.*; *see also id.* ¶ 109. Plaintiff asserts that each of these categories of statements was false or misleading because "Navient was intentionally steering borrowers away from IDR plans and into forbearance for years in order to minimize operating costs." *Id.* ¶¶ 101, 103, 106, 110, 113, 118, 130, 132, 135, 139, 142, 147, 152, 155, 158, 162, 165.

However, as discussed above, Plaintiff does not plead particularized facts sufficient to show that such a scheme actually existed at Navient. As in the FAC, Plaintiff relies on allegations imported from third-party complaints and statements attributed to two CWs to support his claim that Navient—with the aid of compensation policies that incentivized short call times—was systematically and improperly steering borrowers into forbearance. *See id.* ¶¶ 60-61, 76-91, 122-24, 150. Those allegations did not satisfy the PSLRA's rigorous pleading standards before, *see* D.I. 24-1 & 26, and they do not satisfy such standards now.

*First*, the allegations cribbed from other complaints, which Plaintiff has made no effort to investigate (as he is obligated to do, pursuant to Rule 11), carry no weight in assessing the SAC's sufficiency. *See supra* Part II.A.1; *see also, e.g.*, *Gaer v. Educ. Mgmt. Corp.*, 2011 WL 7277447, at *10 (W.D. Pa. Aug. 30, 2011) (giving no

weight to allegations taken from a third-party complaint, even in light of the government's decision to intervene in that action), *adopted*, 2011 WL 7277578 (Sept. 29, 2011). Further, these allegations relate to activity that occurred *prior to 2017*, and thus do not show that any statement made by Navient to its investors during the Class Period was false or misleading.

*Second*, the CW allegations hold no sway. They must be totally discounted given Plaintiff's failure credibly to allege facts establishing that these low-level employees, operating out of discrete call centers, were in position to know Company-wide policies and practices during the Class Period. *See supra* Part II.A.3; *see also Chubb,* 394 F.3d at 148 (rejecting reliance on CWs from "local branch offices for information concerning [national business practices]"). And even if credited, the CWs' accounts neither paint a picture of Company-wide practices nor provide particularized details about its operations sufficient to allege that a Company-wide, forbearance-steering scheme existed. *See supra* Part II.A.3. Neither of these sources supports Plaintiff's claim that there was a fraud being perpetrated, which rendered Navient's statements false or misleading.

Plaintiff's new allegations regarding "evidence" developed in the CFPB Action and the FSA Report similarly fall flat. Neither excerpts of Ms. Peterson's 2015 testimony nor the summaries of CFPB interviews (all of which appear to relate to borrower interactions occurring prior to 2017) support Plaintiff's broad

32

allegations of intentional, Company-wide forbearance-steering practices during the Class Period. *See supra* Part II.A.2. More profoundly, the FSA Report itself (which Plaintiff excerpts and summarizes) does not show that Navient's representatives improperly were enrolling borrowers in forbearance, or otherwise corroborate the CFPB and State AG allegations. *See supra* Part II.B. Indeed, as noted, ED concluded just the opposite: that Navient's loan servicing practices substantially complied with governing regulations, were consistent with or exceeded in quality the practices of other servicers, and operated to the benefit of its clients. Ex. 7 at 1-2.[24]

### B.     Plaintiff Fails To Allege Any Further Duty To Disclose For Many Objectively True Statements

Plaintiff also argues that Navient had a duty to disclose the FSA review and report in its quarterly filings and that this alleged omission rendered statements regarding forbearance false or misleading. SAC ¶¶ 114-15, 119-20, 136-37, 143-44, 148-49, 159-60, 166-67. But "a company does not generally have a duty to disclose all material information to the public." *City of Roseville Emps. Ret. Sys. v. Horizon*

---

[24] On November 20, 2018, ED expressly stated that "[n]othing in the report indicates forbearances were applied inappropriately–the observations noted focused on suggested improvements regarding how to best counsel borrowers on a small minority of calls." *Id.* at 1. ED stated further that "a subsequent review of the borrower-level data provided by Navient in response to the site visit report confirmed that in most cases forbearances were used as intended to resolve short-term issues related to delinquency consistent with the borrower's circumstances." *Id.*

*Lines, Inc.*, 713 F. Supp. 2d 378, 388-89 (D. Del. 2010) (citing, *e.g., Burlington Coat Factory*, 114 F.3d at 1432).  An affirmative duty to disclose arises only when one of three factors is present: (1) insider trading; (2) a statute requiring disclosure; or (3) an inaccurate, incomplete, or misleading prior disclosure.  *Monk*, 2011 WL 6339824, at *12 (citing *Oran v. Stafford*, 226 F.3d 275, 285-86 (3d Cir. 2000)).  Plaintiff has not alleged any instances of insider trading.  *See generally* SAC.  And, as discussed above, the FSA Report did not contain any information about Navient's forbearance practices that needed to be disclosed in order to prevent any of Navient's prior public statements from being inaccurate, incomplete, or misleading, *supra* Part II.B.

In an effort to find a "statute requiring disclosure," Plaintiff strains to argue that Item 103 of Regulation S-K required Navient to disclose the FSA review and report because the review was a "material pending legal proceeding."  *See, e.g.*, SAC ¶¶ 114-15.  This is demonstrably incorrect.  Even if the FSA review was an "investigation"—and it was not[25]—courts consistently have refused to require companies to disclose such investigations as "legal proceedings."  *See City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 928 F. Supp. 2d 705, 718

---

[25] ED itself characterized the FSA review as an "internal review" that was conducted "in addition to ongoing oversight and monitoring activities, which had not indicated widespread issues with non-compliance." Ex. 7 at 1.  All signs point to the fact that the review—which includes "Observations" and "Recommendations," not conclusions, Ex. 6 at 2-4—was a supplemental but routine exercise conducted as part of FSA's ongoing monitoring of a company that it regulated.

(S.D.N.Y. 2013) (holding that State AG investigations "were not pending legal proceedings and thus Item 103 is inapplicable"); *Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 272 (S.D.N.Y. 2012) ("An investigation on its own is not a 'pending legal proceeding' until it reaches a stage when the agency or prosecutorial authority makes known that it is contemplating filing suit or bringing charges."). Item 103 did not, as a matter of law, require disclosure of the FSA review.

Having failed to plead with particularity the existence of a forbearance-steering scheme that, according to Plaintiff, rendered Navient's statements false and misleading, and having failed to plead a cognizable duty to disclose the FSA Report, Plaintiff cannot plead a material misrepresentation or omission—and the SAC should be dismissed on this basis as well, with prejudice.

## IV.   THE SECOND AMENDED COMPLAINT FAILS TO PLEAD LOSS CAUSATION

In his FAC, Plaintiff alleged that the October 2017 PA AG Complaint disclosed Defendants' alleged fraud and caused Plaintiff's claimed loss.  D.I. 17 ¶ 157.  But now, in a transparent effort to expand the Class Period and the size of his damages claim, Plaintiff alleges that publication of the FSA Report in the November 2018 AP Article constituted a second disclosure of Defendants' alleged fraud to the market.  SAC ¶ 206.  This repackaged theory of loss causation fares no better than the first.

To plead loss causation, a plaintiff must allege facts that demonstrate a "causal

connection between the material representation and the loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). Thus, to survive dismissal, Plaintiff must plead facts showing that Defendants' alleged misstatements "concealed something from the market that, when disclosed, negatively affected the value of the security." *PharmaNet*, 720 F. Supp. 2d at 559. Plaintiff fails to allege that either the PA AG Complaint or the 2018 AP Article disclosed facts previously concealed from the market by Defendants, and caused a decrease in the value of Navient's stock. This fatal defect warrants dismissal of Plaintiff's claim on loss causation grounds.

### A. The PA AG's Complaint Did Not Reveal Any New Information

Plaintiff alleges that Navient's supposed forbearance scheme was hidden from the market after the CFPB (and Illinois and Washington AGs) filed suit in January 2017, but then was somehow "revealed" to the market ten months later, when the PA AG made *the exact same allegations*. Specifically, Plaintiff asserts that "[i]nvestors began to question" the truthfulness of Defendants' denials regarding the CFPB's allegations, and "in response to the news of the PA AG Complaint, began selling off their shares of Navient stock[.]" SAC ¶ 11. But to plead loss causation, the alleged corrective disclosure must reveal *new* information that Defendants concealed—not merely repeat previously publicized allegations. *In re Merck & Co. Sec. Litig.*, 432 F.3d 261, 269-70 (3d Cir. 2005) (affirming dismissal where allegedly disclosed news was previously released); *Majer v. Sonex Research,*

*Inc.*, 541 F. Supp. 2d 693, 711 (E.D. Pa. 2008) (dismissing based on same).

The PA AG Complaint does not plead any additional facts evidencing improper forbearance-steering practices at Navient.[26]  Indeed, as set forth in Appendix A, the PA AG's allegations of a company-wide forbearance scheme are copied nearly verbatim from the CFPB Complaint—which was filed prior to the onset of the alleged Class Period.  *See* App'x A.[27]  Thus, by the time the PA AG action was filed, allegations of forbearance-steering had been public for nearly a year.  As the market was already aware of these allegations, Plaintiff's theory that the PA AG suit "revealed" Navient's alleged fraud in October 2017 is insufficient as a matter of law to plead loss causation.

### B.  The FSA Report Is Not A Corrective Disclosure

The SAC alleges that the 2017 FSA Report, published in the November 2018 AP Article, is a second corrective disclosure that "corroborate[s]" other purported evidence of forbearance steering.  SAC ¶¶ 8, 92.  It cannot be, as a matter of law.

Plaintiff rests principally on the fact that the price of Navient common stock dropped in the wake of the November 2018 AP Article.  "An adverse market

---

[26] Plaintiff alleges that the PA AG complaint differed from the CFPB Action in its focus on Navient's 2017 conduct. SAC ¶ 123.  But none of the quoted PA AG allegations refers to conduct alleged to have occurred in 2017.

[27] The Court may consider a comparison of the CFPB and PA AG complaints, because they are incorporated by reference in the SAC. *See supra* note 3; *Buck*, 452 F.3d at 260; *see also* SAC ¶¶ 59-61 (CFPB), 122-23 (PA AG).

reaction, however, does not establish the disclosure of an investigation constitutes a corrective disclosure." *Sapssov v. Health Mgmt. Assocs., Inc.*, 608 F. App'x 855, 863 (11th Cir. 2015); *see also Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014) ("[A]ny decline in a corporation's share price following the announcement of an investigation can only be attributed to market speculation about whether fraud has occurred [and] … cannot form the basis of a viable loss causation theory."). This is particularly true where Plaintiff has alleged that the FSA's findings "corroborate" other publicly-available evidence—effectively conceding that these findings are themselves not "new." *See supra* Part IV.A. And where, as here, the announcement is coupled with adverse political and media coverage, courts have recognized that the Company's stock price may be driven down—but not because a "corrective disclosure" has occurred. *See In re Omnicom Grp., Inc. Sec. Litig.,* 597 F.3d 501, 512 (2d Cir. 2010) ("A negative journalistic characterization of previously disclosed facts does not constitute [a] corrective disclosure of anything but the journalists' opinions.").

In any event, Plaintiff's characterizations of the FSA's findings are contradicted by the conclusions ED expressly reached and publicly stated, which Plaintiff conveniently—and transparently—omitted from his lengthy narrative. Notwithstanding Plaintiff's assertions to the contrary, the ED concluded that Navient was in substantial compliance with all applicable laws and regulations, and utilized

forbearance in a manner consistent with the ED's other servicers.  *See supra* Part II.B.  At most, the FSA Report establishes that there was varying level of skill and training among Navient representatives, *see supra* Part II.A.2, which does not suggest, much less show, any corporate scheme improperly to steer borrowers into forbearance.  Plaintiff's failure to tie the FSA's *actual* conclusions to Defendants' alleged misrepresentations is fatal to its claim.  *See Meyer v. Greene*, 710 F.3d 1189, 1197 (11th Cir. 2013) ("To be corrective, a disclosure need not precisely mirror the earlier misrepresentation, but it must at least relate back to the misrepresentation and not to some other negative information about the company.").

### C. Navient Disclosed The Risks Of A PA AG Lawsuit And Publication Of Review Results

At most, the PA AG complaint and AP Article regarding the FSA Report revealed only that Navient faced risks of suit by a state attorney general and review by a federal agency—risks that Navient plainly disclosed.  Materialization of a *concealed* risk may sustain securities fraud; materialization of a *disclosed* risk does not.  *See, e.g.*, *Williams v. Globus Med. Inc.*, 869 F.3d 235, 242-43 (3d Cir. 2017) (affirming dismissal where loss arose from materialization of risk previously disclosed by the company).  And while the news that Navient was facing yet another State AG lawsuit would prove unwelcome, it was not the materialization of an undisclosed risk giving rise to a claim for securities fraud.  In its annual filings,

Navient consistently warned investors that additional lawsuits could be filed,[28] just as Navient disclosed present and future risks of regulatory inquiries and audits.[29]

## CONCLUSION

For the foregoing reasons, the SAC should be dismissed with prejudice.[30] *DelRio-Mocci v. Connolly Props. Inc.*, 2009 WL 2989537, at *2 (D.N.J. Sept. 16, 2009), *aff'd*, 672 F.3d 241 (3d Cir. 2012) (finding that dismissal with prejudice was appropriate where Plaintiff had failed to plead sufficient facts and had already filed two amended complaints); *see also In re Synchronoss Sec. Litig.,* 705 F. Supp. 2d 367, 424 n.74 (D.N.J. 2010) ("[W]here the plaintiff had already amended plaintiff's complaint and yet failed to allege sufficient facts, the courts hold that a few 'bites at the apple is enough,' and find it proper to deny leave to replead.").

---

[28] *See, e.g.*, Ex. 1 at 28, F-56 ("[L]awsuits … may be filed by additional governmental or nongovernmental parties … seeking damages or other remedies related to similar issues raised by the CFPB and the Attorneys General.")

[29] *See, e.g.*, *id.* at 17 ("Navient's businesses and operations are increasingly subject to governmental and regulatory oversight and scrutiny, both at the federal and state levels. Navient is now, and may be subject in the future, to inquiries and audits from state and federal regulators as well as litigation from private plaintiffs.").

[30] Plaintiff's control person claims under 15 U.S.C. § 78t(a) (Count II) are derivative of and must be dismissed with his claims under 15 U.S.C. § 78j(b) (Count I). *See, e.g., In re Party City Sec. Litig.,* 147 F. Supp. 2d 282, 317 (D.N.J. 2001) ("Because the Plaintiffs have not pleaded a predicate violation of Section 10(b) or Rule 10b-5, the Section 20(a) claim must be dismissed.").

Dated: April 29, 2019

Respectfully submitted,

**LATHAM & WATKINS LLP**

By: **/Kevin M. McDonough**
 Kevin M. McDonough

885 Third Avenue
New York, NY 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: kevin.mcdonough@lw.com

Peter A. Wald (*pro hac vice*)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: peter.wald@lw.com

Christopher S. Turner (*pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: christopher.turner@lw.com

*Attorneys for Defendants Navient
Corporation, John F. Remondi,
Somsak Chivavibul, and Christian M.
Lown*

41