**Appendix A**

**CFPB and Pennsylvania AG Complaints: Forbearance Allegations**

| Ex. 4 - Jan. 2017 CFPB Complaint (¶¶ 34-54) | Ex. 3 - Oct. 2017 PA AG Complaint (¶¶ 104-24) |
|---|---|
| Navient's website states that forbearance is appropriate for borrowers who "have a problem making on-time payments due to a temporary financial difficulty." The website also states: "Forbearance is intended to help you out in times of temporary need." (¶ 34) | Defendants' website states that forbearance is appropriate for borrowers who "have a problem making on-time payments due to a temporary financial difficulty." (¶ 104) |
| Forbearance is typically not suitable for borrowers experiencing financial hardship or distress that is not temporary or short-term. Borrowers who enroll in forbearance face significant costs, which generally increase the longer the borrower is in forbearance. These include the accumulation of unpaid interest and the addition of that unpaid interest to the principal balance of the loan. (¶ 35) | Forbearance is suitable only for borrowers experiencing temporary or short term financial hardship and distress. Borrowers who enroll in forbearance face significant costs, such as the accumulation of unpaid interest and the addition of that unpaid interest to the principal balance. (¶ 105) |
| Nevertheless, since at least July 2011, despite publicly assuring borrowers that it will help them identify and enroll in an appropriate, affordable repayment plan, Navient has routinely disregarded that commitment and instead steered borrowers experiencing long-term distress or hardship into forbearance. (¶ 40) | Nevertheless, since at least July 2011, despite publicly assuring borrowers that it will help them identify and enroll in an appropriate, affordable repayment plan, Defendants have routinely disregarded that commitment and instead steered borrowers experiencing long-term financial hardship into forbearance. (¶ 109) |

| **Ex. 4 - Jan. 2017 CFPB Complaint (¶¶ 34-54)** | **Ex. 3 - Oct. 2017 PA AG Complaint (¶¶ 104-24)** |
|---|---|
| Navient's compensation policies for its customer service representatives have incentivized them to push numerous borrowers to forbearance without adequately exploring income-driven repayment plans with those borrowers, and in some cases, without even mentioning income-driven repayment plans at all. (¶ 41) | Defendants' compensation policies for their customer service representatives have incentivized them to push numerous borrowers to forbearance without adequately exploring IDR plans with those borrowers and, in some cases, without even mentioning IDR plans at all. (¶ 110) |
| Because of the number and complexity of repayment options available for federal loans, a conversation about alternative repayment plans and the borrower's financial situation is usually time-consuming. (¶ 42) | Because of the number and complexity of repayment options, a conversation about alternative repayment plans and the borrower's financial situation is often time-consuming. (¶ 111) |
| Navient, however, has compensated its customer service personnel, in part, based on average call time. As a result, engaging in lengthy and detailed conversations with borrowers about their particular financial situation and trying to determine the income-driven repayment plan that is most appropriate for each borrower would have been financially detrimental for those employees. (¶ 43) | Defendants, however, have compensated their customer service personnel, in part, based on average call time. As a result, engaging in lengthy conversations about borrowers' particular financial situations and trying to determine the IDR plan that is most appropriate for each borrower would have been financially detrimental for those employees. (¶ 112) |

| **Ex. 4 - Jan. 2017 CFPB Complaint (¶¶ 34-54)** | **Ex. 3 - Oct. 2017 PA AG Complaint (¶¶ 104-24)** |
|---|---|
| Moreover, since a borrower is required to submit a paper or online application, and include certain income tax documentation with that application, to enroll in an income-driven repayment plan, the process of enrolling a borrower in such plans sometimes requires multiple, lengthy conversations with the borrower. This is especially true considering that more than half of Navient borrowers who enroll in income-driven repayment plans for the first time report that they could not navigate the application process on their own. (¶ 44) | Moreover, since a borrower is required to submit a paper or online application to enroll in an IDR plan, and to include tax documentation with that application, the process of enrolling a borrower in such plans sometimes requires Defendants to have multiple, lengthy conversations with the borrower. Indeed, Defendants found that "more than half of borrowers enrolling in IDR for the first time could not navigate the options on their own." (¶ 113) |
| In addition to the paperwork required to enroll a borrower in an income-driven repayment plan, a borrower in such a plan must also complete an annual recertification form each year to document his/her current income and family size, which is then used to adjust the borrower's payment amount. Processing this renewal paperwork further increases the employee time that Navient must devote to borrowers who enroll in an income-driven repayment plan. (¶ 45) | In addition to the initial paperwork required to enroll borrowers in IDR plans, borrowers in IDR plans must complete recertification forms each year to document their income and family size, which are used to adjust the borrowers' payment amounts. Processing these forms further increases the employee time Defendants must devote to borrowers in IDR plans. (¶ 114) |

| Ex. 4 - Jan. 2017 CFPB Complaint (¶¶ 34-54) | Ex. 3 - Oct. 2017 PA AG Complaint (¶¶ 104-24) |
|---|---|
| In sum, counseling borrowers about and enrolling those borrowers in income-driven repayment plans is costly for Navient and its employees.<br><br>In contrast, enrollment in forbearance can often be completed over the phone, in a matter of minutes, and generally without the submission of any paperwork. (¶¶ 47-48) | In sum, counseling borrowers about and enrolling them in IDR plans is costly and time consuming for Defendants and their employees. In contrast, enrolling a borrower in forbearance can often be completed over the phone, in minutes, without any paperwork. (¶ 115) |
| Navient employees have routinely failed to invest the time and effort necessary to help financially distressed borrowers identify and enroll in affordable repayment plans most appropriate for their financial situation. (¶ 49) | Defendants' employees have routinely failed to invest the time and effort necessary to help financially distressed borrowers identify and enroll in affordable repayment plans most appropriate for their financial situations. (¶ 116) |
| Between January 2010 and March 2015, the number of borrowers that Navient enrolled in forbearance has generally exceeded the number of borrowers enrolled in income-driven repayment plans. For example, in December 2010, around 9% of borrowers with Federal Family Education Loan (FFEL) loans held and serviced by Navient were enrolled in voluntary forbearance, while less than 1% of borrowers with the same loan type were enrolled in IBR. Similarly, in December 2012, approximately 7% of Navient borrowers with FFELP loans held and serviced by Navient were enrolled in voluntary forbearance, while just 2% of borrowers with the same loan type were enrolled in IBR. (¶ 50) | Between January 2010 and March 2015, the number of borrowers that Defendants enrolled in forbearance has generally exceeded the number of borrowers enrolled in IDR repayment plans. For example, in December 2010, around 9% of borrowers with FFELP loans held and serviced by Defendants were enrolled in voluntary forbearance, while less than 1% of borrowers with the same loan type were enrolled in IDR plans. Similarly, in December 2012, approximately 7% of Defendants' borrowers with this type of FFELP loans were enrolled in voluntary forbearance, while just 2% were enrolled in IDR plans. (¶ 117) |

| Ex. 4 - Jan. 2017 CFPB Complaint (¶¶ 34-54) | Ex. 3 - Oct. 2017 PA AG Complaint (¶¶ 104-24) |
|---|---|
| Navient representatives sometimes initially responded to borrowers' inability to make a payment by placing them in voluntary forbearance without adequately advising them about available income-driven repayment plans. This occurred even though it is likely that a large number of those borrowers would have qualified instead for a $0 payment in an income-driven repayment plan at that time. Indeed, over 50% of Navient borrowers who need payment relief, and meet the eligibility criteria for income-driven repayment plans, qualify for a $0 monthly payment. (¶ 51) | Defendants' representatives sometimes initially responded to borrowers' inability to make a payment by placing them in voluntary forbearance without adequately advising them about available IDR plans. This occurred even though many of those borrowers would have likely qualified for a $0 payment in an IDR plan. Indeed, more than 50% of Defendants' borrowers who need relief and are eligible for IDR plans qualify for a $0 monthly payment. (¶ 118) |

| Ex. 4 - Jan. 2017 CFPB Complaint (¶¶ 34-54) | Ex. 3 - Oct. 2017 PA AG Complaint (¶¶ 104-24) |
|---|---|
| For example, between January 1, 2010 and March 31, 2015, nearly 25% of borrowers who ultimately enrolled in IBR with a $0 payment were enrolled in voluntary forbearance within the twelve-month period immediately preceding their enrollment in IBR. Similarly, during that same time period, nearly 16% of borrowers who ultimately enrolled in PAYE with a $0 payment were enrolled in voluntary forbearance within the twelve-month period immediately preceding their enrollment in PAYE. The majority of these borrowers were enrolled in voluntary forbearance more than three months prior to their enrollment in the income-driven repayment plan, which suggests that forbearance was not merely offered to these borrowers while their application in an income-driven repayment plan was pending. Because they were placed into forbearance before ultimately enrolling in an income-driven repayment plan with a $0 payment, these borrowers had delayed access to the benefits of the income-driven repayment plan. They were also subject to the negative consequences of forbearance, including the addition of interest to the principal balance of the loan, which they potentially could have avoided had they been enrolled in the income-driven repayment plan from the start. (¶ 52) | For example, between January 1, 2010 and March 31, 2015, nearly 25% of borrowers who ultimately enrolled in Income-Based Repayment, an IDR plan, with a $0 payment were enrolled in voluntary forbearance within the twelve-month period before they enrolled in Income-Based Repayment. Similarly, during that same time period, nearly 16% of borrowers who ultimately enrolled in Pay As You Earn (PAYE), another IDR plan, with a $0 payment were enrolled in voluntary forbearance within the twelve-month period before they enrolled in PAYE. Defendants enrolled the majority of IDR borrowers in voluntary forbearances more than three months prior to enrolling them in IDR plans, which suggests that Defendants did not merely offer forbearances to these borrowers while their applications for IDR plans were pending.<br><br>Because Defendants placed IDR borrowers into forbearance before ultimately enrolling them in IDR plans with a $0 payment, the borrowers had delayed access to the benefits of IDR and were negatively impacted by consequences of forbearance, including the addition of interest to the principal and lost months that would have otherwise counted toward forgiveness. This may have been avoided had Defendants enrolled borrowers in IDR initially. (¶¶ 119-20) |

| Ex. 4 - Jan. 2017 CFPB Complaint (¶¶ 34-54) | Ex. 3 - Oct. 2017 PA AG Complaint (¶¶ 104-24) |
|---|---|
| Navient also enrolled an immense number of borrowers in multiple consecutive forbearances, even though they had clearly demonstrated a long-term inability to repay their loans. For example, between January 1, 2010 and March 31, 2015, Navient enrolled over 1.5 million borrowers in two or more consecutive forbearances totaling twelve months or longer. More than 470,000 of these borrowers were enrolled in three consecutive forbearances, and more than 520,000 of them were enrolled in four or more consecutive forbearances. For borrowers enrolled in three or more consecutive forbearances, each forbearance period lasted, on average, six months. Therefore, hundreds of thousands of consumers were continuously enrolled in forbearance for a period of two or three years, or more. Regardless of why these borrowers did not enroll in an income-driven repayment plan from the start, their long-term inability to repay was increasingly clear as each forbearance period expired. Yet Navient representatives continued to enroll them in forbearance again and again, rather than an income-driven repayment plan that would have been beneficial for many of them. (¶ 53) | Defendants also enrolled many borrowers in multiple consecutive forbearances, even though they had clearly demonstrated a long-term inability to repay their loans, rather than the short-term financial hardship appropriate for forbearances.<br><br>For example, between January 1, 2010 and March 31, 2015, Defendants enrolled over 1.5 million borrowers in two or more consecutive forbearances totaling twelve months or longer. Nearly 1 million borrowers were enrolled in three or more consecutive forbearances, where each forbearance period lasted, on average, six months.<br><br>More than 520,000 of these borrowers were enrolled in four or more consecutive forbearances. Therefore, hundreds of thousands of borrowers were continuously enrolled in forbearance for a period of two or three years, or more. Regardless of why these borrowers did not enroll in an IDR plan from the start, their long-term inability to repay was increasingly clear as each forbearance period expired. Yet Defendants' representatives continued to enroll them in forbearance again and again, rather than an IDR plan that would have been more appropriate for most of them. (¶¶ 121-23) |

| Ex. 4 - Jan. 2017 CFPB Complaint (¶¶ 34-54) | Ex. 3 - Oct. 2017 PA AG Complaint (¶¶ 104-24) |
|---|---|
| Enrollment in multiple consecutive forbearances imposed a staggering financial cost on this group of borrowers. At the conclusion of those forbearances, Navient had added nearly four billion dollars of unpaid interest to the principal balance of their loans. For many of these borrowers, had they been enrolled in an income-driven repayment plan, they would have avoided much or all of their additional charges because the government would have paid the unpaid interest on their subsidized loans in full during the first three years of consecutive enrollment. (¶ 54) | Enrollment in multiple consecutive forbearances imposed a staggering financial cost on these 1.5 million borrowers. At the conclusion of those forbearances, Defendants had added nearly four billion dollars of unpaid interest to the principal balance of their loans. For many of these borrowers, had they been enrolled in IDR plans, they would have avoided much or all of their additional charges because the government would have paid the unpaid interest on their subsidized loans during the first three years of enrollment… (¶ 124) |