# EXHIBIT 6

Federal **Student**
*An* OFFICE *of the* U.S. DEPARTMENT *of* EDUCATION

PROUD SPONSOR *of*
*the* AMERICAN MIND ®

Navient Use of Forbearance
Site Visit Review

**Report Date:** May 18, 2017
**On Site Date:** March 20 – 24, 2017

PREPARED FOR:
FSA Business Operations
Washington, DC

ON-SITE REVIEW TEAM:
Colby Jennings, Soo Kang, George Moghaddam,
Lisa Oldre, Jason Vann and Michael Wood

**Table of Contents**

Site Visit Observations ........................................................................................................................... 2

Servicer Response ..................................................................................................................................... 5

Review Methodology ............................................................................................................................ 10

This presentation, document or report and analyses are provided for Internal-Use only and may not be shared outside of Federal Student Aid without the permission of FSA-Operations Services. This presentation, document, report or analysis was created to aid the Department of Education in complying with its legal obligation to collect federal student loan debt. These work products may also be used to inform the creation of future Department and FSA policies.

| Site Visit Observations |
|---|

During the site visit, the FSA Review Team listened to recorded inbound calls and evaluated accounts based solely on a review of the servicing histories for some of those calls.  The review team also did a side-by-side review with representatives to listen to live inbound calls.  As part of the review, Navient also presented their inbound and outbound call processes.  While on-site, the FSA Review Team discovered Navient inadvertently provided only inbound calls, even though the team requested <u>all</u> calls as part of the sample; Navient provided the requested outbound call recordings shortly thereafter.  Because of this, the Call Monitoring Team completed the review off-site.

**CALL CENTER REVIEW**

FSA listened to 388 inbound and 2,000 outbound calls, for a total of 2,388 calls.  Of these, FSA determined that 13 inbound and 207 outbound calls did not provide the borrowers with all of their options.  For these 220 calls, Navient offered only forbearance.

Observation 1:  For 220 of the calls, Navient CSRs neglected to offer the borrower an option other than forbearance.  In several instances, this occurred after the borrower made a promise to pay within a short time of the call – usually within a time frame that would cause no additional detriment to the borrower.  While this isn't a contractual requirement, these borrowers were not given the opportunity to decide if another option (like one of the Income Driven plans or a deferment) would have been more favorable.  And in some instances, interest was capitalized when another option may have prevented it.

*Recommendation:* FSA recommends that Navient asks questions so the borrower is able to determine which option (like promise to pay) would be most beneficial to resolve the delinquency.  If the borrower is willing and able to make a payment to resolve the delinquency on the account, and can continue to make payments, FSA does not believe a borrower should use unnecessary forbearance time that will result in interest capitalization.

Observation 2:  Similar to the first observation, many CSRs did not offer alternative or beneficial options when attempting to assist borrowers with bringing their account current or managing repayment.  CSRs did not ask probing questions to determine if it would be more beneficial for the borrower to enter a deferment or to change to one of the Income Driven Repayment (IDR) options.

*Recommendation:* FSA recommends that Navient provide borrowers with all options available so that the borrower may make an informed decision based on their current situation.  The use of forbearance in lieu of any other options can cause more undue hardship to a borrower in the long term.

**SERVICING HISTORY REVIEW**

When reviewing accounts in Navient's CLASS system, it isn't always easy to determine exactly what happened on a given call.  Of the forty accounts, the review team was able to determine that 21 of them offered the borrower an option other than forbearance.  For the other nineteen accounts, FSA asked for Navient to provide the call that resulted in the notation on the account; eight of those did not offer the borrower any other option.

Observation #1: On twenty percent of the samples (8 out of 40 accounts), Navient offered the borrower *only* forbearance.  In a few of these instances, borrowers offered information that suggested their income had changed (like going through a divorce, recently lost job or was in the process of taking a new job).  However, Navient did not suggest a new repayment plan or an unemployment deferment.  In other instances, the borrower requested a month or two of forbearance and Navient provided the forbearance without probing to see if there was a better option available to the borrower.

*Recommendation*:  Six out of eight of the forbearance only accounts were for calls occurring before July 1, 2015.  Since then, Navient has less turnover/higher staff retention (due to various adjustments within their training process).  This could explain why the calls had a higher success rate after that date (2 out of 40, or five percent, of the calls offered only forbearance).  However, FSA recommends that Navient provide communication/on-going training to their agents so that borrowers consistently receive all of their options – repay, IDR, deferment and forbearance.

Observation #2: About half of the time (21 out of 40 accounts), Navient's notes were not clear enough to determine what happened on the account.  For example, entries on the same day would have a comment suggesting that the borrower both accepted and rejected the forbearance.  It was unclear whether this was the same call or a different call.  One reason for this is the CLASS system does not provide the timestamp to show when a transaction happened, unless the call was routed through the IVR.  Another reason for this is because Navient's CARES system used to notate the account that the borrower rejected the forbearance when CSRs went to a different section of the CARES system.  This issue of "rejecting forbearance" was resolved with a system upgrade in June 2016.  In other examples, the phone agent clearly provided several options (repay, IDR, deferment) before ultimately giving the borrower the forbearance option.  However, the note only displayed that the forbearance was processed without a discussion of the other options.

*Recommendation*:  In June 2016, Navient updated their system so that the CARES screens don't "reject" forbearance when a phone agent goes to another screen.  However, it is still not clear what happens on each call based on the notes left in the CLASS system.  FSA recommends Navient notate each account so that the notes match exactly what happens on each call.

Observation #3: The review team was not able to determine what happened on four of the accounts because Navient was not able to provide all of the calls requested for the servicing history review.  For two of the samples, Navient provided calls; however, they were not the calls matching the date of requested

sample.  For two other samples, Navient was not able to provide calls at all.  This is because the CARES calls have to be provided manually, and it is difficult for Navient to identify calls within a reasonable timeframe.  For example, they needed to provide five calls for one borrower just to get the call matching the requested date.

*Recommendation*:  To prevent confusion and promote accuracy, FSA recommends that Navient perform a level of QC on each request to ensure Navient is providing FSA with the information requested.

**LIVE SIDE-BY-SIDE REVIEW**

For the side-by-side reviews, the review team listened to live calls as they entered the system.  The agents were friendly and polite.  However, Navient CSRs have varying degrees of skill when navigating calls.  For example, one of the agents recently finished the eleven week training course and did a good job navigating the call.  However, a more seasoned agent was not able to provide the next steps for a disabled borrower wanting to apply for discharge based on a determination by the Social Security Administration.  After the review team left site, Navient provided CR 3294 (SSA match for TPD) to their staff for additional education.

| Servicer Response |
|---|

Navient's response:

Thank you for your assessment. Navient listened to and evaluated all the calls and reviewed all servicing history accounts deemed as servicing opportunities by FSA. Our review entailed a holistic evaluation of not only the call, but of all pertinent servicing history and other account information. Before addressing the three specific review categories, we would like to share a few general comments.

- We disagree with 168 of the 228 servicing opportunity determinations (call review and servicing history review). In most cases, we believe the representatives appropriately followed our call flow procedures and found the best solution for the borrowers.

- Servicers have not been provided with FSA specific preferences relative to call center scripting that prescribes in what instances to offer long term solutions such as IDR, when to offer other options such as graduated repayment or forbearance, and whether the servicer should counsel the borrower "away from" options requested by the borrower. Nor are we aware of any requirement that borrowers receive all of their repayment options-IDR, deferment and forbearance- on each and every call. As such, we do not believe a rating of pass or fail is appropriate for this review. Servicers are required to provide numerous disclosures to borrowers on the various repayment options and Navient complies with those requirements. These disclosures and call center interactions result in the borrower receiving information concerning their options when you look at them in their totality. We have developed extensive training programs and call flow procedures to guide representative discussions with borrowers, and regularly assess representative adherence with our policies and practices. Our practices and policies serve borrowers well as evidence by the lower delinquency and default rates experienced by Navient-serviced borrowers, and the rates in which borrowers serviced by Navient enroll in IDR and other nonstandard plans. Our assessment of the calls and "agree" or "disagree" is based on whether the representative followed our internal procedures. If FSA chooses to require all servicers to discuss IDR to all borrowers on all calls or to require all servicer representatives follow a common call flow, specific requirements should be provided in an approved Change Request.

- Including the presentation on March 21, we have discussed our call flow and probing questions with FSA on several occasions. We believe our call flow results in borrowers being offered the best solutions for their current situations. We have scripting, tools, and training geared to provide consistent borrower information on the myriad of student loan repayment solutions. As depicted in the attached training graphic, our agent training and available tools promote IDR when appropriate as a long-term solution. This

is also monitored in ongoing call calibration sessions, mentoring, and quality control activities.



Repayment Options
Conversation.pdf

- Every borrower who receives a verbal forbearance was advised during the call of the terms of the forbearance and that they may be eligible for other repayment options, which include standard, graduated, extended or income driven repayment plans.  Every borrower was required to accept the terms of the forbearance following this verbal disclosure.

- Every borrower who received a verbal forbearance also received a letter with enclosures that confirms the forbearance transaction and provides a clear and conspicuous disclosure of other repayment options like IDR, loan consolidation and deferment.  The option to shorten or cancel the forbearance along with an example of the effects of capitalized interest during deferment or forbearance are provided in the letter.

- In 2016, Navient provided more than 154 million communications promoting IDR and other repayment options to our 10 million federal loan borrowers. In addition, in 2016 we educated and modeled repayment plans for 2.4 million borrowers.

- As demonstrated by the examples below, we believe the calls were appropriately handled in accordance with Navient's internal procedures.  A detailed response for each call identified by FSA a servicing opportunity is attached- Appendix A.



Appendix A -
Navient Detailed Rev

- The sampling criteria of calls less than 5 minutes is not a representative sample of all calls.  While calls that end in forbearance are on average longer than calls that end in IDR, in both cases the average call length is greater than 5 minutes.  Therefore, a sample of only calls under 5 minutes would include more calls that ended in something other than forbearance or IDR. In short, the sampling methodology is not representative of all Navient calls and thus it would be inappropriate for users of this report to draw conclusions or compliance ratings based on the data in this report. We suggest that the report clarify that this is a sample of only a subset of Navient calls, specifically calls of a lower duration.

- Given the scope of our comments, we request the opportunity to review another draft of this report before it is issued as a final report.

**CALL CENTER REVIEW**

FSA Observation 1 & 2: Navient agrees that in some limited instances agents offered forbearance when probing for IDR would have been a better approach and consistent with our internal procedures; however, we believe in the majority of instances representatives handled the call appropriately and in accordance with calls scripts and flows.

While a complete summary of the specific call findings and our call-by-call analysis is included in Appendix A, below are some examples of our differing analysis:

(b)(6) The borrower was prequalified for an Unemployment Deferment by an outbound default prevention associate. The associate took the Unemployment Deferment path vs. the IDR path because the borrower stated the loans should be paid in the future by the Veteran's Administration. Consequently, the associate resolved the past due balance with an administrative forbearance and provided 60 days of prospective administrative forbearance for the forms to be completed by the borrower. We believe we found the best solution for this borrower.

(b)(6) - The borrower had a $508 outstanding balance. The borrower indicated he couldn't afford his monthly payment due to unemployment. The default prevention associate did share that Income Driven Repayment was an option. However, the associate informed the borrower that this option would significantly extend the repayment terms due to the low balance. A level standard repayment plan will pay the loan off in 8 months vs. 23 months in an IDR plan. The associate prequalified the borrower for an Unemployment Deferment. The associate resolved the past due balance with an administrative forbearance and provided 60 days of prospective administrative forbearance for the forms to be completed by the borrower. We believe we found the best solution for this borrower.

(b)(6) The borrower called to check the status of her account. She submitted an Unemployment Deferment but received a bill in the mail and was questioning if she needed to remit payment. At the time of the call, the Unemployment Deferment had already been applied and the agent advised the bill could be disregarded. Given that the Unemployment Deferment had already been applied, we believe the agent interacted appropriately during this call.

(b)(6) The borrower called to confirm she completed the Student Loan Debt Forbearance correctly. Based on a review of the account, IDR was modeled on a prior call (July 18, 2014) and the calculated payment amount did not provide relief so Student Loan Debt Forbearance was offered. IDR would not have been discussed on this call again as the borrower was not seeking additional relief. She was merely confirming she had done everything correctly prior to sending the deferment, which was received and processed by September 10, 2014.

**SERVICING HISTORY REVIEW**

FSA Observation 1: In mid-2015 agents from the Inbound Borrower Call Center completed an 8-hour IDR refresher class, which focused not only on program and processing rules but also scenario based activities intended to mirror common issues and call types.  Information from this refresher module was also incorporated into our New Hire Curriculum.  Our agents are trained to probe to assess whether the customer needs short term or long term payment relief and then proceed down the resulting path to qualify the customer for repayment options, deferment or forbearance based on their individual circumstances and needs.

In addition, IDR related items are frequent topics in our team meeting agendas where we routinely highlight items such as call flow, probing questions and best practices for customers who are experiencing financial hardship.

Navient reviewed all the accounts identified by FSA as servicing opportunities in the Servicing History Review category. In our evaluation of the pertinent servicing history, other account information and the associated call, we disagree with the assessment that eight accounts "failed".

Some examples where the accounts and call were handled appropriately and in accordance with our calls scripts and flows include:

(b)(6) - At the onset of the call, the borrower specifically requested forbearance "just for one month". The borrower did not indicate hardship making the scheduled payment or that long-term relief was necessary. Due to the specific request from the borrower for short term relief, forbearance was the best option available to the borrower. The borrower made all scheduled payments since this forbearance ended and has sought no additional relief.

(b)(6) - The borrower requested temporary relief (2-months) as he was changing jobs and returning to school. The borrower did return to school as indicated during the call and enrollment information was received and a school deferment was applied beginning on September 30, 2014. Due to the specific request from the borrower for short term relief and the near-term possibility of an in-school deferment, forbearance was the best option for this borrower.

(b)(6)

Our agents are trained to utilize system generated correspondence history messages where appropriate to document reasons for our highest volume call types. They are also trained to include specific "free form" messages where needed to ensure that important elements of the conversation are documented for future reference.

Additionally, in October 2015 we modified CARES (the GUI used by call center agents) so that any Repayment Option modeling completed by the agent writes a correspondence note to the system of record (CLASS) and details the information

collected related to income, spousal status and dependents as well as the resulting payment amount calculated under an IDR plan.

Further, in October, 2016 we launched a redesigned CARES Repayment Options Calculator that provides all eligible repayment plans to the agent in a grid view, which allows them to comprehensively calculate and review all eligible options at once. This provides for more efficient and effective discussion on repayment options with our customers.

Regarding the observation related to "rejected forbearance", there was a time when a correspondence history message indicating the customer declined forbearance would write to the system of record (CLASS) if an agent accessed the Forbearance window in CARES without processing a forbearance. For example, if an agent accessed the Forbearance window to determine if time was available, this correspondence history message would write to history even if forbearance was not discussed outright or discussed as an option and the borrower opted for another option. This was corrected in June 2016 and no longer occurs.

FSA Observation 3: Due to the age of some of the accounts requested for review in this category, Navient acknowledges that some call recordings were difficult to find as they were outside the call recording retention period required by FSA (30 days from date of call or 12 months if selected by FSA for monitoring). Regarding the missing calls, FSA requested call recordings on 19 accounts to facilitate the Servicing History Review. Of those 19 accounts, FSA noted that we were unable to provide call recordings on 4 accounts. We reviewed these four calls noted and made the following determinations:

- One recording (the 03/02/15 call for SSN (b)(4),(b)(6) ) was a supplemental call and was not the recording associated with the forbearance processing in question.
- One recording (the 02/26/15 call for SSN (b)(4),(b)(6) ) was noted with an incorrect date; Navient provided the call recorded on 03/06/14 which coincided with the date the forbearance in question was processed.
- Two recordings (the 08/03/15 call for SSN (b)(4),(b)(6) and the 11/09/15 call for SSN (b)(4),(b)(6) were located post-review.

**LIVE SIDE-BY-SIDE REVIEW**

Navient provided feedback to the representative who handled the TPD related call. Our procedures and standard call handling protocol is to direct customers who have specific TPD-related questions to the designated TPD servicer for assistance from a subject matter expert. While our agents are trained in general eligibility guidelines, they are not trained to handle specific application or detailed eligibility questions. Moreover, we believe it is a better customer service experience to have a borrower contact the servicer who is empowered to assist the borrower, i.e. the designated TBD servicer, rather than have a lengthy conversation with a customer and only then tell them they need to talk to another servicer.

9

| Review Methodology |
|---|

**SITE VISIT REVIEW OBJECTIVE**

The objective of the site visit was to assess whether the use of forbearance by Navient CSRs met the standards outlined in federal regulations, contractual requirements, and implemented Change Requests (CR). More specifically, the review team evaluated whether or not the Navient agents offered all the applicable options before placing a borrower in forbearance.

**STANDARDS**

**Statutory & Regulatory**

The regulations and requirements governing IDR are:

- Direct Loans – 34 CFR 685.205, 685.208-210 and 685.221
- FFEL – 34 CFR 682.211 and 682.215

**Change Requests**

The implementation of Change Requests:

- CR 3290 – Call Center Branch-Specialty and Other Monitored Calls
- CR 3373 – Revised Recorded Call Data Selection and Volume

**METHODOLOGY**

**Materials Requested**

Navient granted the review team access to their CLASS servicing system and Citrix environment where the stored calls are located. Navient also provided CSRs for the team to sit with in order to evaluate live phone calls.

**Sampling**

Navient provided over two million inbound calls from 01/01/14 through 03/01/17. From this list, the team randomly selected 700 phone calls – 200 each from 2014, 2015 and 2016, and 100 from 2017. For the servicing history review, Navient queried the list of two million calls for calls that resulted in forbearance. This resulted in a list of over 219,000 calls; the review team randomly selected fifty (50) accounts from that list. Navient also provided six CSRs for side-by-sides. For the outbound calls, Navient provided outbound calls from 3/23/2015 through 03/23/17. The team randomly selected 2,000 calls and listened to all of those calls.

**Testing**

The review team listened to phone calls and reviewed CLASS to determine if Navient CSRs properly handled phone calls.

The reviewers evaluated forbearance usage—

- Based on agents handling calls—
  - Providing repayment plans (including IDR);
  - Providing all options; and
- Based on servicing history—
  - Notations on account to determine what happened on calls; and
  - Accuracy of information provided in account history and on calls.

| Borrower Name | Borrower last 4 of SSN | Agree/Disagree | Comments | Call Recording # | Call Source |
|---|---|---|---|---|---|
| (b)(6) | | Disagree | (b)(6) requested deferment due to short term disability. As a result the agent attempted to qualify him for deferment but determined he was not eligible, at which point forbearance was offered and accepted.<br><br>Difficulty Making Payments disclosure letter sent post-call. | (b)(4),(b)(6) | (b)(4),(b)(6) |
| (b)(6) | | Disagree | (b)(6) requested a 2-month extension of his forbearance as he was changing jobs and returning to school. Due to the specific request from the customer for short term relief and the pending enrollment, forbearance was the best option. (b)(6) did return to school as indicated during the call; enrollment information was received and a school deferment was applied beginning on September 30, 2014.<br><br>Difficulty Making Payments disclosure letter sent post-call. | (b)(4),(b)(6) | (b)(4),(b)(6) |
| (b)(6) | | Disagree | (b)(6) advised she needed to postpone her payments for 3-months.  Due to short term nature defined by customer, the agent did not pursue longer term options as the customer said she could continue to make payments after the temporary hold.<br><br>Difficulty Making Payments disclosure letter sent post-call. | (b)(4),(b)(6) | |

| Borrower Name | Borrower last 4 of SSN | Agree/Disagree | Comments | Call Recording # | Call Source |
|---|---|---|---|---|---|
| (b)(6) | | Disagree | (b)(6) advised that while she was waiting on tax information to send to us for IDR purposes (she was denied in 12/2013 as her income was too high), she recently lost her job and needed to postpone payments. The agent attempted to qualify her for an unemployment deferment but the customer advised she was in a "train to hire" program and would be working within a month or two. Due to the short term nature, forbearance was offered and accepted.

Note: The spreadsheet provided by FSA indicates this call took place on 02/26/15; however, there are no agent notes nor is there a forbearance applied on that date. The call with the agent noted on the spreadsheet and heard on recording ID 893947289 took place on 02/06/14.

Difficulty Making Payments disclosure letter sent post-call. | (b)(4),(b)(6) | |
| (b)(6) | | Disagree | (b)(6) advised she moved and needed to change her address and also that she needed to defer her payment for the month. The agent asked the customer if she wanted to resume payments in July and the customer confirmed that was accurate. Due to the specific, short term relief request from the customer, forbearance was applied as requested.

Difficulty Making Payments disclosure letter sent post-call. | (b)(4),(b)(6) | |
| (b)(6) | | Disagree | (b)(6) requested forbearance "just for one month". Due to the specific and short term relief request from the customer, forbearance was applied as requested. The customer did not indicate hardship making the scheduled payment and did not convey that long-term relief was necessary.

Difficulty Making Payments disclosure letter sent post-call. | (b)(4),(b)(6) | |

| Borrower Name | Borrower last 4 of SSN | Agree/Disagree | Comments | Call Recording # | Call Source |
|---|---|---|---|---|---|
| (b)(6) | | N/A | FSA spreadsheet indicated calls were not provided; however, they were located post-visit and call ID was inserted in Column E. No response provided as no feedback/analysis received from FSA | (b)(4),(b)(6) | |
| (b)(6) | | N/A | FSA spreadsheet indicated calls were not provided; however, they were located post-visit and call ID was inserted in Column E. No response provided as no feedback/analysis received from FSA | (b)(4),(b)(6) | |
| (b)(6) | | Agree | (b)(6)     advised she was going through a divorce that should be settled in a few month and asked to postpone payments. Prior to the call, the customer had temporary hold expire that was applied after we qualified her for hardship deferment and were awaiting the required documentation. The customer was also in IDR (ICR, but in the permanent standard payment) and these should have been clues to the agent to ask if payment amount was affordable after forbearance expired or other probing questions to ensure hardship was in fact temporary and not long term. Although other options were not discussed, a letter was sent to the customer after the call that did include other options, including IDR.

Difficulty Making Payments disclosure letter sent post-call. | (b)(4),(b)(6) | |
| (b)(6) | | Disagree | (b)(6)     requested deferment for a couple of months and based on this request, the agent went down the short term postponement path. The agent did collect income for the purposes as qualifying the customer for Student Loan Debt Forbearance, which was not an option due to income.  As a result, forbearance was offered and accepted.  When the agent asked how much time was needed (b)(6)    advised 2-months, again supporting the short term nature of the hardship.

Difficulty Making Payments disclosure letter sent post-call. | (b)(4),(b)(6) | |

Total Disagree          7

| Borrower Name | Borrower last 4 of SSN | Agree/Disagree | Comments | Call Recording # | Call Source |
|---|---|---|---|---|---|
| Total Agree | 1 | | | | |
| N/A | 2 | | | | |

| Borrower Name | Borrower last 4 of SSN | Agree/Disagree | Comments | Call Recording # | Call Source |
|---|---|---|---|---|---|
| (b)(6) | | Agree | (b)(6) equested 2-months of postponement due to other obligations and advised that she would likely be able to resume payments in August or September making the relief temporary in nature. However, because (b)(6) was already in IDR (processed in 04/2014) the agent should have reminded the customer that she did have the option of recalculating her IDR payment if needed. In addition, the agent should have asked probing questions to determine if deferment was an option given the short term nature of the requested relief.

Difficulty Making Payments disclosure letter sent post-call. IDR renewal letters/applications also sent annually but not returned | (b)(4),(b)(6) | |
| (b)(6) | | Disagree | (b)(6) alled to confirm she completed the Student Loan Debt Forbearance correctly. Based on a review of the account, IDR was modeled on a prior call (July 18, 2014) and the calculated payment amount did not provide relief so Student Loan Debt Forbearance was offered. IDR would not have been discussed on this call again as (b)(6) was not seeking additional relief. She was merely confirming she had done everything correctly prior to sending the deferment, which was received and processed by September 10, 2014. | (b)(4),(b)(6) | |

| Borrower Name | Borrower last 4 of SSN | Agree/Disagree | Comments | Call Recording # | Call Source |
|---|---|---|---|---|---|
| (b)(6) | (b)(6) | Disagree | (b)(6) requested forbearance for a few months in order to save a little bit of money due to other financial obligations. The customer said she could resume making payments in October and the agent did ask the customer if when the temporary hardship was over if she could afford her scheduled payment, to which the customer advised "yes". As such, the agent proceeded with forbearance as the best short term option for the customer<br><br>Difficulty Making Payments disclosure letter sent post-call. | (b)(4),(b)(6) | |
| (b)(6) | | Agree | (b)(6) was in IDR at the time of the call (processed on 03/25/2015) and requested postponement for 3-month due to financial issues. Since this was short term, the agent offered forbearance. Customer did not indicate there was an overall change in financial circumstance, just a temporary inability to pay but he agent could have confirmed that recalculation of current payment amount wasn't needed before offering forbearance.<br><br>Difficulty Making Payments disclosure letter sent post-call. | (b)(4),(b)(6) | |

| Borrower Name | Borrower last 4 of SSN | Agree/Disagree | Comments | Call Recording # | Call Source |
|---|---|---|---|---|---|
| (b)(6) | (b)(6) | Disagree | (b)(6) Called to question why he received a bill when his daughter was still in school.  Based on pending school enrollment information for dependent student, short term solution of forbearance was offered.  Enrollment information was received on 03/24/815 and forbearance was removed so enrollment information could be applied.<br><br>Note: At the time of this call it was not our procedure to apply administrative forbearance while awaiting electronic enrollment information from the school.  Today, administrative forbearance would be applied in this situation.<br><br>Difficulty Making Payments disclosure letter sent post-call. | (b)(4),(b)(6) | |
| (b)(6) | (b)(6) | Disagree | (b)(6) Called to question why he received a bill when he was still in school.  The agent did confirm with the customer that he started school in January and was enrolled at least half time.  Agent checked school reporting schedule and found that enrollment reporting was scheduled for April 13th.  Based on this information, the agent advised that he could wait until the update was received because it was expected in less than 30 days and would be posted retroactively.  The agent would not have discussed a long term solution based on the specific information provided by the customer.<br><br>Note: At the time of this call it was not our procedure to apply administrative forbearance while awaiting electronic enrollment information from the school.  Today, administrative forbearance would be applied in this situation. | (b)(4),(b)(6) | |

| Borrower Name | Borrower last 4 of SSN | Agree/Disagree | Comments | Call Recording # | Call Source |
|---|---|---|---|---|---|
| (b)(6) | | Disagree | (b)(6) advised his mother attempted to log into his account the prior day and got locked out so he needed to reset the account. His mother had called earlier in they day for this same reason but was advised the borrower needed to call. He advised his mother handled the payments and could not even provide his online user ID. The agent advise the customer he was past due for one payment and asked if he wanted a forbearance and he just needed the account unlocked, which the agent did. It appears the mother makes the payments every month and an online payment was made a few days after this call. This was not a call for payment relief. | (b)(4),(b)(6) | |
| (b)(6) | | Disagree | (b)(6) called to ask if we had a program where she could skip a payment. The agent did ask if the customer wanted to talk about repayment options and the customer advised she talked to someone a few months ago and did not think she qualified for IDR. Upon review of the account, the customer was denied IDR in 09/2014. Since the customer advised they only needed to "skip a payment" and the customer did not indicate there were any changes to her financial situation that may have changed her eligibility, IDR was not discussed. We believe this call was handled appropriately based on the prior account history and customer request.<br><br>Difficulty Making Payments disclosure letter sent post-call. | (b)(4),(b)(6) | |
| (b)(6) | | Disagree | (b)(6) called to check on status of her unemployment deferment as she had received a bill in the mail. At the time of the call, the deferment had already been received and processed. Agent would not have requalified the customer for an IDR plan if the account was already "resolved" | (b)(4),(b)(6) | |

| Borrower Name | Borrower last 4 of SSN | Agree/Disagree | Comments | Call Recording # | Call Source |
|---|---|---|---|---|---|
| (b)(6) | | Disagree | (b)(6) was transferred to Navient by school FAO, who specifically requested that we help her out with verbal forbearance. FAO advised the customer was not working but looking for work and he sent her an unemployment deferment. FAO stayed on line with customer - since FAO handled the postponement piece the agent only pursued what was specifically requested on the call. | (b)(4),(b)(6) | |
| (b)(6) | | Disagree | (b)(6) called to confirm status/payment dates; she had loans in Grace and Repayment. The agent did advise that we could process forbearance to align due dates and proceeded to answer questions about prior enrollment history at which time the call recording ended. While forbearance was ultimately applied, since the entire call recording is not available it cannot be definitively determined that other options were not discussed.<br><br>Difficulty Making Payments disclosure letter sent post-call. | (b)(4),(b)(6) | |
| (b)(6) | | Agree | (b)(6) requested forbearance, which the agent granted based on available time.  Since the customer wanted 6-months of forbearance the agent should have asked probing questions to definitively rule out other options.<br><br>Difficulty Making Payments disclosure letter sent post-call. | (b)(4),(b)(6) | |
| (b)(6) | | Disagree | (b)(6) failed to request a deferment.  IDR was not discussed but agent collected information needed to model the plan and determined current payment amount was the lowest available based on income. Forbearance was the only option available and the customer confirmed that she only needed to skip one month and would be able to make payments in February.<br><br>Difficulty Making Payments disclosure letter sent post-call. | (b)(4),(b)(6) | |

| Borrower Name | Borrower last 4 of SSN | Agree/Disagree | Comments | Call Recording # | Call Source |
|---|---|---|---|---|---|
| Total Disagree | 10 | | | | |
| Total Agree | 3 | | | | |
| N/A | 0 | | | | |

| Fail | Tab 1 | Tab 2 | Tab 3 | Tab 4 | Total |
|------|------|------|------|------|------|
| No | 27 | 26 | 60 | 36 | 149 |
| Yes | 17 | 15 | 6 | 18 | 56 |
| N/A | | | 2 | | 2 |
| Total | 44 | 41 | 68 | 54 | 207 |

| Fail | Tab 1 | Tab 2 | Tab 3 | Tab 4 | Total |
|------|------|------|------|------|------|
| No | 1% | 1% | 3% | 2% | 7% |
| Yes | 1% | 1% | 0% | 1% | 3% |
| N/A | 0% | 0% | 3% | 0% | 1% |

| | |
|---|---|
| FSA indicates failed | 10.35% |
| Navient agrees | 2.80% |

| Account | recordingID | NAVI Comments | Should Call be a fail? (Y, or N) |
|---------|-------------|---------------|----------------------------------|
| (b)(6) | (b)(4),(b)(6) | | Y |
| (b)(6) | | The borrower had a low outstanding balance. The borrower couldn't afford her monthly payment due to unemployment. The default prevention associate did share that Income Driven Repayment was an option. However, the associate informed the borrower that this option would significantly extend the repayment terms due to the low balance. A level standard repayment plan will pay the loan off in 8 months vs. 23 months in an IDR plan. The associate prequalified the borrower for an Unemployment Deferment. The associate resolved the past due balance with an administrative forbearance and provided 60 days of prospective administrative forbearance for the forms to be completed by the borrower. We believe we found the best solution for this borrower. | N |
| (b)(6) | | | Y |
| (b)(6) | | The borrower indicated she was temporarily unemployed but returning to work soon. She confirmed that she could afford her payment going forward. As a result, a temporary hardship forbearance was used to bring the borrower current so she could resume payments. | N |
| | | | Y |
| (b)(6) | | The borrower indicated he was entering the military in the near future. The agent encouraged the borrower to continue making payments until he was active duty. The agent determined that a lower Graduated Repayment payment plan was affordable. The borrower agreed they could afford the lower payment. The agent encouraged a return call to the Navient Military once he was sworn into duty. | N |
| (b)(6) | | | Y |
| | | | Y |
| (b)(6) | | The borrower actually requested to go down the forbearance path. The agent suggested an Income Driven Repayment plan and prequalified the borrower. The borrower was brought current with an administrative forbearance and the borrower received an additional 60 days of forbearance to complete the IDR process. | N |

| | | | | |
|---|---|---|---|---|
| (b)(6) | (b)(4),(b)(6) | The agent prequalifed the borrower for an unemployment deferment.  The form was sent to the borrower. | | N |
| (b)(6) | | The borrower specifically requested a forbearance because his wife is wrapping up school. He wanted to set up Auto Pay starting in February and begin making payments. | | N |
| (b)(6) | | The borrower was in the process of returning to school and work as a result of an illness. The borrower requested forbearnce. Once the borrower returns to school, Navient will receive the enrollment information and provide an in school deferment. | | N |
| (b)(6) | | The borrower indicated they had just obtained a new job and would start the following week. The borrower agreeded the new lower payment amount was affordable. The borrower was brought curent with an administrative forbearance. | | N |
| | | | | Y |
| (b)(6) | | The borrower indicated the payment would be more affordable in a month due to recent legal issues. The agent offered to move the due date to a different point in the month to help balance bills. The agent processed a forbearance to allow the borrower to resolve the delinquency. | | N |
| (b)(6) | | The borrower advised the agent he was returning to school in the coming months. Due to the near-term possibility of an in-school deferment, forbearance was the best option. | | N |
| | | | | Y |
| (b)(6) | | The borrower agreed that the modeled lower repayment amount was acceptable. The agent resolved the delinquency with administrative forbearance. | | N |
| (b)(6) | | Borrower's PLUS loans were in an in-school status. Associate began to ask qualifying questions, however the borrower interrupted the questioning to indicate that she has been denied previously and all situation was the same.  We believe the agent interacted | | N |
| (b)(6) | | Borrower indicated that she had been unemployed for several months but was resuming employment in the next couple of weeks and would be able to resume the MPA.  Borrower requested that the payment be deferred.  We believe the agent interacted appropriately in this circumstance. | | N |

| | | | |
|---|---|---|---|
| (b)(6) | (b)(4),(b)(6) | Borrower indicated that he has been unemployed but would resume employment in January, at which time he would be able to make the MPA. Borrower asked if the due date could be pushed back to January. We believe the agent interacted appropriately in this circumstance. | N |
| (b)(6) | | The borrower was offered a forbearance by an outbound default prevention associate. The borrower was not working and in the process of obtaining disability. The associate resolved the past due balance with an administrative forbearance and provided prospective administrative forbearance. The associate referenced the disability process and also discussed that the borrower may be eligible for a $0 IDR plan and forwarded documentation for IDR & TDP. We believe the agent interacted appropriately in this circumstance. | N |
| (b)(6) | | The borrower spoke to a Commercial associate on the previous day and indicated that he was having a financial hardship and currently receiving food stamps. The associate confirmed that conversation and | N |
| (b)(6) | | | Y |
| (b)(6) | | The borrower indicated that they were not in a position to make a payment until the following month. Borrower had picked up an additional job and should be back on his feet soon. We believe the agent interacted appropriately in this circumstance. | N |
| (b)(6) | | | Y |
| (b)(6) | | | Y |
| (b)(6) | | The borrower was 21 days delinquent and indicated that she was trying to get a forbearance and requested it to go through January 2017. We believe the agent interacted appropriately in this circumstance. | N |
| (b)(6) | | The borrower indicated that she was delinquent due to emergencies/unexpected bills and the MPA was not affordable. Associate offered a Graduate Repayment of $63.54 and the borrower agreed. The associate also offered autopay option, however the borrower refused. We believe the agent interacted appropriately in | N |
| (b)(6) | | The borrower was unable to make a payment due to being the only person in the household that was working at the moment, but did indicate that the MPA was affordable. We believe the agent interacted appropriately in this circumstance. | N |
| | | | Y |

| | | | |
|---|---|---|---|
| (b)(6) | (b)(4),(b)(6) | | Y |
| | | (b)(6) The borrower said that she could make her payment, but not for a few weeks. The borrower is currently unemployed, but has a job starting soon and is willing and able to pay | N |
| (b)(6) | | | Y |
| | | | Y |
| | | (b)(6) - The borrower couldn't make a payment at the time of the call. He was on a short term workers compensation leave only receiving half of his income. The borrower mentioned that he would be returning to work in a couple of weeks. The borrower's monthly payment amount was low due to the outstanding balance of the loan ($12.56/month). Due to these factors, the default prevention associate suggested a short forbearance to allow the borrower to get back to work, he agreed. | N |
| (b)(6) | | (b)(6) The borrower was unable to make a payment to bring the account current and could not afford the regularly scheduled monthly payment "right now". The default prevention associate asked if a graduated repayment plan resulting in a payment of roughly half of the scheduled amount would be more affordable, the borrower said that it would be "a lot more affordable". Our associate inquired about the reason for delinquency. The borrower mentioned that he was not working at the time of the call, but was actively seeking new employment. | N |
| (b)(6) | | (b)(6) The borrower was not able to make a payment to bring the account current and the monthly payment amount was not affordable. The default prevention associate suggested graduated repayment and asked if a monthly payment of $33.67 (roughly half) would be more manageable. The borrower agreed that it would. | N |
| (b)(6) | | (b)(6) - The borrower made a payment the prior week, but the check payment failed. The borrower mentioned that he would have to go to the bank before being able to make another payment as he just started a new job and has a physical check. The default prevention associate confirmed that the monthly payments are affordable going forward and processed forbearance to allow the borrower time to get to bank to make his payment. | N |
| (b)(6) | | | Y |
| | | | Y |
| | | (b)(6) The borrower mentioned that he didn't have the money to bring the account current. The default prevention associate asked if the monthly payment amount is affordable, the borrower said that it is not and would like something lower. Our associate offered graduated repayment in the amount of $30.00/month. The borrower said that the new payment amount would work for him. When our associate inquired about the reason for delinquency, the borrower mentioned that he was not working. | N |
| (b)(6) | | (b)(6) - The borrower could not make a payment to bring the account current. She mentioned that she just started her new job that day and would be able to pay in a few weeks. The default prevention associate asked if the monthly payments are affordable moving forward. The borrower said that they were higher than she remembered and that the amount was not affordable. Our associate suggested graduated repayment ($63.22/month), the borrower said that it sounded "really good". The borrower was also interested in signing up for auto pay. | N |
| (b)(6) | | | Y |

| Account | recordingID | Comments | Should Call be a fail? (Y or N) |
|---------|-------------|----------|--------------------------------|
| (b)(6) | (b)(4),(b)(6) | The borrower specifically requested forbearance.  Due to the specific request from the borrower for short term relief, forbearance was the best option available to the borrower.  The borrower did not indicate hardship making the scheduled payment and did not convey that long-term relief was necessary.  The borrower was already in an IDR repayment plan. | N |
| (b)(6) |  | The borrower requested temporary relief untill February, the specialist asked if the scheduled payment was affordable, the customer specified short term relief was feasible, forbearance was the best option. | N |
| (b)(6) |  | The borrower was contacted by an outbound default prevention associate. The associate prequalified the borrower for an Income Sensitive Repayment then resolved the past due balance with an administrative forbearance and placed voluntary forbearance on the account.   We believe we found the best solution for this borrower. | N |
| (b)(6) |  | The borrower advised he could resume making the payments when he returned to work.  The borrower indicated he was able to continue making the MPA.  Due to the specific request from the borrower for short term relief, the agent resolved the past due balance with an administrative forbearance and placed voluntary forbearance on the account. | N |

| (b)(6) | (b)(4),(b)(6) | The borrower was contacted by an outbound default prevention associate. The associate prequalified the borrower for an In school Deferment then resolved the past due balance with an administrative forbearance and provided 60 days of prospective administrative forbearance for the enrollment information to be received. | N |
|--------|---------------|---|---|
| (b)(6) | | The borrower requested temporary relief (2-months) as she was on IBR but unable to afford the payments.  Borrower is submitting updated POI in order to further reduce her MPA.  Due to the specific request from the borrower for short term relief, forbearance was the best option. | N |
| (b)(6) | | | Y |
| (b)(6) | | | Y |
| (b)(6) | | | Y |
| (b)(6) | | | Y |

| | | | |
|---|---|---|---|
| 548550219 | (b)(4),(b)(6) | The borrower was contacted by an outbound default prevention associate. The associate prequalified the borrower for an Unemployment Deferment then resolved the past due balance with an administrative forbearance and placed voluntary forbearance on the account.  We believe we found the best solution for this borrower. | N |
| 493588383 | | The borrower was contacted by an outbound default prevention associate. The associate prequalified the borrower for and then processed a Grad Repay resolving the past due balance with an administrative forbearance. The borrower agreed to the option but said he did not quite understand.  The call was disconnected before the agent could explain further. | N |
| 332720528 | | The borrower specifically requested forbearance. The agent did send IDR information to the customer. | N |
| 316641391 | | The borrower was already in a lower payment option.  Borrower requested temporary relief (3-months) and would be able to make payments after. Consequently, the associate resolved the past due balance with an administrative forbearance and placed voluntary forbearance on the account until the date the borrower advised payment could be made. | N |
| 192703362 | | The borrower specifically requested forbearance.  Due to the specific request from the borrower for short term relief, forbearance was the best option available to the borrower.  The borrower was already on IBR. | N |

| | | | |
|---|---|---|---|
| (b)(6) | (b)(4),(b)(6) | The borrower was contacted by an outbound default prevention associate. The borrower advised on maternity leave and unsure when she would return to work and be able to begin making the MPA and needed short term relief. Consequently, the associate resolved the past due balance with an administrative forbearance and placed voluntary forbearance on the account.  We believe we found the best solution for this borrower. | N |
| (b)(6) | | The borrower was contacted by an outbound default prevention associate. The associate prequalified the borrower for an In school Deferment then resolved the past due balance with an administrative forbearance and provided 60 days of prospective administrative forbearance for the enrollment information to be received.   We believe we found the best solution for this borrower. | N |
| (b)(6) | | The borrower was contacted by an outbound default prevention associate. The borrower advised would pay the loan in full within 10 days. Consequently, the associate resolved the past due balance with a voluntary forbearance.  We believe we found the best solution for this borrower.  NOTE: The SSN placed on sheet by FSA is incorrect.  See Column B. | N |
| (b)(6) | | The borrower stated they could make his next payment if brought current. The borrower was in a hurry due to being at work. | N |
| (b)(6) | | The borrower specifically requested forbearance. Due to the specific request from the borrower for short term relief, forbearance was the best option available to the borrower.  The borrower was already on IBR. | N |
| (b)(6) | | The borrower specifically requested forbearance. Due to the specific request from the borrower for short term relief, forbearance was the best option available to the borrower.  The borrower was already on IBR. | N |

| | | | |
|---|---|---|---|
| (b)(6) | (b)(4),(b)(6) | | Y |
| (b)(6) | | | Y |
| (b)(6) | | | Y |
| (b)(6) | | The borrower indicticated they could make their next payment if brought current. | N |
| (b)(6) | | | Y |
| (b)(6) | | The customer seemed to allude to the possibilities of making payments , the customer seemed to need a short term break in order to catch up, the account is on a Graduated Repayment Plan. | N |
| (b)(6) | | | Y |
| (b)(6) | | | Y |
| (b)(6) | | The borrower specifically requested forbearance.  Due to the specific request from the borrower for short term relief, forbearance was the best option available to the borrower.  The borrower was already on Grad Repay. | N |

| (b)(6) | (b)(4),(b)(6) | | Y |
|---|---|---|---|
| (b)(6) | | The borrower request temporary relief till returning to school.  Due to the specific request from the borrower for short term relief and the near-term possibility of an in-school deferment, forbearance was the best option. | N |
| (b)(6) | | | Y |
| (b)(6) | | | Y |
| (b)(6) | | The borrower was not prequalified for any options because she was at work. The agent quickly brought the account current and advised the borrower about alternate payment options and suggested she call back at her convenience to discuss.   We believe we | N |
| (b)(6) | | | Y |
| (b)(6) | | The borrower request temporary relief stating he was going to pay the loan off when he received his tax return, short term relief and the near-term possibility of paying in full, forbearance was the best option. | N |
| (b)(6) | | The borrower requested temporary relief (2-months) as she was on bed rest but could resume payments in 2 or 3 months.  Due to the borrower advising short term relief was possible, forbearance was the best option. | N |

| (b)(6) | (b)(4),(b)(6) | The borrower had an outstanding balance less than $2000. The borrower stated he could afford his monthly payment but not on the call, the specialist offered to place a forbearance on the account until April. | N |
|---|---|---|---|
| (b)(6) | | The borrower specifically requested forbearance.  Due to the specific request from the borrower for short term relief, forbearance was the best option available to the borrower.  The borrower was already on Grad Repay. | N |
| (b)(6) | | | Y |

| Account | File Name + .wav | COMMENTS | Should Call be a fail? (Y, N, or N/A) |
|---|---|---|---|
| (b)(6) | (b)(4),(b)(6) | The call dropped, the possibility of resolution was limited. | N Y |
| (b)(6) | | The borrower requested temporary relief and was in school. Due to the specific request from the borrower for short term relief and the possibility of an in-school deferment, forbearance was the best option. | N |
| (b)(6) | | The customer was under the assumption both sides of the account were in forbearance. The customer needed tempory relief she was returning to school. Forbearance was the best option. | N Y |
| (b)(6) | | The borrower repeatedly indicated that he will never be able to pay this loan. Forb was not the best option. The agent might have attempted to prequalify the borrower for IBR. | Y |
| (b)(6) | | The customer stated she could resume her scheduled payment at the end of the month requesting temporary relief, the forbearance was the best option. | N |
| (b)(6) | | The specialist offered to lower the payment at the onset of the call where the customer asked for a hold on the loans, the borrower requested temporary relief having a baby, the customer stated she was receiving food stamps which qualified the customer for a deferment. Due to the specific request from the borrower for relief and the possibility of a hardship deferment, forbearance was the best option. | N |
| (b)(6) | | The borrower requested temporary relief she was returning to school. Due to the specific request from the borrower for short term relief and the near-term possibility of an in-school deferment, forbearance was the best option. | N |
| (b)(6) | | The borrower indicated that she would be able to make the monthly payments moving forward but has only made 1 payment to date. The agent might have explored alternate options, but based on the borrowers response to the question, did not explore alternatives. The agent acted in the best interest of the borrower based on the stated ability to continue making payments. | N |
| (b)(6) | | The borrower requested temporary relief he was returning to school. Due to the specific request from the borrower for short term relief and the near-term possibility of an in-school deferment, forbearance was the best option. | N |
| (b)(6) | | The borrower stated he was moving, the customerwas in a Graduated Repayment Plan, the specialist suggested a forbearance to provide a temporary suspension of payments, the borrower stated "that would be great", forbearance was a good option for the borrower. | N |

| | | | |
|---|---|---|---|
| (b)(6) | (b)(4),(b)(6) | The borrower was only 17 days past due and indicated she had the payment ready to send. Agent did not ask if the MPA was affordable.  There was not a repayment plan on the account but payments have been fairly steady since the call. The borrower only needed a week to make the payment. | N |
| | | Recording cut off. | N/A |
| (b)(6) | | | Y |
| (b)(6) | | The customer stated the payments were affordable and would be able to resume the scheduled payment, the forbearance brought the account out of delinquency so the scheduled payments could resume. | N |
| (b)(6) | | The borrower requested temporary relief he was returning to school and previously requested an application for an in-school deferment which was not received and asked for another application.  Due to the specific request from the borrower for short term relief and the near-term possibility of an in-school deferment, forbearance was the best option. | N |
| (b)(6) | | The borrower requested temporary relief, she switched jobs and gets paid once a month, she asked to be brought up to date stating she could resume the regular scheduled payments, due to the specific request from the borrower for short term relief forbearance was the best option. | N |
| (b)(6) | | The specialist confirmed that the scheduled payments are affordable keeping the loan's pay off time frame within ten years, since the customer stated the payments are affordable a temporary forbearance was the best option. | N |
| (b)(6) | | The borrower stated he was wating on approval for an unemployment deferment.  Due to the specific request from the borrower for short term relief and the near-term possibility of an unemployment deferment, forbearance was the best option. | N |
| (b)(6) | | The borrower requested temporary relief stating she was returning to school.  Due to the specific request from the borrower for short term relief and the near-term possibility of an in-school deferment, forbearance was the best option. | N |
| | | | Y |
| (b)(6) | | The borrower specifically stated the account should be in an in-school deferment, the specialist processed a forbearance to bring the account current.  Due to the specific request from the borrower for short term relief and the near-term possibility of an in-school deferment, forbearance was the best option. | N |
| (b)(6) | | The customer stated the forbearance was fine to stop the account from being reported to the collection agencies, the customer was able to resume payments but needed a temporary break, forbearance was the best option. | N |

| | | | | |
|---|---|---|---|---|
| (b)(6) | (b)(4),(b)(6) | The borr is not on IBR. The borrower was not prequalified for any options because he was at work, teaching, and was irritated that he continues to get calls during school hours. The agent quickly brought the account current and advised he sent information about alternate payment options.  From a customer service viewpoint, given the irritation level of the borrower, the agent provided the best service for that particular call. | N |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could meet their full MPA the following month.  The solution offered addressed customers need.  There was no mention from customer of need for longer term payment relief.  Forbearance was the best option. | N |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could meet their full MPA the following month.  The solution offered addressed customers need.  There was no mention from customer of need for longer term payment relief.  Forbearance was the best option. | N |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could meet their full MPA the following month.  The solution offered addressed customers need.  There was no mention from customer of need for longer term payment relief.  Forbearance was the best option. | N |
| (b)(6) | | The borrower requested temporary relief, she stated she was wating on loan forgiveness. Due to the specific request from the borrower for short term relief and the statement regarding loan forgiveness, forbearance was the best option. | N |
| (b)(6) | | The borrower requested temporary relief, she  returning to school the upcoming semester.  Due to the specific request from the borrower for short term relief and the near-term possibility of an in-school deferment, forbearance was the best option. | N |
| | | | y |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could meet their full MPA.  The solution offered addressed customers need, the customer stated the temporary break was very beneficial.  There was no mention from customer of need for longer term payment relief.  Forbearance was the best option. | N |
| (b)(6) | | The borrower requested temporary relief stating she was school.  Due to the specific request from the borrower for short term relief and the near-term possibility of an in-school deferment, forbearance was the best option. | N |
| (b)(6) | | The borrower specifically requested an in-school deferment.  The customer stated she was starting school in August.  Due to the specific request from the borrower for short term relief and the near-term possibility of an in-school deferment, forbearance was the best option. | N |
| (b)(6) | | The associate took the Deferment path because the customer stated she was receiving food stamps, the associate resolved the past due balance with an administrative forbearance and future forbearance for the forms to be completed by the borrower...  We believe we found the best solution for this borrower. | N |
| (b)(6) | | The borrower had a death in the family, she stated she needed temporary relief.  Due to the circumstances the specialist processed a forbearance was the best option. | N |

| | | | | |
|---|---|---|---|---|
| (b)(6) | (b)(4),(b)(6) | The specialist granted a forbearance as borrower stated they could meet their full MPA. The solution offered addressed customers need. There was no mention from customer of need for longer term payment relief. Forbearance was the best option. | | N |
| | | Recording cut off. | | N/A |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could meet their full MPA. The solution offered addressed customers need. There was no mention from customer of need for longer term payment relief. Forbearance was the best option. | | N |
| (b)(6) | | The customer indicated she needed lower payments, the agent began taking the callers information to detemine eligibilty for a deferment or repayment option. The agent provided information regarding IBR. The customer stated she just wanted to pay twenty dollars a month and the call ended, the specialist was unable to resolve the account due to technical issues. | | N |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could meet their full MPA. The solution offered addressed customers need. There was no mention from customer of need for longer term payment relief. Forbearance was the best option. | | N |
| (b)(6) | | The specialist specifically asked the customer if she wanted the option of a lower payment, the customer stated she wanted to put the payments off. The associate took the Unemployment Deferment path vs. the IDR path because the borrower stated her husband earns approximately $7500 a month which is above the poverty guideline. The specialist resolved the past due balance with an administrative forbearance and provided 60 days of prospective administrative forbearance for the forms to be completed by the borrower... We believe we found the best solution for this borrower. | | N |
| (b)(6) | | The customer stated she was working with her school couselor to have her loans placed into a deferment/repayment plan. The specialist sent out the application for deferment and processed a FORA/FORM on the account providing a temporary hold on payments till the application was complete and submitted. Forbearance was the best option. | | N |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could meet their full MPA. The solution offered addressed customers need. There was no mention from customer of need for longer term payment relief. Forbearance was the best option. | | N |
| (b)(6) | | The borrower requested temporary relief (3-months) as she was in the process of paying off other debt and would be able to resume the affordable MPA in January 2016. Due to the specific request from the borrower for short term relief, forbearance was the best option. | | N |
| (b)(6) | | The borrower requested temporary relief (1-month) as he just changed jobs. Due to the specific request from the borrower for short term relief and the indication that the Level plan MPA is affordable, forbearance was the best option. | | N |

| | | | | |
|---|---|---|---|---|
| (b)(6) | (b)(4),(b)(6) | The borrower questioned why he is still delinquent after just having a forbearance placed on his account.  The agent discovered that the previous day, an agent processed forbearance only on 2 of the 4 loans.  The agent processed forbearance on the remaining loans per borrower request.  If the agent had not spoken to the borrower, the Interrogation report would have picked up the discrepancy and the Forb would have been processed.  The agent did the best option based on borrower request. | | N |
| (b)(6) | | After being asked if she could make the payment to bring current, the borrower indicated she would be able to make that payment in 1 week.  Due to the specific request from the borrower for short term relief, forbearance was the best option available to the borrower.  The borrower did not indicate hardship making the scheduled payment and did not convey that long-term relief was necessary.   The borrower has made all scheduled payments since this forbearance ended and has sought no additional relief. | | N |
| | | The initial call apparently dropped and this segment is a call back, it is unable to determine what happened on the initial call with this segment.  I tried to find the previous call but was unsuccessful | | N |
| (b)(6) | | The specialist provided information regarding forbearance, the customer replied the option was "great".  The specialist granted a forbearance as borrower stated they could meet their full MPA.  The solution offered addressed customers need.  There was no mention from customer of need for longer term payment relief.  Forbearance was the best option. | | N |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could meet their full MPA.  The solution offered addressed customers need.  There was no mention from customer of need for longer term payment relief.  Forbearance was the best option. | | N |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could meet their full MPA.  The solution offered addressed customers need.  There was no mention from customer of need for longer term payment relief.  Forbearance was the best option. | | N |
| (b)(6) | | The borrower requested temporary relief because he was consolidating the loans and needed time to get everything together.  Due to the specific request from the borrower for short term relief and the loans being consolidated, forbearance was the best option. | | N |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could meet their full MPA.  The solution offered addressed customers need.  There was no mention from customer of need for longer term payment relief.  Forbearance was the best option. | | N |
| (b)(6) | | The payment was submitted aprox 13 days prior to the call, payments normally post within 3 business days. The specialist provided information and instructions regarding the missing payment. The specialist offered a forbearance to hold the account till the payment was found, the forbearance script did not complete, the verbal forbearance was not processed. The payment was found on 9/29. | | N |

| | | | | |
|---|---|---|---|---|
| (b)(6) | (b)(4),(b)(6) | The specialist granted a forbearance as borrower stated they could meet their full MPA. The solution offered addressed customers need. There was no mention from customer of need for longer term payment relief. Forbearance was the best option. | | N |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could meet their full MPA. The solution offered addressed customers need. There was no mention from customer of need for longer term payment relief. Forbearance was the best option. | | N |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could meet their full MPA. The solution offered addressed customers need. There was no mention from customer of need for longer term payment relief. Forbearance was the best option. | | N |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could meet their full MPA. The solution offered addressed customers need. There was no mention from customer of need for longer term payment relief. Forbearance was the best option. | | N |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could meet their full MPA. The solution offered addressed customers need. There was no mention from customer of need for longer term payment relief. Forbearance was the best option. | | N |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could meet their full MPA. The solution offered addressed customers need. There was no mention from customer of need for longer term payment relief. Forbearance was the best option. | | N |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could meet their full MPA. The solution offered addressed customers need. There was no mention from customer of need for longer term payment relief. Forbearance was the best option. | | N |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could meet their full MPA. The solution offered addressed customers need. There was no mention from customer of need for longer term payment relief. Forbearance was the best option. | | N |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could meet their full MPA. The solution offered addressed customers need. There was no mention from customer of need for longer term payment relief. Forbearance was the best option. | | N |
| (b)(6) | | The specialist asked the customer if she wanted a different payment, the customer stated she needed more time agreeing to pick up the payments in March. The solution offered addressed customers need. There was no mention from customer of need for longer term payment relief. Forbearance was the best option. | | N |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could meet their full MPA the following month. The solution offered addressed customers need. There was no mention from customer of need for longer term payment relief. Forbearance was the best option. | | N |

| | | | |
|---|---|---|---|
| (b)(6) | (b)(4),(b)(6) | The specialist granted a forbearance as borrower stated they could meet their full MPA within three months. The solution offered addressed customers need. There was no mention from customer of need for longer term payment relief. Forbearance was the best option. | N |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could meet their full MPA. The solution offered addressed customers need. There was no mention from customer of need for longer term payment relief. Forbearance was the best option. | N |

| Account | File Name + .wav | Revised Comments | Should Call be a fail? (Y or N) |
|---|---|---|---|
| (b)(6) | (b)(4),(b)(6) | The customer stated he spoke to someone the previous day and was sending a payment out, he could resume his scheduled payment at the end of the month requesting temporary relief, the forbearance was the best option. | N |
| (b)(6) | | The customer stated he made a payment, he was aware of the delinquency and stated he could make a payment next week then could resume his scheduled payment at the end of the month requesting temporary relief, the forbearance was the best option. | N |
| (b)(6) | | The customer was previously prequalified for an Income Based Repayment Plan.  Given that the Income Based Repayment Option has already been pre-qualified the specialist resent the application, the forbearance was applied to bring the account current till the IBR was applied.  Forbearance was the best option to bring the account current and to supress delinquent calls. | N |
| | | | Y |
| (b)(6) | | The account was 88 days past due, credit reporting starts at 90 days past due at the end of the month, the agent offered to bring the account current, the customer agreed to bring he account current which would end the possiblity of having the customer reported negatively to the reporting agencies and to bring the account current to supress delinquency and calls. | N |
| (b)(6) | | The borrower requested temporary relief (3-months). Due to the specific request from the borrower for short term relief, forbearance was the best option. | N |
| (b)(6) | | The customer was previously prequalified for an Income Based Repayment Plan.  The customer went deliqnuent prior to the IBR being processed, the specialist removed the deliqnency with a forbearance.  Given that the Income Based Repayment Option has already been pre-qualified the specialist resent the application, the forbearance was applied to bring the account current till the IBR was applied.  Forbearance was the best option to bring the account current and to supress delinquent calls. | N |
| (b)(6) | | The customer stated was wating on a check to make the payment, he was aware of the delinquency and stated he did not want a deferment, the forbearance was the best option. | N |
| (b)(6) | | The borrower stated she would call back Friday to make the payment, the borrower made no indication she was unable to make future payments and stated she would make her decision when she calls back. | N |

| | | | |
|---|---|---|---|
| (b)(6) | (b)(4),(b)(6) | The borrower requested temporary relief and was in school. Due to the specific request from the borrower for short term relief and the possibility of an in-school deferment, forbearance was the best option. | N |
| | | | Y |
| (b)(6) | | The customer stated she was not employed and had no income, the agent provided information regarding the income based repayment plan and processed a forbearance to bring the account current and to push payments off while the application was completed. Forbearance was the best option for this circumstance. | N |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could possibly make their full MPA. The solution offered addressed customers need. There was no mention from customer of need for longer term payment relief. Forbearance was the best option. | Y |
| (b)(6) | | The specialist granted a forbearance as borrower stated they needed a short term relief. The solution offered addressed customers need. There was no mention from customer of need for longer term payment relief. Forbearance was the best option. | N |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could make their full MPA. The solution offered addressed customers need. There was no mention from customer of need for longer term payment relief. Forbearance was the best option. | N |
| (b)(6) | | The borrower requested temporary relief due to school enrollment. Due to the specific request from the borrower for short term relief and the near-term possibility of an in-school deferment, forbearance was the best option. | N |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could meet their full MPA. The solution offered addressed customers need. There was no mention from customer of need for longer term payment relief. Forbearance was the best option. | N |
| | | | Y |
| (b)(6) | | The borrower was contacted by an outbound default prevention associate. The associate was advised by the borrower that she should not owe the loan due to having only gone to school for one day. The agent | N |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could meet their full MPA. The solution offered addressed customers need. There was no mention from customer of need for longer term payment relief. Forbearance was the best option. | N |
| | | | Y |
| (b)(6) | | The borrower was contacted by an outbound default prevention associate. The associate prequalified the borrower for an Inschool Deferment then resolved the past due balance with an administrative forbearance and placed voluntary forbearance on the account. We believe we found the best solution for this borrower. | N |

| | | | |
|---|---|---|---|
| (b)(6) | (b)(4),(b)(6) | The borrower was contacted by an outbound default prevention associate. The associate prequalified the borrower for an Inschool Deferment then resolved the past due balance with an administrative forbearance and placed voluntary forbearance on the account.  We believe we found the best solution for this borrower. | N |
| | | | Y |
| | | | Y |
| (b)(6) | | The borrower was contacted by an outbound default prevention associate. The borrower immediately requested forbearance due to spouse being seriously ill in the ICU. Agent then resolved the past due balance and placed voluntary forbearance on the account. The K305 letter explaining repayment options was sent to the borrower. | N |
| | | | Y |
| (b)(6) | | The borrower was contacted by an outbound default prevention associate. The associate prequalified the borrower for an Inschool Deferment then resolved the past due balance with an administrative forbearance and placed voluntary forbearance on the account.  We believe we found the best solution for this borrower. | N |
| (b)(6) | | The borrower was contacted by an outbound default prevention associate. The associate prequalified the borrower for an Unemployment Deferment then resolved the past due balance with an administrative forbearance and provided 60 days of prospective administrative forbearance for the forms to be completed by the borrower.  We believe we found the best solution for this borrower. | N |
| (b)(6) | | The borrower was contacted by an outbound default prevention associate. The associate prequalified the borrower for an Unemployment Deferment then resolved the past due balance with an administrative forbearance and provided 60 days of prospective administrative forbearance for the forms to be completed by the borrower.  We believe we found the best solution for this borrower. | N |
| | | | Y |
| | | | Y |
| (b)(6) | | The borrower advised he should be in forbearance because he was in the process of consolidation. Due to the specific request from the borrower, forbearance was the best option. | N |
| (b)(6) | | The borrower was prequalified for Military deferment by an outbound default prevention associate.  The associate gave the borrower information on how to contact the Military department at Navient. Consequently, the associate resolved the past due balance with an administrative forbearance and placed voluntary forbearance on the account.  We believe we found the best solution for this borrower. | N |

| | | | | |
|---|---|---|---|---|
| (b)(6) | (b)(4),(b)(6) | The borrower was contacted by an outbound default prevention associate. The borrower indicated she would make the payment in a few days. The agent attempted to offer to post date the payment and suggested Auto Debit but the borrower ended the call. Making payments is the best option for the borrower and the initial path the agent took. | | N |
| | | | | Y |
| | | | | Y |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could meet their full MPA. The solution offered addressed customers need. There was no mention from customer of need for longer term payment relief. Forbearance was the best option. | | N |
| | | | | Y |
| (b)(6) | | At the onset of the call the borrower specifically requested forbearance. The borrower did not indicate hardship but inquired about consolidation. The forbearance brought the account current and provided a temporary hold for the customer to research consolidation. | | N |
| (b)(6) | | The borrower advised he could make the payment within a month. The borrower indicated he was able to continue making the MPA. Due to the specific request from the borrower for short term relief, forbearance was the best option. | | N |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could meet their full MPA. The solution offered addressed customers need. There was no mention from customer of need for longer term payment relief. Forbearance was the best option. | | N |
| (b)(6) | | At the onset of the call the borrower specifically stated she thought the forbearance was active till June and wanted the payments temporarily post-poned till June. The borrower did not indicate hardship making the scheduled payment past June and did not convey that long-term relief was necessary. | | N |
| | | | | Y |
| | | | | Y |
| (b)(6) | | The customer assured the specialist she could make payments and needed to figure out exactly how long it takes for payments to process. The customer stated if the payment was not made she would make the payment. The customer stated she would provide the resolution to the account. | | N |

| | | | | |
|---|---|---|---|---|
| (b)(6) | (b)(4),(b)(6) | The borrower was prequalified for IBR and TPD by an outbound default prevention associate.  The associate took the path of the IBR and TPD because the TPD qualification would be a longer process. Consequently, the associate resolved the past due balance with an administrative forbearance and provided 60 days of prospective administrative forbearance for the forms to be completed by the borrower.  We believe we found the best solution for this borrower. | N |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could meet their full MPA at month's end.  The customer requested the specialist process the forbearance on both sides of the account.  The solution offered addressed customers need.  There was no mention from customer of need for longer term payment relief.  Forbearance was the best option. | N |
| | | | Y |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could meet their full MPA at the end of the month.  The solution offered addressed customers need.  There was no mention from customer of need for longer term payment relief. Forbearance was the best option. | N |
| (b)(6) | | The specialist granted a forbearance as borrower stated they could meet their full MPA the following month.  The solution offered addressed customers need.  There was no mention from customer of need for longer term payment relief.  Forbearance was the best option. | N |
| | | | Y |
| (b)(6) | | The borrower advised he could make the payment within the week but was at work and unable to do so over the phone.  The borrower indicated he was able to continue making the MPA.  Due to the specific request from the borrower for short term relief, forbearance was the best option. | N |
| | | | Y |

Page 46 of 46

Withheld pursuant to exemption

(b)(4)

of the Freedom of Information and Privacy Act