Kevin M. McDonough
**LATHAM & WATKINS LLP**
885 Third Avenue
New York, NY 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
E-mail: kevin.mcdonough@lw.com

Peter A. Wald (*pro hac vice*)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
E-mail: peter.wald@lw.com

Christopher S. Turner (*pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
E-mail: christopher.turner@lw.com

*Attorneys for Defendants Navient Corporation, John F. Remondi, Somsak Chivavibul, and Christian M. Lown*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE NAVIENT CORPORATION SECURITIES LITIGATION | Case No. 1:17-cv-08373-RBK-AMD |

## <u>STIPULATION AND [PROPOSED] ORDER REGARDING JOINT PROTOCOL FOR ESI AND DOCUMENT PRODUCTION</u>

Lead Plaintiff Jesse Wayne Pritchard ("Plaintiff") and Defendants Navient Corporation, its Present and Chief Executive Office John F. ("Jack") Remondi, Chief Financial Officer Somsak Chivavibul, and current Chief Financial Officer Christian M. Lown ("Defendants" and, collectively with Plaintiff, the "Parties"), by and through their undersigned counsel, hereby submit this Stipulation and [Proposed] Order Regarding Joint Protocol for ESI and Document Production (the "Stipulation" or "Protocol") for this Court's consideration and respectfully request that the Court enter an order approving the same.

## I.    GENERAL PROVISIONS

Absent special circumstances, and subject to the Parties' written responses and objections, the specifications set forth below shall govern the production of all documents—including but not limited to hard copy documents, transcripts, exhibits, video and audio files, electronically stored information ("ESI"), and any other materials and information (including, to avoid any ambiguity, any copies, summaries, or derivations thereof)—produced by the Parties in the first instances during discovery in the above-captioned action. These specifications shall only apply to documents produced following the so-ordered execution date of the Stipulation.

## II.   DEFINITIONS

A.    **"Document"** is defined to be synonymous in meaning and equal in

scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within the meaning of this term. The term "Document" shall include hard-copy documents, Electronic Documents or Data, and ESI as defined herein.

      **B.**    **"Electronic Documents or Data"** means Documents or Data existing in electronic form at the time of collection, including but not limited to: e-mail or other means of electronic communication, word processing files (*e.g.*, Microsoft Word), computer presentations (*e.g.*. PowerPoint slides), spreadsheets (*e.g.*, Excel) and image files (*e.g.*, PDF).

      **C.**    **"Electronically Stored Information"** or **"ESI"** is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure.

      **D.**    **"Format"** means the internal structure of a file, which defines the way it is stored and used.

      **E.**    **"Litigation"** means the case captioned above.

      **F.**    **"Native Format"** means the format of ESI in the application in which such ESI was originally created.

      **G.**    **"Non-Custodial Data Source"** means a system or container that stores ESI, but over which an individual custodian does not organize, manage, or maintain the ESI in the system or container, such as an enterprise system or database.

H.    **"Responsive Document"** means any document, excluding source code, that is responsive to any document requests served on the Producing Party in the Litigation that the Producing Party has agreed to produce or that the Producing Party has been ordered to produce by the Court.

I.    **"Tagged Image File Format"** or **"TIFF"** refers to the CCITT Group IV graphic file format for storing bit-mapped images, with multiple compression formats and resolutions.

## III.   SEARCH METHODOLOGY

A.    **Search and Identification of ESI.** The Parties agree that in responding to the initial request under Rule 34 of the Federal Rules of Civil Procedure, or earlier if appropriate, they will meet and confer about the methodology (*e.g.*, keyword/Boolean search) and implementation (*e.g.*, search terms, etc.) to be used to identify and search ESI.

B.    **Other Filtering or Culling Techniques.** Prior to use by any Producing Party, the Parties must meet and confer to disclose and discuss any other proposed use of technologies not specified herein to reduce the number of documents to be reviewed or produced (*i.e.*, e-mail thread suppression, predictive coding, etc.). Notwithstanding this provision, the Parties shall work collaboratively and shall not withhold consent to the use of technologies that would reasonably mitigate the burden of production on a Producing Party. Whatever technology is used, the

Producing Party retains the responsibility of complying with the discovery obligations of Rule 34 of the Federal Rules of Civil Procedure.

## IV.   PRODUCTION OF ESI

A.   **ESI of Limited Accessibility.** If a Producing Party contends that any responsive ESI is not reasonably accessible within the meaning of Fed. R. Civ. P. 26(2)(B), that Party shall timely identify such ESI with reasonable particularity and shall provide the Receiving Party with the basis for declining to produce such ESI, including but not limited to information about the nature of any limitations on access, the likely costs that might be incurred in producing such ESI, the method used for storage of such ESI (*e.g.*, the type of system used to store the ESI) and the places in which ESI is kept. The Parties shall negotiate in good faith concerning the production of any such ESI.

B.   **Sources.** Notwithstanding anything to the contrary herein, the following document types are not discoverable in this Litigation except upon showing of good cause, and the Parties shall have no obligation to preserve data contained in the following forms:

1.   Back-up tapes or other long-term storage media that were created strictly for use as a data back-up or disaster recovery medium.

2.   Temporary data stored in a computer's random access memory (RAM), or other ephemeral data that are difficult to preserve without disabling the

operating system.

3.     Deleted, slack, fragmented, or other data only accessible by forensics.

4.     On-line access data such as temporary Internet files, history, cache, cookies, and the like.

5.     Logs of calls made from mobile devices.

6.     Server, system, or network logs.

7.     Data remaining from systems no longer in use that is unintelligible on systems in use.

C.     **System Files**. Common system and program files as defined by the NIST library (which is commonly used by discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed or produced.

D.     **TIFFs.** Documents should be produced in the form of single-page, Group IV TIFFs at 300 dpi. Each TIFF image should be named as its corresponding Bates number. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Bates numbers, confidentiality designations, and redactions should be burned into the TIFF image files. TIFF image files should be provided in a self-identified "Images" folder.

E. **Metadata Fields and Processing**. Absent special circumstances, each of the metadata and coding fields set forth in Appendix 1 that can be reasonably extracted from a document shall be produced for that document, to the extent already in existence and reasonably accessible or available. To the extent that metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect, nothing in this Stipulation shall require any Party to extract, capture, collect or produce such data. The Parties are not obligated to populate manually any of the fields in Appendix 1 if such fields cannot be extracted automatically from a document using standard processing software, with the exception of the following fields: (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) Confidentiality Designation ("Confidential," or "Null"), (6) Custodian, and (7) NativeLink (if native is provided), which may be populated by the Party or the Party's vendor. Any metadata fields for redacted documents that would reveal privileged information shall be excluded.

F. **Extracted Text Files.** For each document, an extracted text file should be provided along with its corresponding TIFF image file(s) and metadata. The file name of each extracted file should be identical to that of the first image page of its corresponding document, followed by .txt. Files names should not contain any special characters or embedded spaces. The text of native files should be extracted directly from the native file. However, if a document has been redacted, OCR of the

redacted document will suffice in lieu of extracted text. Also, if extracted text is not available in the native file, the document should be processed by an OCR tool prior to production to extract available text so that the record is searchable.

G.     **Database Load Files/Cross-Reference Files.** Documents should be provided with an image load file that can be loaded into commercially acceptable production software (*i.e.*, .OPT and .DAT files for use in Recommind, Relativity, etc.) using standard delimiters. The first line in each metadata .DAT file should be the header containing the agreed upon field names, and each subsequent line should contain the fielded data for each document. The image and data load files (*i.e.,* .OPT and .DAT files) should be provided in a self-identified "Data" folder.

H.     **Native Files.** Documents created or stored electronically will be produced in their original electronic format. Native Files should be provided in a self-identified "Natives" directory. Documents that are not imaged (such as spreadsheets, presentation files, audio or video files) should be produced with a corresponding single-page TIFF placeholder image, which will contain language indicating that the document is being produced as a Native File. Native Files should be named with the beginning Bates number that is assigned to that specific record in the production. A "NativeLink" entry for each spreadsheet should be included in the .DAT load file indicating the relative file path to each native file on the production media. Native Files should be produced with extracted text and applicable metadata

fields as set forth in Appendix 1. For documents that contain redacted text, the Parties may either apply the redactions directly on the native file itself or produce TIFF image files with burned in redactions in lieu of a Native File and TIFF placeholder image.

I.    **Requests for Other Native Files.** Other than as specifically set forth above, a Producing Party need not produce documents in native format. If good cause exists for the Receiving Party to request production of certain documents in native format, the Receiving Party may request production in native format by providing: (1) a list of the Bates numbers of documents it requests to be produced in native format; and (2) an explanation of the need for reviewing such documents in native format. The Producing Party shall not unreasonably deny such requests. Each document produced in response to such requests shall be produced with a "NativeLink" entry in the .DAT load file indicating the relative file path to each Native File on the production media, and all extracted text and applicable metadata fields set forth in Appendix 1.

J.    **Structured Data.** To the extent responding to a discovery request requires production of ESI contained in a database, the Producing Party may comply with the discovery request by querying the database and generating a report ("Structured Data Report") in a reasonably usable and exportable electronic format (for example, in Excel or CSV format). To the extent available and reasonably

accessible, the first line in the Structured Data Report will show the column headers for each field of data included in the Structured Data Report. Unless otherwise agreed, the Parties have no obligation to provide a supplemental report for records and information post-dating the extraction of the Structured Data Report except as may be necessary to calculate relief after a determination by the Court as to liability.

K.      **Parent-Child Relationships.** Parent-child relationships (the association between e-mails and attachments) will be preserved. E-mail attachments will be consecutively produced with the parent e-mail record. For example, if a Party produces an e-mail with its attachments, such attachments should be produced behind the e-mail in the order in which they were attached.

L.      **Lost, Destroyed, or Irretrievable ESI.** If a Producing Party learns that responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not occurring in the ordinary course of business, the Producing Party shall comply with its obligations under the Federal Rules of Civil Procedure to explain where and when the responsive ESI was last retrievable in its original format and to disclose the circumstances surrounding the change in status of that responsive ESI, whether that information is available from other sources, and whether any backup or copy of such original responsive ESI exists. Nothing in this paragraph is intended to expand or limit the obligations under the Federal Rules of Civil Procedure.

## V.   PRODUCTION OF ELECTRONIC COPIES OF HARD COPY DOCUMENTS

**A.    TIFFs**. Documents should be produced in the form of single-page Group IV TIFFs at 300 dpi. Each TIFF image should be named as its corresponding Bates number. Original document orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape). Bates numbers, confidentiality designations, and redactions should be burned into the TIFF image files. TIFF image files should be provided in a self-identified "Images" folder. Where reasonably possible, documents should be logically unitized.

**B.    OCR Text Files.** Optical Character Recognition ("OCR") text files shall be provided as a single text file for each document, not one text file per page. Each file should be named with the beginning Bates number that is assigned to its corresponding document, followed by .txt. OCR text files should be provided in a self-identified "Text" directory. To the extent a document is redacted, OCR text files for such document shall not contain text for redacted portions.

**C.    Database Load Files/Cross-Reference Files.** Documents should be provided with an image load files that can be loaded into commercially acceptable production software (*i.e.*, .OPT and .DAT files for use in Recommind, Relativity, etc.) using standard delimiters. The first line in each metadata .DAT file should be the header containing the agreed upon field names, and each subsequent line should contain the fielded data for each document. The image and data load files (*i.e.*, .OPT

and .DAT files) should be provided in a self-identified "Data" folder.

D.     **Parent-Child Relationships**.   Parent-child relationships (the association between e-mails and attachments) will be preserved where such information is reasonably available. E-mail attachments will be consecutively produced with the parent e-mail record. For example, if a Party produces a printout of an e-mail with its attachments, such attachments should be produced behind the e-mail in the order in which they were attached.

E.     **Coding Fields**. Absent special circumstances, documents should be produced with at least the following searchable information in accompanying delimited data files: 1) BegBates, (2) EndBates, (3) BegAttach, (4)EndAttach, (5) Confidentiality Designation ("Confidential" or "Null"), and (6) Custodian.

F.     **PDFs**. Notwithstanding the foregoing, the Parties may produce electronic copies of hard documents in text-searchable PDF files when practicable in light of the burden and expense and when such production does not impose any prejudice upon the non-producing Party.

## VI.   BATES NUMBERING

Each TIFF image should be assigned a Bates number that: (1) is unique across the entire document production; (2) maintains a constant length across the entire production (i.e., padded to the same number of characters); (3) contains no special characters or embedded spaces; and (4) is sequential within a given document. If a

Bates number or set of Bates numbers is skipped in a production the Producing Party will so note in a cover letter or production log accompanying the production.

## VII.   DE-DUPLICATION

A Party is required only to produce a single copy of a responsive document, and a Producing Party may, but is not required to, de-duplicate responsive ESI across custodians by the use of MD5 or SHA-1 hash values at the document (*i.e.*, parent) level. However hard-copy documents shall not be eliminated as duplicates of responsive ESI. In addition, the identity of other custodians whose data was processed but where that data was de-duplicated in the deduping process will be provided in a "Duplicate Custodian" field. A Producing Party shall use a uniform description of a particular custodian across productions. Multiple custodians in the "Custodian" field shall be separated by a semicolon.

## VIII.  SHIPMENT/ENCRYPTION

**A.**    Electronic data productions may be shipped on appropriate media, including thumb drives, CDs, DVDs, or hard drives. The physical media label should contain the case name and number, confidentiality designation, production date, and Bates range being produced.

**B.**    To maximize the security of information in transit, any media on which documents are produced may be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the Requesting

Party, under separate cover, contemporaneously with sending the encrypted media. The encryption program used for production media should be one that is readily available and would not create delays accessing the encrypted data.

    **C.**    Any document production that contains "nonpublic personal information" (as defined in the Gramm-Leach-Bliley Act) shall be produced in encrypted form as specified in the [Proposed] Confidentiality and Protective Order submitted herewith.

## IX.   PRIVILEGE LOG AND TREATMENT OF PRIVILEGED MATERIALS

    **A.**    **Privilege Log.** Should any documents be withheld, in whole or in part, by either Party on the basis of attorney/client privilege, work-product privilege, a joint-defense privilege or any other applicable privilege, immunity or protective doctrine, the Parties will exchange privilege logs. Each Party may use a categorical privilege log in lieu of a more cumbersome document-by-document privilege log. If using a traditional privilege log, state the following information separately for each document or portion of a document withheld:

    1.    the specific privilege, protection, or immunity claimed;

    2.    the type of document (i.e. e-mail reflecting legal advice);

    3.    the date of the document, which may be extracted in an automated fashion via available metadata;

    4.    the author(s) of the document, which may be extracted in an automated

fashion via available metadata;

5.       the sender(s), addressee(s) and/or recipient(s) of the document, which may be extracted in an automated fashion via available metadata;

6.       the custodian(s) of the document;

7.       the Bates number range of the document and family, if applicable; and

8.       the general subject matter of the document (e.g., legal advice regarding borrower communications").

If the claim of privilege applies to only a portion of the document, the document should be produced and the portion claimed to be privileged obscured and stamped "redacted." The Parties shall meet and confer in good faith regarding any additional substantive and formatting requirements for privilege logs.

**B.      Exclusions from the Privilege Log.** The following categories of privileged and otherwise responsive documents and ESI need not be included in a privilege log:

1.       Communications regarding litigation holds or preservation, collection, or review of Documents in this Action.

2.       Communications involving counsel that post-date the initiation of this Action.

**C.      502(d) Order and Clawback Procedure.** This Order is entered pursuant to Rule 502(d) of the Federal Rules of Evidence. Subject to the provisions

of this Order, if the Producing Party discloses information in connection with the pending litigation that the Producing Party thereafter claims to be privileged or protected by the attorney-client privilege or work product protection ("Protected Information"), the disclosure of that Protected Information will not constitute or be deemed a waiver or forfeiture—in this or any other action—of any claim of privilege or work product protection that the Producing Party would otherwise be entitled to assert with respect to the Protected Information and its subject matter.

1.    This Order protects *any* disclosure of Protected Information, whether that disclosure is inadvertent or otherwise.

2.    The Court hereby orders that disclosure of Protected Information in discovery conducted in this Litigation shall not waive any claim of privilege or work product protection that the Producing Party would otherwise be entitled to assert with respect to the Protected Information and its subject matter.

3.    A Producing Party must notify the Receiving Party, in writing, that it has disclosed that Protected Information without intending a waiver by the disclosure. Upon receipt of notification, the Receiving Party shall immediately take all reasonable steps to destroy or return all copies, electronic or otherwise, of such document or other information, and shall provide a certification that it will cease further review, dissemination, and use of the Protected Information.

4.    This Order shall be interpreted to provide the maximum

protection allowed to the Disclosing Party by Federal Rule of Evidence 502(d). The provisions of Federal Rule of Evidence 502(b)(2) are inapplicable to the production of Protected Information under this Order. However, if for any reason, a Court finds that this Section is inapplicable to Protected Information, then Rule 502(b) will apply in its absence.

      **D.**      **Contesting Claim of Privilege or Work Product Protection.** Nothing in this Order shall limit the Receiving Party's right to challenge (on grounds unrelated to the fact or circumstances of the disclosure) the Disclosing Party's claim that Disclosed Information is protected from disclosure by the attorney-client privilege or work product doctrine. If, after undertaking a good faith meet-and-confer process, the Parties are unable to resolve any dispute they have concerning the protection of documents for which a claim of Disclosure has been asserted, the Receiving Party may file the appropriate motion or application as provided by the Court's procedures to compel production of such material. Any Protected Information submitted to the Court in connection with a challenge to the Disclosing Party's claim of attorney-client privilege or work product protection shall not be filed in the public record, but rather shall be redacted, filed under seal, or submitted for in camera review.

**X.**      **MISCELLANEOUS PROVISIONS**

**A.**     Except as to the formatting for production agreed to herein, all documents (electronic or otherwise) shall be produced as kept and maintained by the Producing Party in the ordinary course of business.

**B.**     The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this Stipulation. No Party may seek relief from the Court concerning compliance with the Stipulation unless it has conferred with other affected Parties.

**C.**     Nothing in this Stipulation shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents.

**D.**     Nothing in this Stipulation shall affect, in any way, a Producing Party's right to seek reimbursement for costs associated with collection, review, and/or production of documents.

## XI.     LIMITATIONS ON PRODUCTION

The Parties will endeavor to produce documents in a reasonably timely manner and in accordance with the timelines set forth in the Federal Rules of Civil Procedure.   The Parties recognize, however, that strict adherence to those requirements may not be possible in all situations and with all data.   Production in

the Litigation is anticipated to be conducted on a rolling basis with Parties making reasonable efforts to expedite the process.  If either Party feels production has been unreasonably delayed, the Parties agree to confer via telephone or in person to reach a mutually agreeable consensus prior to court involvement.

**IT IS SO STIPULATED.**

Respectfully submitted,

**LATHAM & WATKINS LLP**

By: /s/ *Kevin M. McDonough*
 Kevin M. McDonough

885 Third Avenue
New York, NY 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: kevin.mcdonough@lw.com

Peter A. Wald (*pro hac vice*)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: peter.wald@lw.com

Christopher S. Turner (*pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: christopher.turner@lw.com

*Attorneys for Defendants Navient Corporation, John F. Remondi, Somsak Chivavibul, and Christian M. Lown*

**LEVI & KORSINSKY, LLP**

By: /s/ *Eduard Korsinsky*
Eduard Korsinsky (EK-8989)

30 Broad Street
24th Floor
New York, New York 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: ek@zlk.com

Nicholas I. Porritt
Adam M. Apton
**LEVI & KORSINSKY, LLP**
1101 30th Street N.W., Suite 115
Washington, D.C. 20007
Tel.: (202) 524-4290
Fax.: (202) 333-2121
Email: nporritt@zlk.com
Email: aapton@zlk.com

*Attorneys for Lead Plaintiff and Lead Counsel for the Class*

LATHAM&WATKINS LLP

# APPENDIX 1: ESI Metadata and Coding Fields

| FIELD NAME | DESCRIPTION |
|---|---|
| **BEGBATES** | The production Bates number associated with the first page of a document. |
| **ENDBATES** | The production Bates number associated with last page of a document. |
| **BEGATTACH** | The production Bates number associated with the first page of the parent document. |
| **ENDATTACH** | The production Bates number associated with the last page of the last attachment in the document family. |
| **NATIVELINK** | The full path to a native copy of a document. |
| **PGCOUNT** | Total number of pages for a document. |
| **ATTACHCOUNT** | Number of attachments within a document family. |
| **FILENAME** | The file name of a document. |
| **FROM** | The name of the person in the FROM field of every email. |
| **TO** | Recipients of the email. Multiple email addresses should be separated by semicolons. |
| **CC** | Recipients in the cc: field of the email. Multiple email addresses should be separated by semicolons. |
| **BCC** | Recipients in the bcc: field of the email. Multiple email addresses should be separated by semicolons. |
| **EMAILSUBJECT** | Subject of an email. |
| **DATESENT** | Date when an email was sent. |
| **TIMESENT** | Time an email was sent. |
| **DOCAUTHOR** | The author of a document from entered metadata. |
| **DOCTITLE** | The extracted document title for a loose file or attachment. |
| **DATELASTMOD** | The date a document was last modified. |
| **TIMELASTMOD** | The time the document was last modified. |
| **CUSTODIAN** | The name of the primary person the files belong to. This field should be populated as last name, first name. |
| **CUSTODIANS_ALL** | If the documents were globally deduplicated, this field will contain the name of each custodian from which the document originated. This field should be populated as last name, first name and separated by semicolons for additional Custodians. |
| | The file extension of a document. |

LATHAM&WATKINS LLP

| FIELD NAME | DESCRIPTION |
|---|---|
| FILEEXT | |
| FILETYPE | Type of document by application. |
| TIMEZONE | The time zone the document was processed in. |
| DATECREATED | The date the document was created. |
| TIMECREATED | The time the document was created. |
| DATERECEIVED | Date an email was received. |
| TIMERECEIVED | Time an email was received. |
| HASH | The MD5 or SHA Hash value or "de-duplication key" assigned to a document. |
| PRODVOLID | Production volume name. |
| TEXTPATH | The path to the full extracted OR OCR text of the document. Text files should be named per control number or Bates number if the document is produced. |
| SOURCE | The name of the producing party |
| PRIV | Indicate "YES" if document has privilege claim |
| PARENT_ID | Populated only for email attachments, this field will display the Image Tag field value of the attachment record's parent |
| CONVERSATION INDEX | Conversation thread ID/Index value |

LATHAM&WATKINS LLP

## **ORDER**

Based on the foregoing stipulation of the Parties, and good cause having been

shown therefore,


**IT IS SO ORDERED.**


Dated: _____, 2020

                                                        _____

                                                        UNITED STATES DISTRICT JUDGE