Adam M. Apton, Esq.
LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, NY 10006
T: (212) 363-7500
F: (212) 363-7171

*Attorneys for Class Representative
and Class Counsel*

[Additional counsel on signature page]

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re NAVIENT CORPORATION SECURITIES LITIGATION | Master File No. 17-8373 (RBK/AMD)<br><br>**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................... 1

II.     SUMMARY OF LITIGATION AND
        SETTLEMENT NEGOTIATIONS................................................. 2

        A.      Plaintiffs' Claims and Allegations ....................................... 2

        B.      Procedural History and Class Counsel's Investigation ...................... 3

III.    THE PROPOSED TERMS OF SETTLEMENT........................................... 5

        A.      The Class Definition.................................................... 5

        B.      Monetary Consideration and Plan of Allocation................................ 5

        C.      Release Provisions..................................................... 5

IV.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS
        APPROPRIATE ............................................................ 6

        A.      The Settlement Approval Process ........................................ 6

        B.      The Proposed Settlement Meets the Requirements for
                Preliminary Approval under Rule 23(e)(2). ....................... 7

VI.     THE PROPOSED NATURE AND METHOD OF CLASS NOTICE ARE
        CONSTITUTIONALLY SOUND AND APPROPRIATE......................... 15

VII.    PROPOSED SCHEDULE.......................................................... 16

VIII.   CONCLUSION............................................................... 17

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alves v. Main*,
No. CIV.A. 01-789 DMC, 2012 WL 6043272 (D.N.J. Dec. 4, 2012) ......... 8, 11

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) ................................................. 9

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997) .......................................................................18

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................ 16, 17

*Blum v. Stenson*,
465 U.S. 886 (1984) ...................................................................12

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) .........................................................6

*Chavarria v. N.Y. Airport Serv., LLC*,
875 F. Supp. 2d 164 (E.D.N.Y. 2012) .............................................15

*In re Community Bank of Northern Virginia*,
418 F.3d 277 (3d Cir. 2005) .........................................................18

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) ...........................................................16

*In re Datatec Sys., Inc. Sec. Litig.*,
No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007) ...............14

*In re DVI Inc. Sec. Litig.*,
249 F.R.D. 196 (E.D. Pa. 2008)......................................................16

*In re Gen. Instrument Sec. Litig.*,
209 F. Supp. 2d 423 (E.D. Pa. 2001) ..............................................15

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ...........................................................15

*Gen. Tel. Co. of Southwest v. Falcon*,
457 U.S. 147 (1982).....................................................................17

*Hefler v. Wells Fargo & Co.*,
No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 150292 (N.D. Cal. Sep. 4, 2018)
......................................................................................................13

*In re Ins. Brokerage Antitrust Litig.*,
297 F.R.D. 136 (D.N.J. 2013).........................................................13

*Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
No. 03- CV-4372 (DMC), 2009 WL 4730185 (D.N.J. 2009) ...........................13

*In re Metlife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ......................................................9

*Milliron v. T-Mobile USA, Inc.*,
No. 08-4149, 2009 WL 3345762 (D.N.J. Sept. 14, 2009)...............................13

*Missouri v. Jenkins*,
491 U.S. 274 (1989)............................................................................12

*Myers v. Hertz Corp.*,
624 F.3d 537 (2d Cir. 2010) ...............................................................16

*In re Nat'l Football League Players Concussion Injury Litig.*,
821 F.3d 410 (3d Cir. 2016) ..................................................................6

*In re Ocean Power Techs., Inc.*,
No. 3:14-CV-3799, 2016 U.S. Dist. LEXIS 158222 (D.N.J. Nov. 15, 2016)...14

*In re Par Pharm. Sec. Litig.*,
No. 06 Civ 3226, 2013 WL 3930091 (D.N.J. July 29, 2013)...........................9

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
962 F. Supp. 450 (D.N.J. 1997) ..................................................... 8, 10

*In re Rent-Way Secs. Litig.*,
305 F. Supp. 2d 491 (W.D. Pa. 2003) ...................................................10

*Riedel v. Acqua Ancien Bath New York LLC*,
2016 WL 3144375 (S.D.N.Y May 19, 2016) ...........................................8

*In re Schering-Plough Corp. ENHANCE ERISA Litig.*,
No. 08-1432 (DMC) (JAD), 2012 WL 1964451 (D.N.J. May 31, 2012) .........13

*In re Schering-Plough Corp. Sec. Litig.*,
No. 01 Civ. 0829, 2009 WL 5218066 (D.N.J. Dec. 31, 2009)................... 10, 20

*Sullivan v. DB  Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) ...............................................................15

*In re Veeco Instruments Inc. Sec. Litig.*,
No. 05 MDL 0165, 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)....................14

*In re ViroPharma Inc. Sec. Litig.*,
No. 12-2714, 2016 U.S. Dist. LEXIS 8626 (E.D. Pa. Jan. 25, 2016) ..............19

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ......................................................... 8, 10

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005) ...................................................14

iv

**Statutes**

Fed. R. Civ. P. 23 ..................................................................................16

Fed. R. Civ. P. 23(a)(2) ........................................................................16

Fed. R. Civ. P. 23(b)(3)(D) ...................................................................19

Fed. R. Civ. P. 23(e).................................................................... 6, 8, 15

**Other Authorities**

2 W. Rubenstein, Newberg on Class Actions §4:50 (5th ed. 2012) ........................16

Manual for Complex Litigation, Third, § 23.14 (West 1995) ..................................19

Manual for Complex Litigation, Third, § 30.42 (West 1995) ..................................7

## I.     INTRODUCTION

Plaintiffs seek preliminary approval from the Court to settle this class action securities fraud lawsuit.[1] After more than four years of hard-fought litigation, Plaintiffs have been able to secure a cash recovery of $7,500,000. This is a strong result for the class and, if approved, would guarantee a distribution to shareholders in the near term without having to wait any longer, incur any additional expenses, or overcome any more significant litigation risks. The parties will get to put an end to this matter once and for all.

Pursuant to Federal Rule of Civil Procedure 23, approval of settlements in class action lawsuits is completed in two stages. First, the Court must assess whether the settlement appears likely to warrant final approval and, if so, order that notice be provided to potential class members. Second, having allowed notice to proceed, the Court must hold a hearing to evaluate any objections and decide whether the settlement should be confirmed. As explained herein, Plaintiffs meet the requirements for obtaining preliminary approval and, therefore, should be permitted to provide notice of the Settlement to the Class.

The proposed settlement easily meets the criteria for approval at this stage of the process, largely because the history of the litigation, the risks involved, and the recovery at hand weigh heavily in favor of the conclusion that the Settlement is fair, reasonable, and adequate. First and foremost, the litigation has endured for over four years. Plaintiffs and Defendants have engaged in significant motion practice and discovery, including motions to dismiss, class certification, summary judgment, and hundreds of thousands of pages of discovery and numerous depositions in the meantime. The Settlement, if approved, will provide closure to a matter that has

---

[1] Unless otherwise defined, capitalized terms herein have the same meaning as set forth in the Stipulation and Agreement of Settlement dated November 16, 2021 (the "Stipulation") (Dkt. No. 124).

caused already and would continue to cause all parties involved to expend significant amounts of time and resources in litigating.

Second, the cash payment of $7,500,000 represents a recovery of 3.8% of Plaintiffs' estimate of total class-wide damages. That result falls squarely in line with historical settlement amounts in cases of similar size. Indeed, as demonstrated by Cornerstone Research, a leading economic and financial consulting firm, the median settlement as a percentage of total class-wide damages in securities fraud cases with damages ranging from $150 million to $249 million is 3.9%.

Third, while Plaintiffs believed in the merits of their case, they faced significant legal and factual obstacles that weighed in favor of the Settlement. For example, Defendants were likely to challenge Plaintiffs' theory of loss causation, a necessary element of Plaintiffs' securities fraud claims. Defendants were also likely to challenge Plaintiffs' theory of liability concerning alleged false statements about Navient's mortgage-servicing practices. Although Plaintiffs disagreed deeply with Defendants' arguments on these points, Plaintiffs' recovery could have been severely limited or eliminated entirely if the Court or a jury agreed with Defendants. Thus, the Settlement provides Plaintiffs with a means of eliminating this risk and securing a favorable recovery in the near term.

Plaintiffs have carefully considered this Settlement and believe it to be in the best interests of the class. Accordingly, they respectfully request that the Court grant preliminary approval so that the parties can proceed with providing notice and bringing this matter to a close, as discussed below in further detail.

## II.    SUMMARY OF LITIGATION AND SETTLEMENT NEGOTIATIONS

### A.    Plaintiffs' Claims and Allegations

This Action arises from alleged misrepresentations contained in Navient's public filings, including press releases, conference call transcripts, and SEC filings.

Plaintiffs alleged that Defendants violated the Securities Exchange Act of 1934 and SEC Rule 10b-5.

In particular, Plaintiffs alleged that Navient and the other Defendants misrepresented and concealed that they were engaging in a practice referred to as "forbearance steering," which involved placing borrowers into forbearance because it was financially beneficial for Navient instead of other repayment plans that may have been better for the borrower. This, in turn, exposed Navient to a heightened regulatory risk that, as alleged, was intentionally concealed from investors. Plaintiffs alleged that they sustained damages when the truth concerning these Navient's so-called "forbearance steering" became publicly known when, first, the Attorney General for Pennsylvania filed suit against the company and then, second, when the Associated Press released an internal audit of Navient's loan servicing practices that had been conducted previously by the Department of Education. Defendants have vigorously denied and continue to deny each and all of the claims asserted against them and deny that Plaintiffs or any other members of the Class were harmed or suffered any damages as a result of the conduct alleged in the Action.

### B.   Procedural History

The procedural background of this litigation and the events that led to the Settlement are expansive. The litigation of this case endured for over four years. Among other things, it involved motions to dismiss, class certification, summary judgment, more than 3.4 million pages of discovery, and twenty (20) depositions. Despite the exacting pleading standards faced by plaintiffs in these sorts of actions, Plaintiffs avoided dismissal and secured certification of a class.

Plaintiffs initially began the litigation with a thorough investigation into Navient's operations and public statements. This investigation included the review of all public statements filed by Navient with the SEC as well as reports from analysts about Navient's operations. *See* Declaration of Adam M. Apton dated

November 16, 2021 ("Apton Decl."), ¶¶3, 7-10. Plaintiffs compiled a comprehensive complaint in support of their allegations of securities fraud against Defendants. Plaintiffs filed a further amended complaint after the Court granted leave to do so. *Id.* at ¶¶11-12, 14-17.

Plaintiffs commenced discovery shortly thereafter. In total, Plaintiffs received and reviewed over 3.4 million pages of discovery from Defendants. *Id.* at ¶21. Plaintiffs also conducted twenty (20) depositions, including Defendants, current/former Navient employees, and experts. *Id.*. While counsel for Plaintiffs and Defendants worked collaboratively throughout the majority of the litigation, disputes arose on occasion that required additional motion practice before Magistrate Judge Ann Marie Donio. *Id.*.

In the midst of discovery, Plaintiffs also moved for class certification. They supported their motion with an expert declaration and report attesting to the "market efficiency" for Navient's securities. They also relied on testimony from the lead plaintiff, Jesse Wayne Pritchard, to demonstrate his "typicality" and "adequacy" to serve as the class representative. *Id.* at ¶22.

Plaintiffs and Defendants cross-moved for summary judgment once fact and expert discovery was done. Given the extensive factual record developed in discovery, the summary judgment motions were extensive and supported by dozens of exhibits and deposition transcripts. *Id.* at ¶¶23-24.

While the motions for summary judgment were pending, Plaintiffs and Defendants engaged in a full-day mediation session before the Hon. Daniel Weinstein (ret.) and former Ambassador David Carden. *Id.* at ¶25. The mediation session was unsuccessful initially, but the parties ultimately agreed to resolve the case in response to a "mediator's recommendation" to settle the matter for $7,500,000. *Id.*.

## III.   THE PROPOSED TERMS OF SETTLEMENT

### A.   <u>The Class Definition</u>

The Settlement Class is defined as all persons who purchased or otherwise acquired Navient common stock during the Class Period (*i.e.*, January 18, 2017 to November 20, 2018). Excluded from the Class are Defendants, current and former officers and directors of Navient, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest. Also excluded from the Settlement Class are any persons or entities who exclude themselves from the Settlement Class by filing a timely request for exclusion in accordance with the requirements set forth in the Notice

### B.   <u>Monetary Consideration and Plan of Allocation</u>

Plaintiffs are securing a total benefit for the Class of $7,500,000 to be paid by or on behalf of Defendants. The Plan of Allocation is based on the Second Amended Complaint. It provides compensation to those Class Members that sustained losses in response to the decline in the price of Navient's common stock that occurred on October 5, 2017 and November 20, 2018. All Class Members will receive the same distribution depending on the number of shares of Navient common stock held on these days. The Plan of Allocation will be applied uniformly to all Class Members that submit valid and timely claims. The Plan of Allocation is described in full in the Notice. Apton Decl. at ¶¶32-34; *see also* Stipulation at Exhibit A-1.

### C.   <u>Release Provisions</u>

In exchange for the monetary consideration described above, Plaintiffs are releasing Defendants (and other Defendants' Releasees) from all claims arising from their purchase of Navient common stock. Specifically, the Stipulation defines the term "Released Plaintiffs' Claims" as follows:

> "Released Plaintiffs' Claims" means any and all claims and causes of action of every nature and description, whether known or unknown, asserted or unasserted, whether arising under federal, state, common or foreign law, whether class or individual in nature, arising from (i) the purchase, acquisition or trading of Navient common stock during the Class Period (between January 18, 2017 and November 20, 2018); and (ii) the allegations, acts, facts, transactions, events, matters, occurrences, statements or omissions that were or could have been alleged by Plaintiff and all other members of the class in the Action.

Stipulation at ¶1.23.

## IV.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

### A.   The Settlement Approval Process

Rule 23(e) provides a two-step process for approving class action settlements. First, if a proposed settlement would bind class members, then the court should evaluate the proposed settlement to determine whether giving notice to class members would be justified. FED. R. CIV. P. 23(e)(1). Second, once notice is given, the court should only approve the proposed settlement upon a finding that it is fair, reasonable, and adequate. FED. R. CIV. P. 23(e)(2).

Under Rule 23(e)(1), notice to class members should be directed if, based upon the parties' showing, it appears likely that the court will be able to approve the settlement under Rule 23(e)(2) and certify the class for the purposes of settlement. In the context of determining whether approval is likely to occur, Rule 23(e)(2) instructs the court to consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." "An initial 'presumption of fairness for the settlement is established if the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the

proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n. 18 (3d Cir. 2001); *see also In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016).

**B.    The Proposed Settlement Meets the Requirements for Preliminary Approval under Rule 23(e)(2).**

**1.    Plaintiffs and Levi & Korsinsky Adequately Represented the Class.**

This was a difficult case to litigate from start to finish. Factually, Plaintiffs were faced with the immediate issue of obtaining evidence to substantiate their theory of liability without the benefit of discovery and the reality that any favorable documents were non-public and under the control of Defendants. To overcome this obstacle, Plaintiffs engaged in a comprehensive investigation to support their claims against Defendants. Apton Decl. at ¶¶3, 7-10. These efforts ultimately resulted in the filing of the Second Amended Complaint that survived Defendants' motion to dismiss. *Id.* at ¶19.

The litigation that unfolded from that point was extensive. Document discovery included more than 3.4 million pages. *Id.* at ¶21. Plaintiffs also conducted twenty (20) witnesses, including Defendants and current/former Navient employees. *Id.* Plaintiffs also moved for class certification as well as fought Defendants on several discovery issues, which ultimately resulted in motion practice before Magistrate Judge Donio. *Id.* at ¶¶21-22. Their efforts and the result they generated demonstrate that Plaintiffs and Levi & Korsinsky adequately represented the Class. This factor weighs in favor of granting preliminary approval and directing notice under Rule 23(e).

**2.    The Proposal Was Negotiated at Arm's Length.**

The parties reached the proposed Settlement at mediation and only by way of

a "mediator's recommendation" while cross-motions for summary judgment were pending. These negotiations only took place and were finalized after Lead Counsel conducted a substantial review of the file and were able to present Plaintiffs' arguments in support of their theory of liability and damages. The history and context of these negotiations strongly supports the conclusion that the parties negotiated at arm's length. *See also* Manual for Complex Litigation, Third, § 30.42 (West 1995)) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."). This fact further supports the motion for preliminary approval and directing notice to the Class. *See*, *e.g.*, *Alves v. Main*, No. CIV.A. 01-789 DMC, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151 (3d Cir. 2014) ("courts in this Circuit traditionally 'attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class.'"); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 543 (D.N.J. 1997) *aff'd*, 148 F.3d 283 (3d Cir. 1998) ("[T]he Court credits the judgment of Plaintiffs' Counsel, all of whom are active, respected, and accomplished in this type of litigation."); *see also Riedel v. Acqua Ancien Bath New York LLC*, 14 Civ. 7238 (JCF), 2016 WL 3144375, at *7 (S.D.N.Y May 19, 2016) (document exchange reflects ability of counsel to evaluate strengths and weaknesses of claims).

### 3. The Relief Provided for the Class Is Adequate.

Rule 23(e) identifies four factors for the court to consider when determining whether the relief provided under a proposed settlement is adequate: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). The

proposed Settlement meets these criteria and is therefore adequate.

(a) <u>The costs, risks, and delay of trial and appeal.</u>

A settlement is favored where "continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions and ultimately a complicated, lengthy trial." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004). Courts have noted that "[s]ecurities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *In re Par Pharm. Sec. Litig.*, No. 06 Civ 3226, 2013 WL 3930091, at *4 (D.N.J. July 29, 2013). As discussed below, Plaintiffs would have had to overcome numerous hurdles to achieve a litigated verdict against Defendants. Even assuming that the claims survived a motion for summary judgment, a jury trial would have required a substantial amount of factual and expert testimony. *See, e.g.*, *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 332 (E.D.N.Y. 2010) ("The proof on many disputed issues – which involve complex financial concepts – would likely have included a battle of experts, leaving the trier of fact with difficult questions to resolve."); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("In such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants."). Whatever the outcome at trial, it was virtually certain that an appeal would have been taken. All of the foregoing would have posed considerable expense to the parties, and would have delayed any potential recovery, if one was even achieved.

Plaintiffs secured a cash payment of $7,500,000, which represents 3.8% of the estimated class-wide damages. Apton Decl. at ¶26. This comports with historical settlement data in similarly sized cases. Specifically, according to Cornerstone Research, the median settlement as a percentage of total class-wide damages in securities fraud cases with damages ranging from $150 million to $249 million is 3.9%. *Id*. Taking into account the specific risks faced by Plaintiffs at the time of

9

settlement, the recovery is all-the-more favorable for the Settlement Class.

For example, Plaintiffs needed to establish "loss causation" as an element of their securities fraud claims. This required Plaintiffs to show that Defendants' alleged misrepresentations caused damages to Plaintiffs. During the course of the litigation, Plaintiffs and Defendants argued over whether the Pennsylvania Attorney General's lawsuit against Navient on October 5, 2017 revealed new information concerning the company's loan servicing practices, given the fact that the Consumer Financial Protection Bureau and other state attorneys general had previously filed suit against Navient over the same alleged wrongdoing. *Id*. at ¶27. If, as Defendants argued, the information contained in the Pennsylvania Attorney General's lawsuit was already known to the market by way of the complaints filed earlier by the Consumer Financial Protection Bureau's and state attorneys general, then any decline in Navient's stock could not have been caused by Defendants' misrepresentations and, therefore, would not be recoverable by Plaintiffs at trial. *Id*. at ¶27. Similarly, Defendants also disputed whether and how much the publication of the Department of Education's review of Navient on November 20, 2018 resulted in damages, given the fact that Navient's stock price recovered the following day. *Id*. at ¶28. While Plaintiffs disagreed strongly with Defendants' arguments, they nonetheless presented an acute risk to proceeding with the litigation considering that Plaintiffs' damages may have been reduced substantially had they been unable to recover for the declines on October 5, 2017 and/or November 20, 2018.  *Id*. at ¶28.

Plaintiffs faced another significant risk. The viability of their case in large part depended on whether Navient in fact violated consumer protection laws by "steering" borrowers into forbearance. The Consumer Financial Protection Bureau's lawsuit against Navient was (and remains) pending, but it could ultimately be unsuccessful. Meanwhile, Defendants and their experts claimed that their servicing standards complied with their contractual obligations with the Department of

Education. *Id*. at ¶29. Without a clear finding of misconduct against Navient, Plaintiffs' claims could have been met with considerable skepticism by a jury at trial.

Plaintiffs believe that this is a favorable outcome for the class as it secures an immediate benefit in light of the expected difficulties in proving liability based on the discovery reviewed to date. The "fact that [defendants] could afford to pay more does not mean that [they are] obligated to pay any more than what the [] class members are entitled to under the theories of liability that existed at the time the settlement was reached." *Warfarin*, 391 F.3d at 538; see *also In re Schering-Plough Corp. Sec. Litig.*, No. 01 Civ. 0829, 2009 WL 5218066, at *5 (D.N.J. Dec. 31, 2009) ("pushing for more in the face of risks and delay would not be in the interests of the class"). Here, Plaintiffs respectfully submit that any arguments that Defendants could afford to pay more should not be viewed with much significance in light of the other factors supporting approval of the Settlement. Thus, whereas here, there is a real and substantial risk that Plaintiffs would not prevail on the merits, a recovery is fair and reasonable to the class. *See Alves,* 2012 WL 6043272, at *21 (finding settlement approval was warranted as the recovery provides immediate benefits and "continued litigation involves considerable risk that the Plaintiffs would lose the merits of the case").

      (b)   <u>The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims.</u>

Plaintiffs retained A.B. Data, Ltd. ("A.B. Data") to serve as the Claims Administrator. A.B. Data has been in the claims administration business for forty years. *See* Declaration of Eric Schachter dated November 15, 2021 ("Schachter Decl."), Exhibit A. In total, they have been involved in a number of significant settlements responsible for disbursing millions of dollars to shareholder claimants. *Id*. at ¶3.

A.B. Data distributes funds in accordance with the following process. Notice is provided to potential class member by mailing notice to a company's shareholders of record, including recipients consisting of brokers and various investment advisors as a standard operating procedure. *Id.* at ¶4. These recipients manage accounts on behalf of thousands of retail investors who then forward the notice to potential class members. *Id.* at ¶¶5-6. A.B. Data also provides notice via an electronic press release through a service. *Id.* at ¶8.

Class members then respond to the notice by submitting completed claim forms. The Claims Administrator receives these claims forms either by mail or electronically and, once the claims deadline passes, begins to vet each claim. The Claims Administrator reviews the claims to make sure they are authorized, *i.e.*, validly submitted in accordance with the class definition, completed correctly, properly signed, and include all necessary supporting documentation. Claimants who submit deficient claims are then notified and given an opportunity to cure the deficiency. *Id.* at ¶¶9-11. Once the claims have been vetted, the Claims Administrator will calculate the *pro rata* distribution from the settlement fund and distribute the funds via check after court approval. Payees are usually given 90 or 180 days to negotiate the checks. Payees who do not negotiate their checks in that period of time are given an additional opportunity to receive their distribution, either in the form of a new check or by wire if feasible. *Id.* at ¶13.

A.B. Data as well as almost all securities claims administrators routinely follows the aforementioned process. *Id.* at ¶14. A.B. Data will be able to administer the settlement fund in this case without issue.

(c)   The proposed award of attorney's fees, including timing of payment.

Lead Counsel intends to seek an award of attorneys' fees equal to one-third of the Settlement Fund. The Supreme Court has recognized that an appropriate court-

awarded fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 33% of the recovery. *See Blum v. Stenson*, 465 U.S. 886, 903-04 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring). Accordingly, the requested fee will be equal to the percentage fee awards granted in many other comparable securities class actions within the Third Circuit.[2]

Lead Counsel respectfully submits that at this stage of the approval proceedings, the fact that the intended fee request will be in line with Third Circuit precedent supports Plaintiffs' request for preliminary approval. When Lead Counsel formally moves for an award of attorneys' fees, it will submit additional evidence in support of its request.

(d)   <u>Any agreement required to be identified under Rule 23(e)(3).</u>

Aside from the Stipulation, the parties have entered into the Supplemental Agreement. The Supplemental Agreement, as described in the Stipulation, provides Defendants with the right to terminate the Settlement if a certain number of damaged shares exceeds a threshold. *See* Stipulation at ¶7.3. The Supplemental Agreement is "confidential" as is customarily the case. *See Hefler v. Wells Fargo & Co.*, No. 16-

---

[2] *See, e.g., See In re Ins. Brokerage Antitrust Litig.,* 297 F.R.D. 136, 155 (D.N.J. 2013) ("Courts within the Third Circuit often award fees of 25% to 33% of the recovery."); *Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.,* No. 03- CV-4372 (DMC), 2009 WL 4730185, at *8 (D.N.J. 2009) (same); *Milliron v. T-Mobile USA, Inc.,* No. 08-4149, 2009 WL 3345762 (D.N.J. Sept. 14, 2009) (awarding 33% of settlement); *In re Schering-Plough Corp. ENHANCE ERISA Litig.*, No. 08-1432 (DMC) (JAD), 2012 WL 1964451, at *6-7 (D.N.J. May 31, 2012) (awarding 33.3% of settlement); *Ins. Brokerage Antitrust Litig.,* 297 F.R.D. at 154-56 (awarding 33% of settlement).

cv-05479-JST, 2018 U.S. Dist. LEXIS 150292, at *23 (N.D. Cal. Sep. 4, 2018) (allowing confidential filing of supplemental agreement in order to "'avoid the risk that one or more shareholders might use this knowledge to insist on a higher payout for themselves by threatening to break up the Settlement.'").

### 4.    The Settlement Treats Class Members Equitably.

The Settlement does, in fact, treat Class Members equitably. This is because the proposed Plan of Allocation treats all claimants uniformly. "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (citation omitted). As described in the Notice (Stipulation, Exhibit A-1), the Plan of Allocation has a rational basis and was formulated by Lead Counsel ensuring its fairness and reliability. *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 0165, 2007 WL 4115809, at *13 (S.D.N.Y. Nov. 7, 2007); *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007) (granting final approval of settlement as "The Plan of Allocation is rational and consistent with Lead Plaintiffs' theory of the case."). Under the proposed Plan of Allocation, each Authorized Claimant will receive a *pro rata* share of the Net Settlement Amount, with that share to be determined by the ratio that the claimant's allowed claim bears to the total allowed claims of all claimants. *See* Apton Decl. at ¶¶32-34. The Plan of Allocation is based upon the Second Amended Complaint's premise that Settlement Class Members sustained damages by purchasing Navient common stock at artificially inflated prices and seeks to compensate them in accordance with the devaluation that Navient common stock experienced when the alleged corrective disclosures entered the public sphere. *Id*. The Plan of Allocation relies on the corrective disclosure listed in the Second Amended Complaint, which is common in securities class actions. *Datatec Sys.*, 2007 WL 4225828, at *5.

The Plan of Allocation is substantially similar to other plans of allocation that have been approved and successfully implemented in other securities class action settlements, including within this Circuit. *See In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 U.S. Dist. LEXIS 158222, at *73 (D.N.J. Nov. 15, 2016) ("pro rata distributions are consistently upheld, and there is no requirement that a plan of allocation 'differentiat[e] within a class based on the strength or weakness of the theories of recovery'") (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011)); *see also In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (deeming plan of allocation where "claimants are to be reimbursed on a *pro rata* basis for their recognized losses based largely on when they bought and sold their shares of [company] stock" as "even handed"). In assessing a proposed plan of allocation, the Court may give great weight to the opinion of informed counsel. *See, e.g.*, *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 175 (E.D.N.Y. 2012) ("In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel. That is, 'as a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information.'"). Accordingly, given Lead Counsel's opinion concerning the Plan of Allocation, this factor weighs in favor of granting preliminary approval.

## V. THE PROPOSED NATURE AND METHOD OF CLASS NOTICE ARE CONSTITUTIONALLY SOUND AND APPROPRIATE

Preliminary approval of the proposed Settlement permits notice to be given to the Settlement Class Members of a hearing on final settlement approval, at which they and the settling parties may be heard with respect to final approval. *See Manual for Complex Litigation*, Third, § 23.14 (West ed. 1995). Here, the parties propose that notice be given by U.S. mail. *See* Stipulation at Exhibit A, ¶7. In addition, the Stipulation provides for publication of a summary notice, which will be published

one time over a national business newswire. *See id*.

The proposed form of Notice (Exhibit A-1 to the Stipulation), provides the following details of the Stipulation to prospective Settlement Class Members in a fair, concise and neutral way: (1) the existence of and their rights with respect to the class action, including the requirement for timely opting out of the Class; and (2) the Settlement with Defendants and their rights with respect to the Settlement. The proposed form of Summary Notice (Exhibit A-3 to the Stipulation), provides essential information about the litigation and the Settlement, including an address for potential class members to write in order to obtain the full long form of notice. The proposed form of Postcard Notice (Exhibit A-4 to the Stipulation), provides information to Settlement Class Members in terms of where to obtain additional information about the Settlement and how to participate.

The means and forms of notice proposed here constitute valid and sufficient notice to the Class, the best notice practicable under the circumstances, and comply fully with the requirements of the Private Securities Litigation Reform Act of 1995, Rule 23 and due process. *See e.g.*, *Schering-Plough*, 2009 WL 5218066, at *1, 6 (finding that a settlement notice with a mailing to all class members who could be identified with reasonable effort and publication of a summary notice and over the *PR Newswire*, satisfied the requirements of Rule 23 and due process).

## VI.    PROPOSED SCHEDULE

Plaintiffs respectfully request the Court to schedule the dates set forth below and enter them in the [Proposed] Preliminary Approval Order, including:

| | |
|---|---|
| Last day to complete mailing of Postcard Notices and Claim Forms. | At least 60 days before deadline for objections |
| Last day for filing and serving papers in support of final approval of the proposed Settlement, and the Fee and | At least 42 days before Fairness |

| Expense Application. | Hearing |
| Last day for Settlement Class Members to submit comments in support of, or in opposition to, the proposed Settlement, and the applications for Fee and Expense Awards. | At least 35 days before Fairness Hearing |
| Last day for potential Settlement Class Members to request exclusion from the Class. | At least 35 days before Fairness Hearing |
| Last day for filing and serving papers in response to objections to the proposed Settlement, and the Fee and Expense Application. | At least 14 days before Fairness Hearing |
| Fairness Hearing | At least 110 days following Preliminary Approval Date |

## VII.  CONCLUSION

The proposed Settlement is presumptively fair and presents no obvious deficiencies. Accordingly, the Court should grant preliminary approval of the proposed Settlement and enter an order substantially in the form of the accompanying [Proposed] Preliminary Approval Order.

Dated:  November 16, 2021          Respectfully submitted,

**LEVI & KORSINSKY, LLP**

 s/ Adam M. Apton
Nicholas I. Porritt (admitted *pro hac vice*)
Adam M. Apton
55 Broadway, 10th Floor
New York, New York 10006
T: (212) 363-7500
F: (212) 363-7171
Email: nporritt@zlk.com
Email: aapton@zlk.com

*Attorneys for Class Representative and Class Counsel*

17