Adam M. Apton, Esq.
LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, NY 10006
Tel.: (212) 363-7500
Fax: (212) 363-7171

*Attorneys for Class Representative
and Class Counsel*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re NAVIENT CORPORATION SECURITIES LITIGATION | Master File No. 17-8373 (RBK/AMD)<br><br>**DECLARATION OF ADAM M. APTON IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** |

    I, ADAM M. APTON, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

    1.    I am a partner at the law firm of Levi & Korsinsky, LLP, attorneys for Lead Plaintiff Jesse Wayne Pritchard, individually and on behalf of all other persons similarly situated ("Plaintiffs"), and Lead Counsel for the Class. I am admitted to practice before this Court *pro hac vice* and have personal knowledge of the various matters set forth herein based on my day-to-day participation in the prosecution and settlement of this Action. I submit this Declaration in support of

1

Plaintiff's Unopposed Motion for Preliminary Approval of Settlement.[1]

## BACKGROUND

2.  Levi & Korsinsky is a nationally recognized firm for its expertise in securities litigation. The firm actively follows corporate disclosures and initiates investigations under circumstances that, in its attorneys' opinions, suggest potential wrongdoing or violations of the federal securities laws. That is precisely what happened here. On October 5, 2017, the State Attorney General for Pennsylvania announced it had sued Navient Corporation ("Navient") over its loan servicing practices. This lawsuit followed several others filed earlier in the year concerning similar alleged misconduct that Navient and its senior executives had vigorously denied. As such, news reports relating to the State Attorney General's complaint raised questions which, in our opinion, warranted investigation.

3.  In response to the October 5, 2017 announcement, Levi & Korsinsky commenced a preliminary investigation spanning several weeks. It included a review of Navient's public statements, filings with the SEC, and analyst reports relating to the company's servicing practices and regulatory risk. The investigation also included review of public information filed by various regulators, including the Consumer Financial Protection Bureau.

4.  On October 16, 2017, Plaintiff Eli Pope filed the above-captioned lawsuit against Navient. Dkt. No. 1. The Complaint asserted violations of the Securities Exchange Act of 1934 and SEC Rule 10b-5. As such, the lawsuit was subject to the provisions of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), including the procedures regarding the appointment of a lead plaintiff and the various pleading requirements and standards. A subsequent class-action complaint, concerning essentially the same subject matter, class and

---

[1] Unless otherwise defined, capitalized terms herein have the same meaning as set forth in the Stipulation and Agreement of Settlement dated November 16, 2021 (the Stipulation).

allegations was filed on behalf of Melvin Gross on November 3, 2017. *See Gross v. Navient Corporation, et al.*, No. 1:17-cv-11014-RBK-AMD (D.N.J.).

5.Meanwhile, as additional information came to light through our research, Levi & Korsinsky began working with various clients who had purchased shares of Navient stock during the alleged class period in the *Pope* complaint. In accordance with the PSLRA, Levi & Korsinsky filed a timely motion for lead plaintiff on behalf of proposed lead plaintiff movants Jesse Wayne Pritchard and Jason Montblanc on December 15, 2017. Dkt. No. 6.

6.On February 2, 2018, the Court granted Messrs. Pritchard and Montblanc's motion for lead plaintiff, appointing them as the lead plaintiffs and their counsel, Levi & Korsinsky, as the lead counsel. Dkt. Nos. 10, 11. The Court also consolidated the *Gross* action with this action for all purposes pursuant to Federal Rule of Civil Procedure 42(a). Dkt. Nos. 10, 11.

7.Levi & Korsinsky continued its investigation following Messrs. Pritchard and Montblanc's appointment as lead plaintiffs. The purpose of this further investigation was to obtain additional factual support for the alleged securities fraud violations that would then be used to amend the initial complaint. Given the pleading standards for securities fraud violations, additional factual support for our allegations was critical in order to defeat an anticipated motion to dismiss.

8.Our firm spent the next two months researching the alleged claims. This entailed further review of Navient's public statements and relevant analyst reports. It also included review of public filings by other regulators, such as the Consumer Financial Protection Bureau, in their individual lawsuits against Navient. We also consulted with an expert on issues pertaining to market efficiency, loss causation, and damages.

9.On April 3, 2018, Plaintiffs filed the Amended Complaint. Dkt. No.

3

17. The Amended Complaint asserted the same Exchange Act and Rule 10b-5 violations that were asserted in the Complaint but included a significant amount of additional factual support. This additional factual support was the end result of an intensive investigation that had spanned the course of several months. It included the review and analysis of:

- public statements made by or on behalf of Navient prior to, during and after the Class Period, *i.e.*, a period spanning from mid-2010 to early 2019;
- Navient's quarterly reports, annual reports and press release filings with the SEC, which comprised thousands of pages of corporate financial and operational information;
- investment bank analyst reports providing discussions about Navient's operational strategy;
- public statements made by regulators concerning Navient in particular and the student loan servicing industry in general, including the SEC, Consumer Financial Protection Bureau and Department of Education;
- lawsuits, pleadings, and motion papers filed by other private and government entities, such as the Consumer Financial Protection Bureau, Attorneys General of Washington, Illinois, and Pennsylvania; and
- various public communications by and between investors and Navient.

10. Levi & Korsinsky, through third-party investigators, also conducted interviews with former employees of Navient to obtain information concerning the company's internal loan servicing practices bearing on whether the misconduct alleged by regulators was company-wide and/or intentional.

4

11. The material obtained by Levi & Korsinsky in the course of its investigation was expansive. It required many hours to digest, evaluate, and incorporate into the Amended Complaint. The product was a comprehensive complaint that provided a complete factual analysis of all public information available at the time that supported claims of securities fraud. For the benefit of context, Levi & Korsinsky's investigation yielded an Amended Complaint that was 73 pages long, more than four times longer than the Complaint initially filed on October 16, 2017.

12. In pertinent part, the Amended Complaint alleged that Navient misrepresented and concealed that they were engaging in a practice referred to as "forbearance steering." This practice involved placing borrowers into forbearance because it was of financial benefit to Navient rather than offering other repayment plans that may have been more suitable and advantageous for the student borrower. In turn, Navient's "forbearance steering" practice exposed it to heightened regulatory risk, which Plaintiffs alleged was intentionally concealed from investors. The truth concerning Navient's "forbearance steering" practices became publicly known, initially, on October 5, 2017, when the Attorney General for Pennsylvania filed suit against Navient.

13. Despite the expansive allegations contained in the Amended Complaint, Defendants, represented by the law firm of Latham & Watkins LLP, filed a motion to dismiss on June 4, 2018. Dkt. No. 24. Defendants argued in the motion that the Amended Complaint failed to meet the heavy pleading requirements under the PSLRA and, therefore, the case should be dismissed under Federal Rule of Civil Procedure 12(b)(6). In particular, Defendants argued that Plaintiff failed to identify actionable false statements, failed to plead sufficiently the element of scienter, and failed to articulate a viable theory of loss causation.

14. On November 20, 2018, during the pendency of Defendants' Motion

to Dismiss, the Associated Press reported on an audit that had been previously conducted by the Department of Education on Navient's loan servicing practices. The article, which provided a copy of the final report for the audit, provided information corroborating Plaintiffs' allegations. Accordingly, on January 18, 2019, Plaintiffs filed a Motion for Leave to Amend the Amended Complaint. Dkt No. 29.

15.     Plaintiffs' Motion for Leave to Amend the Amended Complaint was based on new information coming to light and consisting of findings made by the Department of Education concerning Navient loan servicing practices that, in Plaintiffs' opinion, confirmed that Navient was perpetrating a deceptive forbearance scheme whereby it actively steered borrowers into forbearance status even though income driven repayment plans were more economically advantageous to student loan borrowers. Plaintiffs believed that the Department of Education's report strengthened their case substantially and provided further proof in support of their allegations, in particular, falsity and scienter. The Associated Press's article also prompted a further decline in the price of Navient's stock and, therefore, caused Plaintiffs additional damages.

16.     On March 11, 2019, the Court granted Plaintiffs' Motion for Leave to Amend the Amended Complaint and denied Defendants' then-pending motion to dismiss as moot. Dkt. No. 32.

17.     On March 18, 2019, Plaintiff filed his Second Amended Complaint. Dkt No. 33. The Second Amended Complaint included the same allegations and legal causes of action as the Amended Complaint, as well as the newly disclosed information from the Department of Education's audit pointing to Navient's improper student loan servicing activities. As a result of Levi & Korsinsky's further investigation of the Department of Education's audit and findings, Plaintiffs' Second Amended Complaint contained even more detail in support of

their claims, resulting in a comprehensive pleading filled with factual support spanning more than 100 pages.

18. Despite the stronger and more expansive factual support contained in the Second Amended Complaint, Defendants filed a motion to dismiss on April 29, 2019. Dkt. No. 36. Plaintiffs opposed Defendants' motion on June 13, 2019. Dkt. No. 37. Briefing on the motion concluded on July 29, 2019. Dkt. No. 39.

19. On December 30, 2019, the Court denied Defendants' motion to dismiss in full and issued an opinion and order in favor of Plaintiffs. Dkt. Nos. 40, 41.

20. Defendants answered on January 13, 2020 and discovery commenced shortly thereafter. Dkt No. 42. Between March 2020 and July 2021, Plaintiffs and Defendants served and responded to document demands and interrogatories. Plaintiffs also served third-party subpoenas on the University of Phoenix, the i3 Group, Accounting Research & Analytics, LLC d/b/a CFRA, and KPMG LLP. Plaintiffs also subpoenaed government regulators to obtain additional information concerning Navient's alleged fraudulent loan servicing practices, including the Consumer Financial Protection Bureau.

21. Solely from Defendants, Plaintiffs received over 454,000 documents totaling more than 3.4 million pages of discovery during the course of litigation. While counsel for Plaintiffs and Defendants worked collaboratively throughout the majority of the litigation, disputes arose on occasion that required additional motion practice before Magistrate Judge Ann Marie Donio. Dkt. Nos. 105, 108. Plaintiffs also conducted twenty (20) depositions from Defendants which took place between November 2020 and July 2021, including the named defendants as well as a number of current and former employees of Navient. Plaintiffs also deposed each of Defendants' four experts, three of whom testified concerning merits-related issues and one who opined on damages and loss causation.

22.     On August 21, 2020, while discovery was underway, Plaintiffs moved for class certification under Rule 23. Dkt. No. 70. In support of their motion, Plaintiffs included the expert report and deposition transcript of Chad Coffman on the issue of market efficiency and testimony from the lead plaintiff, Jesse Wayne Pritchard, to demonstrate his "typicality" and "adequacy" to serve as the class representative. Defendants ultimately did not oppose Plaintiffs' evidentiary showings on the motion and, on March 11, 2021, the Court granted Plaintiff's Motion for Class Certification. Dkt. Nos. 106, 107.

23.     On July 30, 2021, having completed all discovery, Plaintiffs and Defendants filed their respective motions for summary judgement. Dkt. Nos. 111, 117, 118. Plaintiffs' motion focused on allegations concerning Defendants' alleged failure to disclose the Department of Education's audit that had occurred in March 2017.

24.     Defendants, meanwhile, moved for summary judgment on all aspects of Plaintiffs' claims including but not limited to the allegation that Navient was engaging in "forbearance steering" and whether it was illegal as well as whether Defendants' alleged misrepresentations caused Plaintiffs damages. Defendants also filed motions to exclude Plaintiffs' expert testimony (*i.e.*, *Daubert* motions).

25.     On September 8, 2021, Plaintiffs and Defendants engaged in a full-day mediation with Hon. Daniel Weinstein (ret.) and former Ambassador David Carden. While the mediation was initially unsuccessful, the parties ultimately agreed to resolve the case in response to a "mediator's recommendation" to settle the matter for $7,500,000.

26.     Plaintiffs and Defendants signed a preliminary term sheet memorializing the Settlement on September 17, 2021. That same day, Plaintiff and Defendants jointly requested the case be administratively terminated for 60 days pursuant to District of New Jersey Local Rule 41.1(b). Dkt. No. 122. The Court

granted the request, administratively terminating the deadlines for briefing on the pending motions for summary judgement and allowing the parties to finalize and submit the proposed Settlement for approval. Dkt. No. 123.

## THE SETTLEMENT

27. The Stipulation contains the full terms of the Settlement. The parties have also negotiated a separate Supplemental Agreement that allows Defendants to terminate the Settlement at their discretion if a certain portion of the Settlement Class requests to be excluded from the Settlement.

25. The Settlement provides for a cash payment by or on behalf of Defendants of $7,500,000. In exchange for this payment, Plaintiff will provide to Defendants a full release of all claims related to this action.

26. The amount of the recovery supports the conclusion that the Settlement is fair, reasonable, and adequate. Indeed, the recovery falls in line with past recoveries in similar cases. Cornerstone Research is a leading economics consulting firm. Every year it publishes a report on class action settlements in securities fraud lawsuits. Most recently, in its report titled *Securities Class Action Settlements—2020 Review and Analysis*, Cornerstone Research reported that the median settlement as a percentage of total class-wide damages in securities fraud cases with damages ranging from $150 million to $249 million is 3.9%. Considering that Plaintiffs' class-wide damages in this case was approximately $194 million, the recovery here equals 3.8% total recoverable damages. A true and accurate copy of the Cornerstone Research report is attached hereto as Exhibit A.

27. Aside from the amount of the monetary recovery, additional reasons support granting approval of the Settlement. Plaintiffs asserted a claim for securities fraud against Defendants under Section 10(b) of the Exchange Act and Rule 10b-5. One element Plaintiffs needed to prove in order to establish liability was "loss causation." While Plaintiffs believed that they would have been able to

9

accomplish this, Defendants repeatedly challenged Plaintiffs on this point throughout the litigation and it was a primary point at summary judgment. Particularly at issue was whether the Pennsylvania Attorney General's lawsuit filed against Navient on October 5, 2017 revealed new information concerning the company's loan servicing practices. This disputed issue arose from the fact that the Consumer Financial Protection Bureau had previously filed suit against Navient asserting essentially the same alleged wrongdoing. This presented a significant risk to Plaintiffs in terms of their ability to recover damages, for if the information contained in the Pennsylvania Attorney General's lawsuit was already known to the market via the Consumer Financial Protection Bureau's prior complaint, then any decline in Navient's stock could not have been caused by Defendants' misrepresentations and damages would not be recoverable at trial. Thus, the Settlement allows Plaintiff to recover a substantial amount of money while avoiding this unnecessary risk.

28.     Defendants also appeared intent on challenging Plaintiff's theory of liability with respect to the release by the Associated Press of the Department of Education's internal audit of Navient's loan servicing practices. Defendants disputed whether and to what extent the revelation on November 20, 2018 of the Department of Education's audit of Navient resulted in damages, given that subsequent statements from the Department of Education suggested that Navient had not violated its servicing contracts and that Navient's stock price recovered the following day. While Plaintiffs disagreed strongly with Defendants' arguments, they did present a critical risk to proceeding with the litigation considering Plaintiffs' damages may have been reduced substantially had they been unable to recover for the declines on October 5, 2017 and/or November 20, 2018.

29.     Another significant risk Plaintiff faced was the viability of his case, which was dependent in large measure on whether Navient did in fact violate

10

consumer protection laws by "steering" borrowers into forbearance. Defendants and their experts claimed that Navient's servicing standards complied with its contractual obligations to the Department of Education. While the Consumer Financial Protection Bureau's lawsuit against Navient remains pending, it could ultimately be unsuccessful. Without a clear finding of misconduct against Navient, Plaintiffs' claims could have been met with considerable skepticism by a jury at trial, if they managed to successfully defeat Defendants' motion for summary judgment.

30. In addition to the risks discussed above, Plaintiff faced a litany of routine obstacles if he continued with the litigation. For example, Defendants could have appealed Plaintiffs' class certification (assuming the Court would have granted it) or successfully excluded expert testimony at trial under *Daubert*, leaving Plaintiffs unable to establish liability or damages in front of a jury. Alternatively, even if Plaintiffs succeeded on every issue at trial, Defendants could have appealed the final judgment. These uncertainties, as well as others, all stand in support of approving the Settlement.

## PRELIMINARY APPROVAL

31. If approved, Plaintiff will proceed with the notice program described in the Stipulation. The proposed claims administrator, A.B. Data, Ltd., will mail copies of the Postcard Notice to all potential Class Members. A.B. Data will also publish the Summary Notice once over a national newswire service. In addition, A.B. Data will also create and maintain a website devoted to the administration of this action and field telephone calls from potential claimants during normal business hours. In connection with the foregoing, Plaintiff has filed herewith the Declaration of Eric Schachter on behalf of A.B. Data which provides further detail about the administration process.

32. The Notice contains the Plan of Allocation for this Action. The Plan

of Allocation compensates all Settlement Class Members in a uniform manner. Depending on the number of Navient shares held at particular points during the Class Period, Class Members will receive certain amounts of compensation. The compensation received corresponds to the decline in the price of Navient stock in response to announcements concerning Navient's regulatory risks.

33. Specifically, the Plan of Allocation accounts for the declines in the price of Navient stock that occurred on October 5, 2017 and November 20, 2018. As explained in the Second Amended Complaint, on each of these days the market reacted to negative news about Navient and its student loan servicing practices. The first date, October 5, 2017, relates to the announcement of the lawsuit filed by the Pennsylvania State Attorney General and the second date, November 20, 2018, relates to the Associated Press's article concerning the Department of Education's audit of Navient.

34. The Plan of Allocation provides class members with a recoverable loss equal to the amount of the market decline on each of these days and for whichever day(s) the class member(s) held Navient stock. Each class member will then receive a distribution from the Settlement Fund equal to his or her pro rata share of the total recoverable losses from all class members. The full terms of the Plan of Allocation are contained in the Notice.

35. The payment to Class Members will (if the Settlement is approved) return compensation to shareholders that have been damaged. In my opinion, this is a fair, reasonable, and adequate result for the Settlement Class. Plaintiff and Lead Counsel support the Settlement and believe that it should be approved.

36. In exchange for our efforts, Lead Counsel intends to seek an award of attorneys' fees in an amount equal to one-third of the Settlement Fund ($2,500,000). This amount is intended to compensate Lead Counsel for its attorneys' fees and the risk that Lead Counsel accepted when it initially accepted

this case on a contingency basis. This percentage comports with Third Circuit precedent on this issue.

37. Lead Counsel also intends to request that it be reimbursed for its out-of-pocket expenses (which are estimated to be approximately $1,000,000). The majority of these expenses are attributable to expert fees regarding damages and market efficiency.

38. When Lead Counsel files its motion for an award of attorneys' fees and reimbursement of expenses, the motion will be supported by supplemental information from Lead Counsel. This supplemental information will include time and expense information, including a description of the work performed by Lead Counsel, the hours expended by Lead Counsel, and the hourly rates typically billed by Lead Counsel. It will also include a detailed description of the expenses incurred during the course of the litigation.

39. Attached hereto as Exhibit B is a true and accurate copy of the firm resume for Levi& Korsinsky, LLP.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 16th day of November, 2021.

_____
Adam M. Apton