Adam M. Apton, Esq.
LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, NY 10006
T: (212) 363-7500
F: (212) 363-7171

*Attorneys for Class Representative
and Class Counsel*

[Additional counsel on signature page]

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re NAVIENT CORPORATION SECURITIES LITIGATION | Master File No. 17-8373 (RBK/AMD) **PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT** |

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................... 1

II.   LEGAL STANDARD ............................................................................... 2

III.  ARGUMENT.......................................................................................... 4

      A.    The Proposed Settlement Warrants Final Approval Because It Is Fair, Reasonable, and Adequate. .................................................................... 4

            1.    Plaintiff's Motion for Preliminary Approval Demonstrated the Fairness, Reasonableness, and Adequacy of the Settlement............................................. 4

            2.    Additional Evidence Supports Granting Final Approval of the Settlement. ...................................................... 4

            3.    Analysis of the Girsh Factors Confirms That the Settlement Is Fair, Reasonable and Adequate and Should Be Approved. ................................................................. 5

            4.    The *Prudential* Considerations Also Support the Settlement. ...................................................................... 16

      B.    The Plan of Allocation Is Fair, Reasonable, and Adequate. ............. 17

      C.    Notice to the Settlement Class Satisfies the Requirements of Rule 23, Due Process and the PSLRA. ........................................................... 18

IV.   CONCLUSION........................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*,
   No. 05 Civ. 232, 2008 WL 4974782 (E.D. Pa. Nov. 21, 2008) ......................15

*In re AT&T Corp. Sec. Litig.*,
   455 F.3d 160 (3d Cir. 2006) ...............................................................................3

*In re Auto. Refinishing Paint Antitrust Litig.*,
   617 F. Supp. 2d 336 (E.D. Pa. 2007)..................................................................9

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
   No. 07 Civ. 61542, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ....................6

*Bell Atl. Corp. v. Bolger*,
   2 F.3d 1304 (3d Cir. 1993) .................................................................................7

*Boyd v. Coventry Health Care Inc.*,
   No. DKC09-2661, 2014 WL 359567 (D. Md. Jan. 31, 2014).........................16

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981).............................................................................................2

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ................................................................... passim

*Devlin v. Ferrandino & Son, Inc.*,
   No. 15-4976, 2016 WL 7178338 (E.D. Pa. Dec. 9, 2016) ................................8

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)........................................................................................11

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010) ..........................................................................2, 9

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)........................................................................................18

*In re Gen. Instrument Sec. Litig.*,
   209 F. Supp. 2d 423 (E.D. Pa. 2001)..............................................................17

*In re Gen. Motors Corp. Pick-Up Trucks Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ...........................................................................9, 14

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ..................................................................... 3, 5, 9

*Harlan v. Transworld Sys., Inc.*,
    No. 13-5882, 2015 WL 505400 (E.D. Pa. Feb. 6, 2015)....................................7

*In re Ikon Office Sols., Inc., Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000)................................................................ 10, 16

*In re Linerboard Antitrust Litig.*,
    296 F. Supp. 2d 568 (E.D. Pa. 2003)..................................................................6

*Maley v. DelGlobal Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................7

*In re Merck & Co. Vytorin ERISA Litig.*,
    No. 08-CV- 285, 2010 WL 547613 (D.N.J. Feb. 9, 2010)...............................16

*In re Nat'l Football League Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016) ...............................................................................2

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) ...............................................................................2

*In re Ocean Power Techs., Inc.*,
    No. 14 Civ. 3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016) ................. 11, 17

*In re Par Pharm. Sec. Litig.*,
    No. 06 Civ 3226, 2013 WL 3930091 (D.N.J. July 29, 2013)............... 5, 12, 14

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) ........................................................ 3, 13, 14, 15

*In re Remeron Direct Purchaser Antitrust Litig.*,
    No. 03-0085, 2005 WL 3008808 (D.N.J. Nov. 9, 2005)....................................2

*In re Rent-Way Sec. Litig.*,
    305 F. Supp. 2d 491 (W.D. Pa. 2003) ..............................................................13

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
    No. 08 Civ. 397, 2013 WL 5505744 (D.N.J. Oct. 1, 2013) .......................6, 14

*In re Schering-Plough/ Merck Merger Litig.*,
    No. 09-cv-1099, 2010 WL 1257722 (D.N.J. Mar. 26, 2010)...........................9

*Schuler v. Medicines Co*.,
    No. CV 14-1149 (CCC), 2016 WL 3457218 (D.N.J. June 24, 2016)....... 12, 15

*Stoetzner v. United States Steel Corp.*,
    897 F.2d 115 (3d Cir. 1990) ...........................................................................7

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) .........................................................................17

*In re Suprema Specialties, Inc. Sec. Litig.*,
    No. 02 Civ. 168, 2008 WL 906254 (D.N.J. Mar. 31, 2008).............................5

*Sutton v. Med. Serv. Ass'n of Pennsylvania*,
    No. 92-4787, 1994 WL 246166 (E.D. Pa. June 8, 1994) ..................................2

*In re Veritas Software Corp. Sec. Litig.*,
    396 Fed. Appx. 815 (3d Cir. 2010)................................................................18

*In re Viropharma Inc. Sec. Litig*.,
    No. CV 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016)............. 10, 11, 12

*Wal-Mart Stores, Inc. v. Visa U.S.A.*,
    396 F.3d 96 (2d Cir. 2005) ...........................................................................19

*Walsh v. Great Atl. & Pac. Tea Co.*,
    96 F.R.D. 632 (D.N.J. 1983)...........................................................................2

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ............................................................... 5, 8, 14

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) ...............................................................13

*Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*,
    758 F.2d 86 (3d Cir. 1985) ...........................................................................18

**Rules**

Fed. R. Civ. P. 23(c)(2)(B) ................................................................. 18, 19

Fed. R. Civ. P. 23(e)(1)(B) ...............................................................4

Fed. R. Civ. P. 23(e)(2) .....................................................................2

## I.    PRELIMINARY STATEMENT

The Settlement pending before this Court is a strong result for the Class. Class Members will receive a total of $7,500,000 before attorneys' fees and expenses. This did not come easily. Plaintiff conducted an extensive investigation, defeated a motion to dismiss, reviewed more than 3.4 million pages of discovery, conducted twenty (20) depositions, succeeded on class certification as well as fought Defendants on several discovery issues, briefed extensive motions for summary judgment and engaged in a hard-fought mediation and negotiation process. Fortunately, the time and effort invested in this case by Plaintiff and Lead Counsel has paid off and, with the Court's approval, the matter can finally reach a resolution that is in Class Members' best interests.

In exchange for the payment of $7,500,000 in cash for the benefit of the Settlement Class, the Settlement will release all Released Defendant Parties from all Released Claims, as set forth in the Stipulation. The Settlement is not "claims-made" and all proceeds of the Settlement, after the deduction of Court-approved fees and costs, will be distributed to eligible claimants. Given the facts, the applicable law, and the risk and expense of continued litigation, Plaintiff and Lead Counsel submit that the proposed Settlement is fair, reasonable and adequate, represents a very favorable result, and is in the best interests of the Settlement Class.

Plaintiff also request that the Court approve the Plan of Allocation, which is set forth in the Notice that has been sent to Settlement Class Members. The Plan of Allocation, which was developed by Plaintiff's consulting damages expert in consultation with Lead Counsel, provides a reasonable method for allocating the Net Settlement Fund among Settlement Class Members who submit valid claims based on the losses they suffered as result of the conduct alleged in the Action. For the reasons set forth below, the Plan of Allocation is fair and reasonable, and should likewise be approved.

Accordingly, Plaintiff respectfully requests that the Court approve the Settlement and the Plan of Allocation.

## II.    LEGAL STANDARD

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be approved by the Court upon a finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016); *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001). "The strong judicial policy in favor of class action settlement[s] contemplates a circumscribed role for the district courts in settlement review and approval proceedings." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010). Although this Court has discretion in determining whether to approve the Settlement, it should be hesitant to substitute its judgment for that of the parties who negotiated the Settlement. *See Sutton v. Med. Serv. Ass'n of Pennsylvania*, No. 92-4787, 1994 WL 246166, at *5 (E.D. Pa. June 8, 1994). "Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. . . . They do not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also Walsh v. Great Atl. & Pac. Tea Co.*, 96 F.R.D. 632, 642-43 (D.N.J. 1983), *aff'd*, 726 F.2d 956 (3d Cir. 1983).

In determining the adequacy of a proposed settlement, a court should ascertain "whether the settlement is within a range that responsible and experienced attorneys could accept considering all relevant risks and factors of litigation." *In re Remeron Direct Purchaser Antitrust Litig.*, No. 03-0085, 2005 WL 3008808, at *4 (D.N.J. Nov. 9, 2005) (*citing Walsh*, 96 F.R.D. at 642). That analysis recognizes the "uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion" *Id.* (quoting

2

*Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Courts should also assess the reasonableness of the settlement pursuant to the factors set forth in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975):

> (1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id*. at 157 (citation omitted); *see also In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164-65 (3d Cir. 2006).

The Third Circuit also advises courts to consider, where applicable, the additional factors set forth in *In re Prudential Insurance Company America Sales Practice Litigation Agent Actions*, 148 F.3d 283 (3d Cir. 1998):

> [T]he maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved – or likely to be achieved – for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Id.* at 323.

## III.   ARGUMENT

### A.   <u>The Proposed Settlement Warrants Final Approval Because It Is Fair, Reasonable, and Adequate.</u>

1.   <u>Plaintiff's Motion for Preliminary Approval Demonstrated the Fairness, Reasonableness, and Adequacy of the Settlement.</u>

In moving for preliminary approval of the Settlement, Plaintiff complied with Rule 23(e)(1)(A) by making an evidentiary showing that the Court would "likely be able to . . . approve the [Settlement] under Rule 23(e)(2)" and "certify the class for purposes of judgment." Fed. R. Civ. P. 23(e)(1)(B). Plaintiff submitted a declaration from Adam M. Apton, one of the lead attorneys on the matter, that outlined the litigation and described the basis for the Settlement. In pertinent part, the declaration demonstrated the complexity of the case and the work that was performed in order to arrive at the proposed Settlement. Declaration of Adam M. Apton, Dkt. No. 125-2 (the "Apton Decl."), ¶¶3-26. As evidence of the adequacy of the Settlement, Plaintiff provided the Court with information concerning past settlements in similar cases. *Id*. at ¶26. Significantly, relative to median settlement values of approximately 3.9% of overall damages, the Settlement at hand represents approximately 3.8% of total recoverable damages, assuming Plaintiff's class-wide damages in this case was approximately $194 million. *Id*. at ¶26.

2.   <u>Additional Evidence Supports Granting Final Approval of the Settlement.</u>

Plaintiff's motion for preliminary approval addressed each of the factors identified in Rule 23(e)(2). *See* Dkt. No. 125-1. As additional evidentiary support for the Settlement, Plaintiff has submitted with his motion for final approval a supplemental declaration from Lead Counsel (the "Supp. Apton Decl."), a declaration from Plaintiff, and a declaration from the Claims Administrator. These declarations, as explained below, strengthen Plaintiff's basis for seeking final

approval. Plaintiff also supports approval of the Settlement, as evidenced by his own declaration submitted herewith.

3.     <u>Analysis of the Girsh Factors Confirms That the Settlement Is Fair, Reasonable and Adequate and Should Be Approved.</u>

To determine whether a proposed settlement in a class action is fair, reasonable, and adequate, district courts in this Circuit consider the nine factors identified in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). These factors strongly support approval of the Settlement.

(a)     *The Complexity, Expense and Likely Duration of This Action.*

The first *Girsh* factor looks to the "complexity, expense, and likely duration of the litigation." *Girsh*, 521 F.2d at 157. This factor addresses the "probable costs, in both time and money, of continued litigation." *Cendant*, 264 F.3d at 233 (citation and internal quotation marks omitted). A settlement is favored where "continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004). Courts have noted that "[s]ecurities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *In re Par Pharm. Sec. Litig.*, No. 06 Civ 3226, 2013 WL 3930091, at *4 (D.N.J. July 29, 2013). This case is no exception, which supports approval of the Settlement. *See, e.g., In re Suprema Specialties, Inc. Sec. Litig.*, No. 02 Civ. 168, 2008 WL 906254, at *4-5 (D.N.J. Mar. 31, 2008) (finding complexity of securities class action supports final approval).

Here, achieving a litigated verdict in this Action for Plaintiff and the Settlement Class would require substantial additional time and expense. Plaintiff reasonably expects that the continued prosecution of this Action through summary judgment, trial, and potential appeals would have involved substantial additional

work and expense that would not have necessarily resulted in a recovery for the Settlement Class.

To obtain a judgment at trial, Plaintiff would have had to complete and prevail on the pending summary judgment motions, *Daubert* motions, and other pre-trial motions. Trial would be complex and expensive, requiring significant factual and expert testimony to prove the elements of Plaintiff's claims. Importantly, even a jury verdict would not guarantee the recovery of damages for the Settlement Class that this $7,500,000 cash recovery does. *See, e.g., In re BankAtlantic Bancorp*, *Inc. Sec. Litig.*, No. 07 Civ. 61542, 2011 WL 1585605, at *1 (S.D. Fla. Apr. 25, 2011) (overturning jury verdict in favor of plaintiff class and granting judgment for defendants as a matter of law). Defendants would likely appeal any favorable verdict, and the appellate process could last several years, with no assurance of a favorable outcome for the Settlement Class. Thus, even after additional protracted and expensive efforts, the Settlement Class might obtain a result less than the Settlement recovery, or even nothing at all.

(b) *The Reaction of the Settlement Class.*

This factor "requires the Court to evaluate whether the number of objectors, in proportion to the total class, indicates that the reaction of the class to the settlement is favorable." *In re Schering-Plough Corp. Enhance Sec. Litig.*, No. 08 Civ. 397, 2013 WL 5505744, at *2 (D.N.J. Oct. 1, 2013). It is well-established that the lack of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members. *See In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 578 (E.D. Pa. 2003) ("unanimous approval of the proposed settlement by the class members is entitled to nearly dispositive weight in this court's evaluation of the proposed settlement").

Plaintiff submits in support of this motion a declaration from Plaintiff's claims administrator, A.B. Data, Ltd. ("A.B. Data"). As described, over 83,500 Postcard

Notices were disseminated to potential Settlement Class Members. Declaration of Jack Ewashko ("Ewashko Decl."), ¶11. A.B. Data also published notice of the Settlement over a national newswire on December 13, 2021. *Id*. at ¶13. Moreover, A.B. Data also created a website providing information about the Settlement that has been available for public viewing since December 6, 2021. *Id*. at ¶14. Having fully complied with the Court's Notice directives (as ordered in the Preliminary Approval Order), and not receiving any objections, one exclusion, and no complaints with regard to the Settlement (*id*. at ¶¶16-17), the Court can infer that Navient shareholders support approval of the Settlement.

"The Third Circuit Court of Appeals has recognized the practical conclusion that it is generally appropriate to assume that 'silence constitutes tacit consent to the agreement'" in the class settlement context." *Harlan v. Transworld Sys., Inc.*, No. 13-5882, 2015 WL 505400, at *8 (E.D. Pa. Feb. 6, 2015) (citing *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993)). "The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption . . . in favor of the Settlement . . ." *Cendant*, 264 F.3d at 235; *see also Stoetzner v. United States Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990) (objections by 29 members of a class comprised of 281 "strongly favors settlement"). The fact that there are no objections and just one exclusion provides strong support for the plan of allocation as well. *See Maley v. DelGlobal Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002) (finding that "the favorable reaction of the Class supports approval of the proposed Plan of Allocation").

(c) *The Stage of the Proceedings and Amount of Discovery Completed.*

The third *Girsh* factor requires a court to consider "the degree of case development that class counsel have accomplished prior to settlement" in order to

"determine whether counsel had an adequate appreciation of the merits of the case before negotiating" the settlement. *Cendant*, 264 F.3d at 235 (citation omitted); *see also Warfarin*, 391 F.3d at 537; *Devlin v. Ferrandino & Son, Inc.*, No. 15-4976, 2016 WL 7178338, at *5 (E.D. Pa. Dec. 9, 2016).

Here, Plaintiff and Lead Counsel had a sound basis for assessing the strengths and weaknesses of the claims and Defendants' defenses when they entered into the Settlement. As set forth in the Apton Declaration, Plaintiff's efforts included, among others, an extensive investigation into the merits of the case prior to filing the Complaint, analyzing SEC filings, reviewing public filings by other regulators, such as the Consumer Financial Protection Bureau, in their individual lawsuits against Navient, and consulting with an expert on issues pertaining to market efficiency, loss causation, and damages. Apton Decl. ¶8. Plaintiff and Lead Counsel also included the review and analysis of public statements, Navient's financial reports, analyst reports, regulator statements, actions by other private and government entities, communications between investors and Navient, and interviews with former employees. *Id.* at ¶¶9-11. Additionally, Plaintiff obtained additional information when the Associated Press reported on an audit that had been previously conducted by the Department of Education on Navient's loan servicing practices. *Id.* at ¶14. Plaintiff and Lead Counsel further obtained information about the strengths of the claims and the defenses asserted by Defendants through briefing of the motions to dismiss, discovery, summary judgment and *Daubert* motions. *Id.* at ¶¶13, 18, 20-23, 24.

The Parties also participated in a formal mediation session with Hon. Daniel Weinstein (ret.) and former Ambassador David Carden where the strengths and weaknesses of the Settlement Class's claims were fully vetted. *Id.* at ¶¶25. While the mediation was initially unsuccessful, the parties ultimately agreed to resolve the case in response to a "mediator's recommendation" to settle the matter for $7,500,000.

*Id.* There is no question that Plaintiff and their counsel were in an excellent position to evaluate the strengths and weaknesses of the claims asserted and defenses raised by Defendants, as well as the substantial risks of continued litigation and the propriety of settlement. Having sufficient information to properly evaluate the case, the Action was settled on terms highly favorable to the Settlement Class.

Within the Third Circuit and throughout the country, "a strong public policy exists, which is particularly muscular in class action suits, favoring settlement of disputes, finality of judgments and the termination of litigation." *Ehrheart*, 609 F.3d at 593; *see also In re Gen. Motors Corp. Pick-Up Trucks Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("*GMC Trucks*") ("[t]he law favors settlement"). The Third Circuit has noted that this strong presumption in favor of voluntary settlement agreements "is especially strong 'in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *Ehrheart*, 609 F.3d at 595 (quoting *GMC Trucks*, 55 F.3d at 784). This policy will be well-served by approval of the Settlement of this complex securities class action that, absent resolution, would consume years of additional time of this Court and likely, years of additional appellate practice.

(d)     *The Risks of Establishing Liability.*

The fourth *Girsh* factor looks to "the risks of establishing liability." *Girsh*, 521 F.2d at 157. Under this factor, "[b]y evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *GMC Trucks*, 55 F.3d at 814. In considering this factor, the Court has recognized that "[a] trial on the merits always entails considerable risks," *In re Schering-Plough/ Merck Merger Litig.*, No. 09-cv-1099, 2010 WL 1257722, at *10 (D.N.J. Mar. 26, 2010), and "no matter how confident one may of the outcome of the litigation, such confidence is often misplaced." *In re Auto. Refinishing Paint*

*Antitrust Litig.*, 617 F. Supp. 2d 336, 343 (E.D. Pa. 2007). Indeed, "[c]lass action securities litigation cases are notoriously difficult cases to prove." *In re Viropharma Inc. Sec. Litig.*, No. CV 12-2714, 2016 WL 312108, at *11 (E.D. Pa. Jan. 25, 2016); *see also In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 179 (E.D. Pa. 2000) (noting that "[l]arge class actions alleging securities fraud" are "inherently complex"). Although Plaintiff believe that their claims have merit, the risks of establishing liability in this Action were particularly significant and weigh heavily in favor of approval of the Settlement.

To establish their Section 10(b) claim, Plaintiff must prove that Defendants: (1) made a misstatement or an omission of a material fact; (2) with scienter; (3) in connection with the purchase or sale of a security; (4) upon which the Plaintiff reasonably relied; and (5) that proximately caused their injuries. *Ikon,* 277 F.3d at 667. Here, Defendants moved for summary judgment on all aspects of Plaintiff's claims including but not limited to the allegation that Navient was engaging in "forbearance steering" and whether it was illegal as well as whether Defendants' alleged misrepresentations caused Plaintiff damages. Apton Decl. ¶24. Defendants also filed motions to exclude Plaintiff's expert testimony (i.e., *Daubert* motions). *Id.*

Defendants and their experts claimed that Navient's servicing standards complied with its contractual obligations to the Department of Education. *Id*. at ¶29. While the Consumer Financial Protection Bureau's lawsuit against Navient remains pending, it could ultimately be unsuccessful. *Id*. Without a clear finding of misconduct against Navient, Plaintiff's claims could have been met with considerable skepticism by a jury at trial, if they managed to successfully defeat Defendants' motion for summary judgment. *Id*.

(e) *The Risks of Establishing Loss Causation and Damages.*

Even if Plaintiff successfully established liability, they also confronted

challenges in establishing loss causation and ultimately proving damages, including arguments that the alleged misstatements had only a minimally inflationary effect on Navient's stock price during the Class Period. Plaintiff bears the burden of proving loss causation and damages for their claims under Section 10(b) – that is, they must show that the alleged false statements or omissions caused investors' losses. *See ViroPharma*, 2016 WL 312108, at *12. The Supreme Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005), and the subsequent cases interpreting *Dura*, have made proving loss causation even more difficult and uncertain than it was in the past. *See, e.g., In re Ocean Power Techs., Inc.*, No. 14 Civ. 3799, 2016 WL 6778218, at *19 (D.N.J. Nov. 15, 2016) ("proving loss causation would be a major risk faced by Plaintiff").

While Plaintiff believed that he would have been able to accomplish this, Defendants repeatedly challenged Plaintiff on this point throughout the litigation and it was a primary point at summary judgment. Apton Decl. ¶27. Particularly at issue was whether the Pennsylvania Attorney General's lawsuit filed against Navient on October 5, 2017 revealed new information concerning the company's loan servicing practices. *Id.* This disputed issue arose from the fact that the Consumer Financial Protection Bureau had previously filed suit against Navient asserting essentially the same alleged wrongdoing. *Id.* This presented a significant risk to Plaintiff in terms of their ability to recover damages, for if the information contained in the Pennsylvania Attorney General's lawsuit was already known to the market via the Consumer Financial Protection Bureau's prior complaint, then any decline in Navient's stock could not have been caused by Defendants' misrepresentations and damages would not be recoverable at trial. *Id.* Thus, the Settlement allows Plaintiff

to recover a substantial amount of money while avoiding this unnecessary risk. *Id.*[1]

Here, Plaintiff's estimated maximum aggregate damages are approximately $149 million for the Class Period. *See* Apton Decl. ¶26. However, Defendants also appeared intent on challenging Plaintiff's theory of liability with respect to the release by the Associated Press of the Department of Education's internal audit of Navient's loan servicing practices. *Id.* at ¶28. Defendants disputed whether and to what extent the revelation on November 20, 2018 of the Department of Education's audit of Navient resulted in damages, given that subsequent statements from the Department of Education suggested that Navient had not violated its servicing contracts and that Navient's stock price recovered the following day. *Id.* While Plaintiff disagreed strongly with Defendants' arguments, they did present a critical risk to proceeding with the litigation considering Plaintiff's damages may have been reduced substantially had they been unable to recover for the declines on October 5, 2017 and/or November 20, 2018. *Id.*

Therefore, Defendants would likely argue that aggregate damages for the Class Period are much less than Plaintiff's estimate. If Defendants' damages arguments were accepted by the Court or by a jury after trial, recoverable damages would be greatly reduced. "Courts in this district have recognized that competing expert testimony presents significant risks to Lead Plaintiff's success in establishing damages." *Par Pharm.*, 2013 WL 3930091, at *6 (citing *Cendant*, 264 F.3d at 239 ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would

---

[1] Relatedly, the fact that the Consumer Financial Protection Bureau's lawsuit against Navient presented its own risks, given that an adverse factual or legal finding in that action could have had substantial consequences for Plaintiff in his efforts to establish liability. *See* Supp. Apton Decl. at ¶¶4-9.

believe."). Plaintiff could not be certain which expert's view would be credited by the jury and, accordingly, this "battle of the experts" created an additional level of litigation risk. *See ViroPharma*, 2016 WL 312108, at *13 ("The conflicting damage theories of defendants and Plaintiff would likely have resulted in an expensive battle of the experts and it is impossible to predict how a jury would have responded."); *Schuler v. Medicines Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *7 (D.N.J. June 24, 2016) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions.") (quoting *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744–45 (S.D.N.Y. 1985)).

In short, Plaintiff and Lead Counsel recognized the possibility that a jury could be swayed by experts for the Defendants, and find that there were no damages or only a fraction of the amount of damages Plaintiff might have sought at trial.

> (f)    *The Risks of Maintaining Class Action Status Through Trial.*

The risk of obtaining and maintaining class certification through trial also supports approval of the Settlement. In addition to the risks discussed above, Plaintiff faced a litany of routine obstacles if he continued with the litigation. Apton Decl. ¶30. For example, Defendants could have appealed Plaintiff's class certification (assuming the Court would have granted it) or successfully excluded expert testimony at trial under *Daubert*, leaving Plaintiff unable to establish liability or damages in front of a jury. *Id*. Alternatively, even if Plaintiff succeeded on every issue at trial, Defendants could have appealed the final judgment. *Id*. These uncertainties, as well as others, all stand in support of approving the Settlement. *See Prudential*, 148 F.3d at 321 ("There will always be a 'risk' or possibility of decertification, and consequently the court can always claim this factor weighs in

favor of settlement."); *see also In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 506–07 (W.D. Pa. 2003) ("[A]s in any class action, there remains some risk of decertification in the event the Propose[d] Settlement is not approved. While this may not be a particularly weighty factor, on balance it somewhat favors approve of the proposed Settlement.").

(g)   *The Ability of Defendants to Withstand a Greater Judgment.*

This factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement." *Cendant*, 264 F.3d at 240; *Ikon*, 194 F.R.D. at 183 (defendants' inability to pay a greater sum would support approval of settlement). Even the "fact that [defendants] could afford to pay more does not mean that [they are] obligated to pay any more than what the [] class members are entitled to under the theories of liability that existed at the time the settlement was reached." *Warfarin*, 391 F.3d at 538; *see also Schering-Plough*, 2009 WL 5218066, at *4 ("pushing for more in the face of risks and delay would not be in the interests of the class"). Here, while Defendants arguably could afford to pay more, that was not a certain outcome. Insurance policy proceeds had already been significantly wasted by the time of settlement and were likely to exhaust even further as trail intensified.

(h)   *The Size of the Settlement Fund in Light of the Range of Possible Recovery and the Risks of Litigation.*

The final two *Girsh* factors, typically considered in tandem, ask "whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *Prudential*, 148 F.3d at 322. "In making this assessment, the Court compares the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing,

14

with the amount of the proposed settlement." *Par Pharm*., 2013 WL 3930091, at *7 (citing *GMC Trucks*, 55 F.3d at 806).

The proposed $7,500,000 Settlement is reasonable in light of the risks of litigation (as discussed above) and the best possible recovery. The Settlement is just below the 3.9% median recovery for cases with damages ranging from $150 million to $249 million in 2020 securities cases. Apton Decl. at ¶26. Plaintiff estimated maximum aggregate damages of approximately $149 million for the Settlement Class Period. Measured against that yardstick, the Settlement recovery represents approximately 3.8% of maximum damages – a strong recovery in light of the procedural posture of the case, Defendants' pending motion for summary judgment, and the risk that continued litigation might result in a vastly smaller recovery or no recovery at all. *Id*. at ¶¶27-30.

That percentage recovery is also very favorable when compared to the percentage of damages recovered in other securities class action settlements. *See, e.g., Schuler*, 2016 WL 3457218, at *8 (approving $4,250,000 securities fraud settlement that reflected approximately 4% of the estimated recoverable damages and noting percentage "falls squarely within the range of previous settlement approvals"); *In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*, No. 05 Civ. 232, 2008 WL 4974782, at *3, *9, *13 (E.D. Pa. Nov. 21, 2008) (approving $16,767,500 settlement representing 2.5% of damages). This is particularly true when considered in view of the substantial risks and obstacles to recovery if the Action were to continue through class certification, through summary judgment, to trial, and

through likely post-trial motions and appeals.[2]

When all the *Girsh* factors are considered, the proposed Settlement is fair, reasonable, and adequate and provides a certain outcome in the best interests of the Settlement Class. Lead Counsel, on behalf of Plaintiffs, have weighed the strengths and weaknesses of the relevant claims, defenses, and likelihood of recovery and, after extensive arm's-length negotiations through a mediator, reached this Settlement. Under these circumstances, Plaintiff respectfully submit that the Settlement should be finally approved.

### 4. The *Prudential* Considerations Also Support the Settlement.

In addition to the traditional *Girsh* factors, the Third Circuit also advises courts to address considerations set forth in *Prudential*, 148 F.3d at 323, where applicable. With respect to the first consideration, Plaintiff and Lead Counsel had a well-developed understanding of the strengths and weaknesses of the case gained through an extensive investigation, the drafting of a thorough and detailed amended complaint, motion practice, discovery, consultations with experts in the fields of damages and loss causation, and the mediation process.

The remaining additional factors all support approval of the Settlement because Settlement Class Members were afforded the right to opt out of the Settlement (the fourth factor) and, to date, only one has chosen to do so; Lead Counsel's request for attorneys' fees is reasonable as set forth in the accompanying Brief in Support of Plaintiff's Motion for an Award of Attorneys' Fees and

---

[2] Plaintiff's Settlement is also reasonable when compared to the settlement being proposed in another class action securities fraud lawsuit against Navient asserting similar claims over alleged misrepresentations concerning the "forbearance steering" misconduct. In that case, which covers a different time period or "class period," the plaintiffs are settling for approximately 5% of estimated class-wide damages. *See* Supp. Apton Decl. at ¶¶10-11.

Reimbursement of Litigation Expenses (and, in any event, approval of the Settlement is separate from and not dependent on any outcome of the motion for attorneys' fees and reimbursement of litigation expenses); and the Plan of Allocation, which will govern the processing of claims and the allocation of settlement funds (the sixth factor), is fair and reasonable as set forth in Part III.B. below.

### B.     The Plan of Allocation Is Fair, Reasonable, and Adequate.

The "[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *In re Merck & Co. Vytorin ERISA Litig.*, No. 08-CV- 285, 2010 WL 547613, at *6 (D.N.J. Feb. 9, 2010) (citing *Ikon*, 194 F.R.D. at 184). "In evaluating a plan of allocation, the opinion of qualified counsel is entitled to significant respect. The proposed allocation need not meet standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis." *Boyd v. Coventry Health Care Inc.*, No. DKC09-2661, 2014 WL 359567 (D. Md. Jan. 31, 2014).

Here, the proposed Plan of Allocation, which was developed by Lead Counsel in consultation with Plaintiff's consulting damages expert, provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms. Under the Plan of Allocation, a "Recognized Loss Amount" will be calculated for each purchase or acquisition of Navient publicly traded common stock during the Settlement Class Period that is listed in the Claim Form and for which adequate documentation is provided. The calculation of Recognized Loss Amounts is generally based on the amount of the decline in Navient's common stock price following the release of negative information about the company related to the alleged fraud. The sum of the

Recognized Loss Amounts for all of a claimant's purchases of Navient's common stock during the Settlement Class Period is the claimant's "Recognized Claim" and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *See, e.g.*, *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (deeming plan of allocation "even handed" where "claimants are to be reimbursed on a *pro rata* basis for their recognized losses based largely on when they bought and sold their shares of General Instrument stock"); *Ocean Power*, 2016 WL 6778218, at \*23 ("*pro rata* distributions are consistently upheld, and there is no requirement that a plan of allocation 'differentiat[e] within a class based on the strength or weakness of the theories of recovery'") (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011)).

Lead Counsel submit that the Plan of Allocation fairly and rationally allocates the proceeds of the Net Settlement Fund among Settlement Class Members based on the losses they suffered as a result of the conduct alleged in the Complaint. Moreover, to date, there have been no objections to the proposed Plan of Allocation. Accordingly, for all of the reasons set forth herein and in Apton Declaration at ¶¶32-35, the Plan of Allocation is fair and reasonable, and should be approved.

**C.    Notice to the Settlement Class Satisfies the Requirements of Rule 23, Due Process and the PSLRA.**

Notice to the Settlement Class of the proposed Settlement satisfied Rule 23's requirement of "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974).

In accordance with the Court's Preliminary Approval Order, the Claims Administrator completed mailing copies of the Postcard Notice to potential

Settlement Class Members and their nominees on or about December 6, 2021. *See* Ewashko Decl. at ¶8. Since then, over 83,500 Postcard Notices have been mailed. *See* Ewashko Decl. at ¶11. The Postcard Notice, which directed potential Settlement Class Members to the website containing the Notice, advised potential Settlement Class Members of, among other things: (i) their right to exclude themselves from the Settlement Class; (ii) their right to object to any aspect of the Settlement, the Plan of Allocation, or the attorneys' fee and expense request; and (iii) the method for submitting a Claim Form in order to be eligible to receive a payment from the proceeds of the Settlement. In addition, the Summary Notice was published via national newswire on December 13, 2021, and copies of the Notice, Claim Form, Stipulation, Preliminary Approval Order, and Complaint have been posted to the website established for the Action, www.2017navientsecuritieslitigation.com. *Id*. at ¶14.

Notice programs such as this have been approved in a multitude of class action settlements. *See, e.g.*, *In re Veritas Software Corp. Sec. Litig.*, 396 Fed. Appx. 815, 816 (3d Cir. 2010) (describing notice combining mail to known class members and publication in *Investor's Business Daily* and over newswire); *Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) ("It is well settled that in the usual situation first-class mail and publication in the press fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause."). The Notice program satisfied Rule 23(e)(1)'s requirement that notice of a settlement be "reasonable" – *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings" (*Wal-Mart Stores, Inc. v. Visa U.S.A.*, 396 F.3d 96, 114 (2d Cir. 2005)), and it was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

## IV.   CONCLUSION

For all the foregoing reasons, Plaintiff respectfully request that the Court grant final approval of the Settlement and Plan of Allocation.

Dated:  March 8, 2022                    Respectfully submitted,

**LEVI & KORSINSKY, LLP**


 s/ Adam M. Apton
Nicholas I. Porritt (admitted *pro hac vice*)
Adam M. Apton
55 Broadway, 10th Floor
New York, New York 10006
T: (212) 363-7500
F: (212) 363-7171
Email: nporritt@zlk.com
Email: aapton@zlk.com

*Attorneys for Class Representative*
*and Class Counsel*