Adam M. Apton
LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, New York 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Attorneys for Class Representative
and Class Counsel*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re NAVIENT CORPORATION SECURITIES LITIGATION | Master File No. 17-8373 (RBK/AMD)<br><br>**BRIEF IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES** |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................1

II.     ARGUMENT...........................................................................................3

        A.     Lead Counsel Is Entitled to An Award of Attorneys' Fees .................3

        B.     The Requested Attorneys' Fees Are Reasonable Under the
               Percentage-of-the-Fund Method. ...........................................4

        C.     Other Factors Considered by the Courts in the Third Circuit That the
               Requested Fee is Fair and Reasonable. .................................7

        D.     Lead Counsel's Litigation Expenses Are Reasonable and Should Be
               Approved for Reimbursement. ...........................................17

        E.     Plaintiffs Should Be Awarded Incentive Awards. ..............................18

III.    CONCLUSION........................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Abrams v. Lightolier, Inc.*,
   50 F.3d 1204 (3d Cir. 1995) ................................................................18

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) .............................................................13

*In re Apple Comput. Sec. Litig.*,
   1991 WL 238298 (N.D. Cal. Sept. 6, 1991) .......................................13

*In re AremisSoft Corp. Sec. Litig.*,
   210 F.R.D. 109 (D.N.J. 2002)................................................................7

*In re AT&T Corp. Sec. Litig.*,
   455 F.3d 160 (3d Cir. 2006); ..................................................... passim

*Backman v. Polaroid Corp.*,
   910 F.2d 10 (1st Cir. 1990)..................................................................13

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985)...............................................................................4

*Bentley v. Legent Corp.*,
   849 F. Supp. 429 (E.D. Va. 1994), *aff'd*, 50 F.3d 6 (4th Cir. 1995) ...................13

*Blum v. Stenson*,
   465 U.S. 886 (1984)........................................................................4, 16

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)...............................................................................3

*In re Cendant Corp. PRIDES Litig.*,
   243 F.3d 722 (3d Cir. 2001) .................................................................5

*In re Cendant Corp. Sec. Litig.*,
   404 F.3d 173 (3d Cir. 2005) ..............................................................3, 5

*In re Cigna Corp. Sec. Litig.*,
   2007 WL 2071898 (E.D. Pa. July 13, 2007) ......................................15

*In re Datatec Sys., Inc. Sec. Litig.*,
   2007 WL 4225828 (D.N.J. Nov. 28, 2007) ........................................10

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*,
   582 F.3d 524 (3d Cir. 2009) .................................................................3

*Fogarazzo v. Lehman Bros., Inc.*,
    2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) .......................................................10

*Forsythe v. ESC Fund Mgmt. Co. (U.S.)*,
    No. CIV.A. 1091-VCL, 2012 WL 1655538 (Del. Ch. May 9, 2012) .................19

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ................................................................................6

*In re Genta Sec. Litig.*,
    2008 WL 2229843 (D.N.J. May 28, 2008).........................................................10

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000) ............................................................................4, 8

*Hall v. AT&T Mobility LLC*,
    2010 WL 4053547 (D.N.J. Oct. 13, 2010). ................................................. 16, 18

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983).............................................................................................8

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000)................................................................ 7, 14, 16

*In re Ins. Brokerage Antitrust Litig.*,
    297 F.R.D. 136 (D.N.J. 2013)..............................................................................6

*In re JDS Uniphase Corp. Sec. Litig.*,
    2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ...................................................13

*Landy v. Amsterdam*,
    815 F.2d 925 (3d Cir. 1987) ..............................................................................13

*In re Linerboard Antitrust Litig.*,
    2004 WL 1221350 (E.D. Pa. June 2, 2004)..........................................................9

*Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
    2009 WL 4730185 (D.N.J. 2009) ...................................................................6, 12

*In re Lucent Techs. Inc., Sec. Litig.*,
    327 F. Supp. 2d 426 (D.N.J. 2004)......................................................................7

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
    2010 WL 547613 (D.N.J. Feb. 9, 2010)............................................................12

*Milliron v. T-Mobile USA, Inc.*,
    2009 WL 3345762 (D.N.J. Sept. 14, 2009).........................................................6

*Missouri v. Jenkins*,
    491 U.S. 274 (1989).......................................................................................4, 14

*In re Ocean Power Techs., Inc. Sec. Litig.*,
   No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016)......................5, 16

*In re Prudential Ins. Co. America Sales Prac. Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) ...................................................................................7

*In re Rent-Way Sec. Litig.*,
   305 F. Supp. 2d 491 (W.D. Pa. 2003)...................................................................14

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005). ............................................................................5, 8

*In re Rite Aid Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D. Pa. 2001)......................................................................7

*In re Rite Aid Corp. Sec. Litig.*,
   362 F. Supp. 2d 587, 589 (E.D. Pa. 2005)..............................................................7

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ...........................................................................13

*In re Safety Components, Inc. Sec. Litig.*,
   166 F. Supp. 2d 72 (D.N.J. 2001)........................................................................18

*In re Schering-Plough Corp. ENHANCE ERISA Litig.*,
   2012 WL 1964451 (D.N.J. May 31, 2012).................................................. 6, 7, 12

*Schuler v. Meds. Co.*, No. CV 14-1149 (CCC),
   2016 WL 3457218 (D.N.J. June 24, 2016).............................................................3

*In re Suprema Specialties, Inc. Sec. Litig.*,
   2008 WL 906254 (D.N.J. Mar. 31, 2008) .............................................................12

*Sullivan v. DB Invs.*,
   667 F.3d 273 (3d Cir. 2011) ...................................................................... 4, 5, 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)...........................................................................................4, 19

*In re Vicuron Pharm., Inc. Sec. Litig.*,
   512 F. Supp. 2d 279 (E.D. Pa. 2007)....................................................................15

*In re Viropharma Inc. Sec. Litig.*,
   2016 WL 312108 (E.D. Pa. Jan. 25, 2016)........................................................8, 18

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985) .......................................................................11

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ....................................................................5

**Statutes**

15 U.S.C. § 78u-4(a)(4) ............................................................................18

15 U.S.C. § 78u-4(a)(6) ..............................................................................5

## I.    INTRODUCTION

Lead Counsel for Lead Plaintiff and the Settlement Class have successfully negotiated a Settlement in the amount of $7,500,000. The proposed Settlement represents a strong recovery for the Settlement Class considering the risks and costs attendant to further, protracted litigation. Accordingly, Led Counsel requests an award of attorneys' fees in the amount of $2,500,000, *i.e.*, one-third of the Settlement.

As set forth in detail in the Declaration of Adam M. Apton in Support of Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (Dkt. No. 125-2) (the "Apton Decl."), the Settlement was achieved through the skill, experience, and effective advocacy of Lead Counsel. Lead Counsel vigorously pursued the claims in this Action for the benefit of the Settlement Class by reviewing and analyzing: (i) documents filed publicly by Navient with the SEC; (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning Navient and Defendants; (iii) research reports issued by financial analysts concerning Navient; (v) other publicly available information filed by various regulators and Attorneys General, including the Consumer Financial Protection Bureau; (v) interviewing former Navient employees; (vi) pleadings filed in other pending litigation naming certain Defendants herein as defendants; and (vii) the applicable law governing the claims and potential defenses.

The litigation of this case endured for over four years. It involved motions for dismissal, class certification, and summary judgment. Lead Counsel also reviewed and analyzed over 3.4 million pages of discovery and conducted twenty (20) depositions. Throughout the Action, the stakes have been high, the risks substantial, and the battles hard-fought. The likelihood of succeeding, and then

recovering, was highly uncertain. Lead Counsel nevertheless undertook this representation on a contingency basis, with no guarantee of success or recovery. Lead Counsel faced substantial risks establishing liability, defeating defenses, and proving the amount of damages. Plaintiff and Lead Counsel succeeded, however, recovering $7,500,000 for the Settlement Class Members.

To achieve this result, Lead Counsel incurred substantial out-of-pocket expenses during the course of the litigation amounting to $988,508.88. The majority of these expenses were attributable to expert expenses, ediscovery expenses, and staff attorney expenses incurred in the course of discovery. These fees were necessary and reasonable for the purposes of the litigation. Accordingly, Plaintiff and Lead Counsel seek an award for the reimbursement of these expenses.

Lead Counsel, on behalf of Plaintiff, also seeks an incentive award to reimburse Plaintiff for the time and expense he invested in this action while representing the Class. Jesse Wayne Pritchard spent over 130 hours reviewing various filings, participating in document discovery, and appearing for a deposition among other tasks. He fulfilled his fiduciary duties with respect to serving and protecting the interests of the Class at all times. His involvement in the action benefited Lead Counsel and the Class at large. His request for an award in the amount of $15,000 should be granted.

Finally, as further evidence of the reasonableness and appropriateness of Plaintiff and Lead Counsel's requests is the fact that notice has been disseminated to more than 83,5000 potential class members informing them of the relief requested by way of this motion. While the deadline for objections had not yet passed, neither Lead Counsel nor the Claims Administrator has not received one. In fact, to date, Lead Counsel has received only one request for exclusion which

suggests strongly that the Class is supportive of the Settlement and the relief requested herein.

For the reasons set forth below, Plaintiff and Lead Counsel respectfully request that their motion for attorneys' fees and expenses and an incentive award be granted.

## II.    ARGUMENT

### A.    <u>Lead Counsel Is Entitled to An Award of Attorneys' Fees</u>

The Supreme Court and Circuit Courts across the country have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 197 (3d Cir. 2005) ("attorneys whose efforts create, discover, increase, or preserve a [common] fund are entitled to compensation"); *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir. 2009).[1]

Courts within the Third Circuit have consistently adhered to this rule. *See, e.g.*, *Schuler v. Meds. Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) ("Under the common fund doctrine, 'a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees.'") (quoting *Diet Drugs*, 582 F.3d at 540); *In re Par Pharm. Sec. Litig.*, No. 06-3226 (ES), 2013 WL 3930091, at *9 (D.N.J. July 29, 2013); *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000) ("[T]here is no doubt that attorneys may properly be given a portion of the settlement fund in recognition of the benefits they have bestowed on class members.").

---

[1] All internal quotations and citations are omitted unless otherwise noted.

Courts have emphasized that the award of attorneys' fees from a common fund serves to encourage skilled counsel to represent classes of persons who otherwise may not be able to retain counsel to represent them in complex and risky litigation. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (goal of percentage fee awards is to "ensur[e] that competent counsel continue to be willing to undertake risky, complex, and novel litigation"). Indeed, the Supreme Court has repeatedly recognized that private securities actions, such as the instant Action, are "an essential supplement to criminal prosecutions and civil enforcement actions," brought by the U.S. Securities and Exchange Commission ("SEC"). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provided "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action").

**B.      The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method.**

The Supreme Court has long recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 33% of the recovery. *See Blum v. Stenson*, 465 U.S. 886, 903-04 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring). In the Third Circuit, the percentage-of-recovery method is "generally favored" in cases involving a settlement that creates a common fund. *See Sullivan v. DB Invs.*, 667 F.3d 273, 330 (3d Cir. 2011) (favoring percentage of recovery method

"because it allows courts to award fees from the [common] fund in a manner that rewards counsel for success and penalizes it for failure"); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005). The percentage-of-recovery method is almost universally preferred in common fund cases because it most closely aligns the interests of counsel and the class. *See Rite Aid*, 396 F.3d at 300; *In re Ocean Power Techs., Inc. Sec. Litig.*, No. 3:14-CV-3799, 2016 WL 6778218, at *24 (D.N.J. Nov. 15, 2016).

The Third Circuit has "several times reaffirmed that the application of a percentage-of-recovery method is appropriate in common-fund cases." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 734 (3d Cir. 2001) (citing *Gunter*, 223 F.3d at 195 n.1). Although the Third Circuit recommends that the percentage award be "cross-checked" against the lodestar method to ensure its reasonableness, *Sullivan*, 667 F.3d at 330, "[t]he lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method." *AT&T*, 455 F.3d at 164.

Additionally, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which governs this Action, specifies that "[t]otal attorneys' fees and expenses awarded . . . not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class," thus also supporting the use of the percentage-of-recovery method. 15 U.S.C. § 78u-4(a)(6). Courts have concluded that, in using this language, Congress expressed a preference for the percentage method, rather than the lodestar method, in determining attorneys' fees in securities class actions. *See Cendant*, 404 F.3d at 188 n.7; *Rite Aid*, 396 F.3d at 300; *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 354-55 (S.D.N.Y. 2005).

The requested fee is reasonable under the percentage-of-recovery method. Although there is no general rule, courts in the Third Circuit have observed that fee awards generally range from 19% to 45% of the settlement fund. *See In re Gen.*

*Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995); *Ikon*, 194 F.R.D. at 194 ("Percentages awarded have varied considerably, but most fees appear to fall in the range of nineteen to forty-five percent."). Fees most commonly range from 25% to one-third of the recovery. *See In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) ("Courts within the Third Circuit often award fees of 25% to 33% of the recovery."); *Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, No. 03- CV-4372 (DMC), 2009 WL 4730185, at *8 (D.N.J. 2009) (same).

A review of attorneys' fees awarded in class actions with comparably sized settlements in the Third Circuit supports the reasonableness of the requested fee. *See Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762 (D.N.J. Sept. 14, 2009) (awarding 33% of $13.5 million settlement); *In re Schering-Plough Corp. ENHANCE ERISA Litig.*, No. 08-1432 (DMC) (JAD), 2012 WL 1964451, at *6-7 (D.N.J. May 31, 2012) (awarding 33.3% of $12.25 million settlement); *Ins. Brokerage Antitrust Litig.*, 297 F.R.D. at 154-56 (awarding 33% of $10.5 million settlement).

The Third Circuit recommends that district courts use counsel's lodestar as a "cross check" to determine whether the fee that would be awarded under the percentage approach is reasonable and to avoid a "windfall" to counsel. *See Sullivan*, 667 F.3d at 330; *AT&T*, 455 F.3d at 164.[2] Here, Lead Counsel devoted 3,610 hours to the prosecution and resolution of this Action. Supplemental Declaration of Adam M. Apton ("Supp. Apton Decl."), ¶17. Lead Counsel's lodestar – which is derived

---

[2] Under the full "lodestar method," a court multiplies the number of hours each timekeeper spent on the case by the hourly rate, then adjusts that lodestar figure by applying a multiplier to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorneys' work. The multiplier is intended to "account for the contingent nature or risk involved in a particular case and the quality" of the work. *Rite Aid*, 396 F.3d at 305-06.

6

by multiplying their hours spent on the litigation by each firm's current hourly rates for attorneys and paralegals – is $2,622,351.25. *Id*. Accordingly, whereas courts typically award "multipliers" to firms handling cases under contingency fee agreements to compensate them for the risk they assumed, no such multiplier is being requested here.[3]

Accordingly, the fee requested here is reasonable and would not provide counsel with a windfall.

## C. Other Factors Considered by the Courts in the Third Circuit That the Requested Fee is Fair and Reasonable.

The Third Circuit has set forth the following criteria for courts to consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the Class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity

---

[3] Lodestar multipliers of one to four are often used in common fund cases. *In re Prudential Ins. Co. America Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 341(3d Cir. 1998); *see* also *AT&T*, 455 F.3d at 172 (approving a 1.28 multiplier and noting the Third Circuit's prior "approv[al] of a lodestar multiplier of 2.99 in . . . a case [that] 'was neither legally nor factually complex.'"); *In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 08-1432, 2012 WL 1964451, at * 8 (D.N.J. May 31, 2012) (Cavanaugh, J.) (awarding 1.6 multiplier); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 736 (E.D. Pa. 2001) and *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) (awarding multiplier of between 4.5 and 8.5 on 2001 settlement and multiplier of 6.96 on the 2005 settlement); *In re Lucent Techs. Inc., Sec. Litig.*, 327 F. Supp. 2d 426, 443 (D.N.J. 2004) (awarding 2.13 multiplier in $517 settlement); *In re Rite Aid Sec. Litig.*, 362 F. Supp 2d at 590 (approving a 6.96 multiplier);  *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) (awarding 4.3 multiplier); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 195 (E.D. Pa. 2000) (awarding 2.7 multiplier and noting that it was "well within the range of those awarded in similar cases").

> and duration of the litigation; (5) the risk of nonpayment;
> (6) the amount of time devoted to the case by plaintiffs'
> counsel; and (7) the awards in similar cases.

*Gunter*, 223 F.3d at 195, n.1. The Third Circuit has also suggested three other factors that may be relevant to the Court's inquiry: (1) "the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations"; (2) "the percentage fee that would have been negotiated had the case been subject to a private [non-class] contingent fee agreement at the time counsel was retained"; and (3) any "innovative terms of settlement." *AT&T*, 455 F.3d at 165 (citing *Prudential*, 148 F. 3d at 338-40).

The fee award factors "need not be applied in a formulaic way because each case is different, 'and in certain cases, one factor may outweigh the rest.'" *AT&T*, 455 F.3d at 165 (citing *Rite Aid*, 396 F.3d at 301). Indeed, in cases involving large settlement awards, district courts may give some of the *Gunter* factors less weight and emphasize (1) the complexity and duration of the case and (2) awards in similar cases. *Rite Aid*, 396 F.3d at 301. An analysis of relevant factors further confirms that the fee requested here is fair and reasonable and should be approved.

### 1. The Size of the Common Fund Created and the Number of Persons Benefited Support Approval of the Fee Request.

The result achieved is one of the primary factors to be considered in assessing the propriety of an attorneys' fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained"); *In re Viropharma Inc. Sec. Litig.*, No. 12-2714, 2016 WL 312108, at *16 (E.D. Pa. Jan. 25, 2016).

Here, Lead Counsel secured a Settlement that provides for a substantial and certain payment of $7,500,000. The Settlement comports with historical settlement

data in similarly size cases. The median settlement as a percentage of total class-wide damages in securities fraud cases with damages ranging from $150 million to $249 million is 3.9%. Apton Decl. at ¶26. Class-wide damages in this case were approximately $194 million, making this recovery equal to 3.8% of total recoverable damages. *Id*. Measured against this yardstick, the Settlement is a very favorable recovery considering the procedural posture of the case, Defendants' countervailing arguments, and the risk that continued litigation might result in a vastly smaller recovery or no recovery at all. *Id* at ¶¶27-30.[4]

The Settlement will also benefit many investors. To date, the Claims Administrator has mailed over 83,500 Postcard Notices to potential Settlement Class Members and their nominees. *See* Declaration of Jack Ewashko, ¶11. Accordingly, although the deadline for submission of the Claim Forms is not until March 15, 2022, a large number of Settlement Class Members can be expected to benefit from the Settlement Fund. *See In re Linerboard Antitrust Litig*., MDL 1261, 2004 WL 1221350, at *5 (E.D. Pa. June 2, 2004), *order amended by* MDL 1261, 2004 WL 1240775 (E.D. Pa. June 4, 2004) (size of benefitted population "is best estimated by the number of entities that were sent the notice describing the [Settlement]").

## 2. The Absence of Objections to Date Supports Approval of the Fee Request.

The Postcard Notice and Notice, which was sent to more than 83,500 potential Settlement Class Members and their nominees and disseminated over the internet, provided a summary of the terms of the Settlement and stated that Lead Counsel

---

[4] The Settlement also compares similarly with the settlement in the *Lord Abbett* litigation against Navient, which involved similar claims but for a differing time period. In that case, the plaintiffs are seeking final approval of a settlement that represents approximately 5% of their estimated class-wide damages. *See* Supp. Apton Decl. at ¶¶10-11.

would apply for an award of attorneys' fees in an amount not to exceed one-third of the recovery or $2,500,000. *See* Declaration of Jack Ewashko at Exhibits A & B. The Notice also advised Settlement Class Members that they could object to the Settlement or fee request and explained the procedure for doing so. *See id*. Although the deadline set by the Court for Settlement Class Members to object has not yet passed, to date, no objections have been received and only one request for exclusion has been submitted.

### 3. The Complexity and Duration of the Litigation Support Approval of the Fee Request.

Securities litigation is regularly acknowledged to be particularly complex and expensive litigation, usually requiring expert testimony on multiple issues, including loss causation and damages. *See, e.g.*, *Fogarazzo v. Lehman Bros., Inc.*, No. 03-5194 (SAS), 2011 WL 671745, at *3 (S.D.N.Y. Feb. 23, 2011) ("securities actions are highly complex"); *In re Genta Sec. Litig.*, No. 04-2123 (JAG), 2008 WL 2229843, at *3 (D.N.J. May 28, 2008) ("This [securities fraud] action involves complex legal and factual issues, and pursuing them would be costly and expensive."); *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *3 (D.N.J. Nov. 28, 2007) ("[R]esolution of [accounting and damages issues] would likely require extensive and conceptually difficult expert economic analysis. . . . Trial on [scienter and loss causation] issues would be lengthy and costly to the parties.").

The Action alleged violations of the Securities Exchange Act of 1934 ("Exchange Act"), raising a panoply of difficult legal and factual issues that required creativity and sophisticated analysis. The motions to dismiss were hotly contested, and the investigation required careful review and analysis of public records. Plaintiff believes that the case has merit and that evidence exists to establish Defendants'

liability. However, this is a case with a complex fact pattern. Plaintiffs recognize that Defendants have denied the allegations in the Complaint and, in fact, moved for summary judgment on the merits. In view of these factors, without a settlement, Plaintiff and the Settlement Class face a very real risk in this case that they could recover far less than the Settlement Amount—or even nothing—without the Settlement. In all events, protracted and highly complex further litigation without a reasonably predictable outcome would ensue if this case were not resolved at this time. Had this litigation continued, Plaintiff, through Lead Counsel, would have been required to expend substantial time and expense in preparing the case for trial and filing and responding to motions *in limine*, and the trial itself would be extensive and uncertain.

Moreover, even if the jury returned a favorable verdict after trial, it is likely that any verdict would be the subject of numerous post-trial motions and a complex multi-year appellate process. Indeed, in complex securities cases, even a victory at the trial stage does not guarantee a successful outcome. *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747-48 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("Even a victory at trial is not a guarantee of ultimate success . . . . An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.").

Considering the magnitude, expense, and complexity of this securities case – especially when compared to the significant and certain recovery achieved by the Settlement – Lead Counsel's fee request is reasonable.

### 4. The Risk of Non-Payment Supports Approval of the Fee Request.

Lead Counsel undertook this Action on an entirely contingent fee basis, assuming a substantial risk that the litigation would yield no or potentially little

11

recovery and leave them uncompensated for their investment of time, as well as for their substantial expenses. This Court and others have consistently recognized that this risk is an important factor favoring an award of attorneys' fees. *See, e.g.*, *Schering-Plough*, 2012 WL 1964451, at *7 ("Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval."); *In re Merck & Co., Inc. Vytorin ERISA Litig.*, No. 08-CV-285, 2010 WL 547613, at *11 (D.N.J. Feb. 9, 2010) (finding "[t]he risk of little to no recovery weighs in favor of an award of attorneys' fees" where counsel accepted the action on a contingent-fee basis); *Sealed Air*, 2009 WL 4730185, at *8 (same); *In re Suprema Specialties, Inc. Sec. Litig.*, No. 02 168 (WHW), 2008 WL 906254, at *11 (D.N.J. Mar. 31, 2008) (same).

In undertaking this responsibility, counsel was obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, and that funds were available to compensate staff and to cover the considerable costs that a case such as this requires. With an average lag time of several years for cases of this type to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. Indeed, Lead Counsel received no compensation during this four-year litigation and advanced or incurred approximately $1,000,000 in expenses in prosecuting this Action for the benefit of the Settlement Class.

The risk of no recovery in complex cases of this type is real. Indeed, even if Plaintiffs had prevailed at trial on both liability and damages, no judgment would have been secure until after the rulings on the inevitable post-judgment motions and appeals became final – a process that would likely take years. Lead Counsel know from experience that despite the most vigorous and skillful efforts, a firm's success in contingent litigation, such as this, is not assured, and there are many class actions in which plaintiffs' counsel expended tens of thousands of hours and millions in

12

expenses and received nothing for their efforts.[5]  Indeed, even judgments initially affirmed on appeal by an appellate panel are no assurance of a recovery. *See, e.g.*, *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (after 11 years of litigation and following a jury verdict for plaintiffs and an affirmance by a First Circuit panel, plaintiffs' claims were dismissed by an *en banc* decision and plaintiffs recovered nothing).

Because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result, and that such a result would be realized only after considerable and difficult effort. This strongly favors approval of the requested fee.

### 5. The Time Devoted to This Case by Counsel Supports Approval of the Fee Request.

Lead Counsel have devoted 3,610 hours to the prosecution and resolution of the Action. *See* Supp. Apton Decl. at ¶17. Since the initiation of the Action, Lead Counsel has vigorously pursued the claims, conducting a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of the Action. This process included reviewing and analyzing: (i) publicly available information, including SEC filings, press releases, news articles, and other

---

[5] For illustrative examples, *see, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversal of jury verdict of $81 million against accounting firm after a 19-day trial); *Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994), *aff'd*, 50 F.3d 6 (4th Cir. 1995) (directed verdict after plaintiffs' presentation of its case to the jury); *Landy v. Amsterdam*, 815 F.2d 925 (3d Cir. 1987) (directed verdict for defendants after five years of litigation); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict following two decades of litigation); *In re Apple Comput. Sec. Litig.*, No. C-84-20148, 1991 WL 238298, at *1-2 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions); *In re JDS Uniphase Corp. Sec. Litig.*, No. CO2-1486 CW, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (defense verdict after four weeks of trial).

public statements issued by or concerning the Company and Defendants; (ii) analyst reports; (iii) other publicly available information and data concerning the Company; and (iv) pleadings filed in other pending litigation naming certain Defendants herein as defendants or nominal defendants. *See* Apton Decl. ¶¶3-13. Lead Counsel also interviewed former Navient employees and other persons with relevant knowledge, and consulted with experts on valuation, damages, and causation issues. *Id.* Lead Counsel also: (i) researched and drafted a detailed amended complaint; (ii) fully briefed and successfully overcame, in part, Defendants' motions to dismiss; (iii) reviewed and analyzed over 3.4 million documents produced by Defendants in discovery; (iv) fully briefed a summary judgment motion; and (v) participated in thorough settlement negotiations, including a mediation session facilitated by a private mediator. *Id.* at ¶¶6-13.

As noted above, Lead Counsel have expended 3,610 hours investigating, prosecuting, and resolving this Action, resulting in a "lodestar" amount of $2,622,351.25 at Lead Counsel's regular and current billing rates. *See* Supp. Apton Decl. at ¶17.[6] With respect to counsel's rates, Lead Counsel submits that they are comparable or less than those used by peer defense-side law firms litigating matters of similar magnitude. Lead Counsel's efforts for the benefit of the Settlement Class will continue if the Court approves the Settlement. Lead Counsel will continue to work through the settlement administration process, assisting Class Members, and the distribution process, without seeking any additional compensation.

Lead Counsel respectfully submits that this *Gunter* factor weighs in favor of the requested attorneys' fee.

---

[6] Current rather than historical hourly rates were used, as permitted by the Supreme Court and other courts, to help compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 517 n.10 (W.D. Pa. 2003); *Ikon*, 194 F.R.D. at 195.

**6.  The Requested Fee Is Within the Range of Fees Typically Awarded in Actions of This Nature.**

The requested fee of $2,500,000 is within the range of fees awarded in comparable cases when considered as a percentage of the fund basis. Accordingly, this factor strongly supports approval of the requested fee.

**7.  The Lack of Any Government Investigation and the Fact that All Benefits of the Settlement Are Attributable to the Efforts of Lead Counsel Support Approval of the Fee Request.**

The Third Circuit has advised district courts to examine whether class counsel benefited from a governmental investigation or enforcement actions concerning the alleged wrongdoing, because this can indicate whether counsel should be given full credit for obtaining the value of the settlement fund for the class. *See Prudential*, 148 F.3d at 338. Here, although the Consumer Financial Protection Bureau and numerous States Attorneys General had commenced investigations into Navient, these investigations focused entirely on Navient's customers and did not address Navient's investors. Further, the uncertainty surrounding the Consumer Financial Protection Bureau's lawsuit created additional risks that made Plaintiff's recovery all the more beneficial for investors. *See* Supp. Apton Decl. at ¶¶4-9. Accordingly, the entire value of the Settlement achieved is attributable to the efforts undertaken by Lead Counsel in this Action. This fact supports the reasonableness of the requested fee award. *See, e.g., AT&T*, 455 F.3d at 173; *In re Cigna Corp. Sec. Litig.*, No. 02-8088, 2007 WL 2071898, at *6 (E.D. Pa. July 13, 2007); *In re Vicuron Pharm., Inc. Sec. Litig.*, 512 F. Supp. 2d 279, 287 (E.D. Pa. 2007).

### 8. The Percentage Fee That Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement Supports Approval of the Fee Request.

The Third Circuit has also suggested that the requested fee be compared to "the percentage fee that would have been negotiated had the case been subject to a private [non-class] contingent fee agreement." *AT&T*, 455 F.3d at 165. The requested fee is consistent with typical attorneys' fees in non-class cases. *See Ocean Power*, 2016 WL 6778218, at *29. If this were an individual action, the customary contingent fee would likely range between 30 and 40 percent of the recovery. *See, e.g.*, *id*.; *Ikon*, 194 F.R.D. at 194 ("[I]n private contingency fee cases, particularly in tort matters, plaintiff's' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."); *Blum*, 465 U.S. at 903 (Brennan, J., concurring) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers."). Lead Counsel's requested fee of $2,500,000 amounts is fully consistent with these private standards.

### 9. The Skill and Efficiency of the Attorneys Involved Support the Fee Request.

The skill and efficiency of counsel is "'measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" *Hall v. AT&T Mobility LLC*, No. 07-5325 (JLL), 2010 WL 4053547, at *19 (D.N.J. Oct. 13, 2010).

It required considerable skill to achieve the proposed Settlement for the benefit of the Settlement Class. Lead Counsel were required to contend with difficult issues of falsity, materiality, and scienter, and damages and loss causation issues. Defendants challenged Plaintiff on "loss causation" because there was an issue as to

16

whether the Pennsylvania Attorney General's lawsuit filed against Navient revealed new information concerning the company's loan servicing practices when the Consumer Financial Protection Bureau had previously filed suit against Navient asserting essentially the same claims. Defendants also challenged Plaintiff's theory of liability on the basis that the Department of Education released a statement suggesting that Navient had not violated its servicing contracts and that Navient's stock price recovered the following day. Defendants and their experts further challenged the viability of Plaintiff's case on the grounds that Navient did not violate consumer protection laws by "steering" borrowers into forbearance.

With respect to "the experience and expertise" of counsel, as set forth in the firm resumes attached to the respective declarations of Lead Counsel, Lead Counsel are highly experienced and skilled firms in the securities litigation field, and each firm has a long and successful track record in securities cases throughout the country. *See* Supp. Apton Decl. at Exhibit A.

### D.   Lead Counsel's Litigation Expenses Are Reasonable and Should Be Approved for Reimbursement.

Lead Counsel also request payment of $988,508.88 in expenses incurred in connection with the prosecution of this litigation. This is less than was requested in the Notice. The Supplemental Declaration of Adam M. Apton, filed herewith, attests to the amount and accuracy of the expenses. Supp. Apton Decl. at ¶¶18-19. The Supplemental Declaration also describes the expenses by category and explains why they were incurred in connection with the litigation. *Id*. at ¶¶20-30. These expenses largely consist of expert fees, ediscovery costs, and staff attorney cost for document review projects. To date, there has been no objection to the request for expenses.

The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are

17

of the type typically billed by attorneys to paying clients in the marketplace. *See In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) ("[c]ounsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action") (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)); *ViroPharma*, 2016 WL 312108, at *18 (same); *Hall*, 2010 WL 4053547, at *23 ("Courts have generally approved expenses arising from photocopying, use of the telephone and fax, postage, witness fees, and hiring of consultants."). The categories of expenses for which counsel seek payment here are the type of expenses routinely charged to hourly clients and, therefore, should be paid out of the common fund.

### E.   **Plaintiffs Should Be Awarded Incentive Awards.**

The PSLRA, 15 U.S.C. § 78u-4(a)(4), limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."

Lead Counsel has requested an incentive award in the amount of $15,000 for Plaintiff who was involved in the litigation from start to finish and assisted in (a) conferring with counsel concerning the issues and strategy in the case; (b) reviewing court filings in the Action and periodic reports from counsel concerning the work being done; (d) conferring with counsel with respect to settlement and mediation efforts; and (e) researching and collecting relevant documents and sitting for a deposition in discovery. *See* Supplemental Declaration of Jesse Wayne Pritchard, ¶¶2-3. Plaintiff committed a substantial amount time to the prosecution of this

lawsuit; specifically, upwards of 130 hours collectively. *See id.* at ¶5. The incentive award Plaintiff seeks is reasonable under the circumstances. *See, e.g., Forsythe v. ESC Fund Mgmt. Co. (U.S.)*, No. CIV.A. 1091-VCL, 2012 WL 1655538, at *8 (Del. Ch. May 9, 2012) (awarding awards of $35,000, and $20,000 to lead plaintiff who sat for a one-day deposition). Such awards encourage the public policy goal of private prosecution securities frauds as described above. *See Tellabs*, 551 U.S. at 313 (citations omitted). Moreover, no objections to the incentive award have been made. Accordingly, the incentive award should be approved as reasonable.

## III.   CONCLUSION

For all the foregoing reasons, Lead Counsel respectfully requests that the Court grant Plaintiff's motion in its entirety.


Dated: March 8, 2022                    **LEVI & KORSINSKY, LLP**


                                        s/ Adam M. Apton
                                        Nicholas I. Porritt (admitted *pro hac vice*)
                                        Adam M. Apton
                                        55 Broadway, 10th Floor
                                        New York, New York 10006
                                        Tel.: (212) 363-7500
                                        Fax: (212) 363-7171
                                        email: nporritt@zlk.com
                                        email: aapton@zlk.com

                                        *Attorneys for Class Representative
                                        and Class Counsel*